STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

# OMNIBUS CALENDAR ASSIGNMENT FORM

SUPERIOR COURT

(✓)PROVIDENCE/BRISTOL ( )KENT ( )WASHINGTON ( )NEWPORT

Make-A-Wish Foundation of R.I

CASE NO. 08-3592

VS

Make-A-Wish Foundation of America

**REQUESTED CALENDAR ASSIGNMENT**

( ) J JURY TRIAL — TRIAL CALENDAR — (✓) N NON-JURY TRIAL

**FORMAL SPECIAL CAUSE CALENDAR**

( ) AGA AGENCY APPEAL
( ) AOD ASSESSMENT OF DAMAGES
( ) CNA CONFIRM ARBITRATION
( ) DEJ DECLARATORY JUDGMENT
( ) EOJ ENTRY of JUDGMENT
( ) FFR FIRST & FINAL REPORT
( ) FRR FORCLOSURE of RIGHT of REDEMPTION
( ) FRS FRIENDLY SUIT
( ) OPC ORAL PROOF OF CLAIM
( ) MMN MANDATORY INJUNCTION
( ) MEL MECHANIC'S LIEN
( ) MAT MOTION TO ATTACH
( ) PRT PARTITION PROCEEDINGS
( ) PAT PETITION TO APPOINT TEMPORARY RECIEVER
(✓) OTH OTHER FSC MATTER :
( ) PEN PETITION TO ENFORCE
( ) PIN PETITION FOR INSTRUCTIONS
( ) PRC PETITION TO RECLAIM
( ) PES PETITION TO SELL
(✓) PPI PRELIMINARY INJUCTION
( ) PCL PROOF OF CLAIM
( ) RCP RECEIVERSHIP PROCEEDINGS
( ) SPP SUPPLEMENTARY PROCEEDINGS
(✓) TPR TEMPORARY RESTRAINING ORDER
( ) TIP TITLE PROCEEDINGS
( ) TSP TRUSTEE PROCEEDINGS
( ) VAR VACATE ARBITRATION
( ) WOM WRIT OF MANDAMUS
( ) WOR WRIT OF REPLEVIN

**DISPOSITIVE MOTION CALENDAR**

( ) MTD MOTION TO DISMISS, UNDER RULE 12
( ) MJP MOTION FOR ENTRY OF JUDGMENT ON PLEADINGS
( ) MPS MOTION FOR PARTIAL SUMMARY JUDGMENT
( ) MSG MOTION FOR SUMMARY JUDGMENT
( ) MOT OTHER DISPOSITIVE MOTION :

Courtroom 15 4th Floor

HEARING DATE: 5/21/08 @ 2:00 PM FSC/MOTION CLERK: J Dias DATE: 5-19-08

**SPECIAL MASTER CALENDAR**

( ) OTH OTHER MATTER:

HEARING DATE: CLERK:

**METHOD OF ASSIGNMENT**

( ) MOTION TO ASSIGN
( ) STIPULATION TO ASSIGN
( ) COURT ORDER PURSUANT TO TEMPORARY EX PARTE ORDER

**BASED ON METHOD OF ASSIGNMENT STATE ANY RELEVANT INFORMATION BELOW**

| ATTORNEYS | DATE | DATE/TIME STAMP |
|---|---|---|
| SIGNATURES Todd D. White | 5/21/08 | |
| PLAINTIFFS | DEFENDANTS | |
| PRINT NAME Todd D. White | | |

MAY 19 P 3 13

SR-11 (REV. 5/05)

WHITE/COURT YELLOW/PLAINTIFFS ATTORNEY PINK/DEFENDANTS ATTORNEY GOLD/CALENDAR CLERK

STATE OF RHODE ISLAND
Providence, S.C.

SUPERIOR COURT

| | |
|---|---|
| Make-A-Wish Foundation of Rhode Island, Inc.<br><br>Plaintiff,<br><br>v.<br><br>Make-A-Wish Foundation of America, Inc.<br><br>Defendant | C.A. No. |

**COMPLAINT**

1. Plaintiff, Make-A-Wish Foundation of Rhode Island, Inc. (the "Rhode Island Chapter") is a not-for-profit charitable organization registered and doing business in the State of Rhode Island, with a principal office located in Cranston, Rhode Island.

2. Defendant, Make-A-Wish Foundation of America, Inc. ("MAWFA") is a not-for-profit charitable organization registered and doing business in the State of Arizona, with a principal office located in Phoenix, Arizona.

3. Defendant held a teleconference hearing on May 15, 2008, before its Executive Committee and representatives from the Rhode Island Chapter.

4. At the conclusion of this hearing, the Executive Committee determined to "revoke" the Rhode Island Chapter's "charter".

5. Plaintiff and Defendant have certain contractual obligations as enumerated in a "Chapter Agreement", a copy of which is attached as Exhibit A.

6. Pursuant to the Chapter Agreement any dispute between the Plaintiff and Defendant must be brought forward in accordance with the rules and procedures of the American Arbitration Association.

7. Notwithstanding this provision in Plaintiff's claim to arbitration, Defendant has apprised Plaintiff that it will commence the revocation procedures against Plaintiff as early as Tuesday, May 20, 2008.

8. Pursuant to R.I.G.L. §18-9-1 et seq. and §38-2-1 et seq. the termination of a "charitable trust" as that term is defined in R.I.G.L. §§18-9-4 and 38-2-1 with assets in excess of $200,000 must be done with the consent of the Court.

9. The Rhode Island Chapter has assets well in excess of $200,000.

10. Pursuant to the Chapter Agreement, Section 21 and 21.1, Plaintiff requests it be accorded its right under Sections 21, 21.1, 21.2 and 21.3 of the Chapter Agreement, and arbitration proceedings commence pursuant to the rules and procedures of the American Arbitration Association.

**<u>Count One – Breach of Contract</u>**

11. The Plaintiff re-alleges paragraphs 1 through 10 as fully set forth herein.

12. By failing to agree to follow the dictates of the AAA arbitration clause enumerated in Sections 1 et seq. of the Chapter Agreement, the Defendant has breached its agreement with the Chapter.

13. By failing to seek the Courts consent before forcing Plaintiff's termination the Defendant has or will be in breach of Rhode Island Law

14. The Plaintiff is concerned that the Defendant will immediately attempt to assume control of the assets and management of the Chapter, effectively revoking the Chapter's existence and undermining its charitable work.

15. As a result of this breach agreement, the Chapter is in danger of eminent harm in its efforts to sustain its mission and raise funds for wish recipients.

Wherefore, the Plaintiff respectfully requests this Court Order the Defendants to undertake AAA arbitration and request this Court enjoin the Defendant from engaging in any efforts to revoke the Rhode Island Chapter; to claim any of the funds that have been raised by the Rhode Island Chapter; to prevent the Rhode Island Chapter from defending its position or retaining counsel by which to assert a defense, or undertake any efforts to revoke, dissolve, merge or assume control of the Rhode Island Chapter.

For the Plaintiff's
By its counsel

[signature]

TODD D. WHITE #5943
VICTORIA M. ALMEIDA #1755
E. HANS LUNDSTEN #1156
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
T: (401) 274-7200
F: (401) 351-4607
Dated: May 19, 2008

*454873_1*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the within was served via email and facsimile to the following individual on this 19th day of May 2008.

David Mulvihill, Esq.
Make-A-Wish Foundation of America, Inc.
3550 North Central Avenue
Suite 300
Phoenix, Arizona 85012-2127

State of Rhode Island
Patrick C. Lynch, Esq.
Office of the Attorney General
150 South Main Street
Providence, RI 02903

________________________

*454873_1*

MAKE-A-WISH®

Make-A-Wish Foundation® of America

# CHAPTER AGREEMENT

As Adopted by Chapter Council Vote on
September 11, 2004

Agreement and the Policies. Chapter agrees that the Headquarters, Territory and/or Chapter's name may be changed only by the "Chapter Performance Committee" (as defined in Foundation's Bylaws) at a Chapter Action Meeting. Chapter understands and agrees that Foundation may grant chapter status to other chapters ("Other Chapters") for the purpose of performing the Foundation's Purpose in territories near or adjacent to the Territory.

4. Rights and Privileges. Upon execution of this Agreement, Chapter shall be entitled to all of the rights and privileges of a chapter set forth in Foundation's Bylaws, and all other rights and privileges which Foundation may, from time to time, establish. Chapter acknowledges and agrees that certain rights and privileges of Chapter may be suspended, revoked, amended, limited or terminated pursuant to this Agreement, Foundation's Bylaws and the Policies. Chapter, by signing this Agreement subjects itself to all provisions of this Agreement, Foundation's Bylaws and the Policies.

5. Chapter's Duties, Warranties and Obligations.

5.1. Chapter warrants that it is, and shall remain, a duly formed and validly existing nonprofit corporation in good standing under the laws of the state or territory of its incorporation or formation.

5.2. Chapter agrees not to perform any function or knowingly partake in any activity other than the Foundation's Purpose, without the prior written consent of Foundation.

5.3. Chapter agrees to comply with, and be bound by, the terms of Foundation's Bylaws, this Agreement and the Policies.

5.4. Chapter shall use its best efforts in performing the Foundation's Purpose, in cooperating with Foundation and Other Chapters, and in protecting the Marks and the integrity and good reputation of Foundation.

5.5. Chapter shall comply with all federal, state, county and local laws, regulations, rules and ordinances applicable to it or relating to nonprofit corporations and charitable organizations.

5.6. Chapter agrees to pay in a timely manner all fees, assessments, dues and penalties established by Foundation from time to time.

5.7. Chapter shall permit Foundation's officers or designated representatives to inspect Chapter's books and records and to interview Chapter's directors, officers, employees and volunteers at any reasonable time and upon reasonable notice.

6. Foundation's Obligations.

6.1. Foundation shall observe all of its obligations to Chapter set forth in Foundation's Bylaws and Policies.

recognizes that the Marks are good and valid and that Chapter has no rights therein except those rights set forth in this Agreement. Chapter agrees not to contest the ownership or validity of any rights of Foundation in the Marks, or any registration or pending registration of any mark of Foundation with the United States Commissioner of Patents and Trademarks or with any state or other governmental authority, domestic or foreign. Chapter shall afford Foundation reasonable opportunities to inspect and monitor the activities of Chapter in order to ensure Chapter's use of the Marks is in accordance with Foundation's Policies.

8.3. Chapter's use of the Marks pursuant to the License shall be limited strictly to use in direct furtherance of the Foundation's Purpose. Such use shall be subject to such standards and procedures as are established and modified from time to time by Foundation. Chapter agrees that its use of the Marks inures to the benefit of Foundation. Chapter shall be entitled to use the Marks in its corporate name, subject to Chapter's obligations regarding such corporate name upon Revocation.

8.4. Chapter agrees to execute any and all documents and agreements reasonably necessary to the registration and protection of the Marks and to confirm ownership by Foundation of all right, title and interest in the Marks. Chapter further agrees that it shall not attempt to register or otherwise gain any right in or to any service mark or trademark that is confusingly similar to any of the Marks or any mark adopted in the future by Foundation.

9. <u>Relationship of Parties</u>. Foundation and Chapter are not, and shall not be considered to be, joint venturers, partners, or agents of each other, and Chapter shall have no power or authority whatsoever to bind or obligate Foundation except as otherwise set forth in this Agreement, the Policies or Foundation's Bylaws. Neither Foundation nor Chapter shall suffer any liability to any person or entity incurred or arising out of any acts of the other, or any acts of the other's agents, representatives or contracts and each shall indemnify the other in accordance with Section 10 below.

10. <u>Indemnification</u>.

10.1. Except as provided in Section 21.3 of this Agreement, Chapter hereby agrees to indemnify and hold Foundation harmless from any and all claims, demands, suits, and liabilities, of any nature whatsoever, arising out of or in any way connected with Chapter's performance of the Foundation's Purpose, use of the Marks, or otherwise, except that any liabilities which occur as a result of specific actions taken by Chapter at the direction of Foundation or Chapter's proper and authorized use of the Marks shall not be subject to this indemnification. In the event that Foundation is or becomes a party to any litigation or proceeding arising out of Chapter's performance of the Foundation's Purpose, use of the Marks, or otherwise, or is joined as a party to any such litigation or proceeding in which Chapter is a party, Foundation shall have the right to retain its own counsel to represent it at the sole cost and expense of Chapter upon notice to Chapter. The indemnification provided herein shall remain in effect notwithstanding any Revocation.

10.2. Foundation hereby agrees to indemnify and hold Chapter harmless from any and all claims, demands, suits and liabilities, of any nature whatsoever, arising out of or in any way connected with Foundation's performance on its own behalf of the Foundation's

13.2. If Chapter is placed on Inactive Status, Chapter shall immediately (or at such later date as may be agreed by the Chapter Performance Committee in its sole discretion);

(a) Elect or appoint such persons to its board of directors (the "Chapter Board") as shall be designated by the Chapter Performance Committee or its designee. All members of the Chapter Board not so designated to serve as members of the Chapter Board shall immediately resign as members of such Chapter Board.

(b) Cease active operation except as is necessary to: (A) maintain its corporate existence in good standing; (B) make all reports and filings required by any governmental authority; and (C) maintain its exempt status as an organization under Section 501(c)(3) and not a private foundation pursuant to Section 509(c)(1), (2) or (3) of the Internal Revenue Code.

(c) Take action to identify and satisfy all valid claims, obligations and debts of Chapter.

(d) Deliver all of its books and records of any kind whatsoever into the custody of Foundation.

(e) Furnish to Foundation an accounting of all funds received and disbursed by it from its inception as a chapter or as otherwise designated by the Chapter Performance Committee.

(f) Transfer to Foundation, without charge, such of its assets (after all liabilities and obligations of Chapter are paid or discharged or adequate provisions are made by Chapter for payment of such liabilities or obligations) as directed by the Chapter Performance Committee. Such assets shall be utilized by Foundation for the Foundation's Purpose within the former Territory of Chapter or shall be distributed to the Other Chapter(s) subsequently assigned the former Territory (or portions thereof).

13.3. Upon approval of the Chapter Performance Committee, Chapter may be removed from Inactive Status and be deemed a Provisional Chapter. The Provisional Period shall begin on the date of such approval by the Chapter Performance Committee. Chapter shall be granted a Territory determined by the Chapter Performance Committee, provided that if any portion thereof is currently assigned to any Other Chapter, such assignment of a Territory shall be subject to Section 3.

14. Revocation.

14.1. Upon Revocation, all rights and privileges of Chapter shall immediately terminate.

14.2. Upon Revocation, Chapter shall immediately (or at such later date as may be agreed by the Chapter Performance Committee in its sole discretion):

15. Chapter Action Meeting. If Chapter is the subject of an action by the Chapter Performance Committee pursuant to Sections 3, 11 or 12.2 (a "Chapter Action"), or if there is a proposed Chapter Action to change the name, headquarters or territory (other than pursuant to Section 13.1) of any Other Chapter with a territory adjacent to the Territory, then prior to a meeting of the Chapter Performance Committee to consider the Chapter Action (a "Chapter Action Meeting"), the Secretary of Foundation or his or her designee shall give written notice to Chapter setting forth: (i) the proposed Chapter Action and specifying any alleged Breach; (ii) Chapter's rights to present a written statement regarding the proposed Chapter Action; and (ii) the date, time and place of the Chapter Action Meeting which shall be at least 10 days after the notice is given to Chapter. Chapter may present a written statement regarding the proposed Chapter Action to the Secretary of Foundation not less than 3 days prior to the Chapter Action Meeting. If a written statement has been timely filed, Chapter may also appear at the Chapter Action Meeting. The Chapter Performance Committee may establish a reasonable time limit and set the procedures for Chapter's appearance. If the Chapter Performance Committee approves any Chapter Action, the Chapter Performance Committee or its designee shall promptly give written notice to Chapter.

16. Probation, Inactive Status or Revocation Without Prior Notice. The Chapter Performance Committee may place Chapter on Probation, Inactive Status or impose Revocation without any prior notice to Chapter or prior right to present its defense if the Chapter Performance Committee reasonably believes that both (i) Chapter has committed fraud, has engaged in illegal activity, or has materially violated this Agreement, Foundation's Bylaws or the Policies, and (ii) prior notice to Chapter would be impractical or could endanger or harm Foundation. If Chapter is placed on Probation or Inactive Status or Revocation is imposed pursuant to this Section, the Chapter Performance Committee or its designee shall thereafter give written notice to Chapter of such action setting forth Chapter's right to present a defense in writing to the Secretary of Foundation within 10 days of the effective date of the notice. If a written defense has been timely filed, Chapter may also appear at the Chapter Performance Committee meeting at which such defense is considered. The Chapter Performance Committee or its designee shall give Chapter at least 10 days notice of such meeting. The Chapter Performance Committee may establish a reasonable time limit and set the procedures for Chapter's appearance. The Chapter Performance Committee shall notify Chapter of any action taken.

17. Appeal.

17.1. Chapter shall have the right to appeal Probation, Inactive Status, Revocation or an involuntary change to its name, Territory or Headquarters location to the Executive Committee of Foundation ("Executive Committee") **by filing a written appeal with the Secretary of Foundation.** In the case of an appeal from action taken pursuant to Section 15, the appeal must be submitted on or before 30 days after written notice to Chapter of the Chapter Action. **In the case of appeal from action taken pursuant to Section 16, the appeal must be submitted on or before 30 days after (i) notice to Chapter of Probation, Inactive Status or Revocation if Chapter does not exercise its right to present a written defense to the Chapter Performance Committee or (ii) notice by the Chapter Performance Committee to Chapter of action on its defense if Chapter exercises such right.** This right of appeal shall be conditioned upon Chapter's full and timely compliance with all requirements of Probation,

19.2. Chapter shall perform all acts and execute and file all documents necessary and requested by Foundation to perfect and continue the perfection of a first priority security interest in favor of Foundation in and to the Collateral. Chapter hereby irrevocably grants permission to Foundation to file financing statements describing the Collateral and appoints Foundation as its attorney-in-fact, with full power of substitution, to take any steps and to execute any documents as are necessary to perfect and keep perfected the security interest granted herein to Foundation. The power granted hereunder shall be deemed to be a power coupled with an interest.

19.3. The security interest hereunder shall be subject to any donor restrictions placed upon any portion of the Collateral by the party donating such portion of the Collateral to Chapter.

19.4. If Foundation shall, pursuant to Section 14, elect not to require Chapter to transfer to Foundation any item of Collateral following Revocation, Foundation shall release its security interest in such Collateral.

20. Governing Law. This Agreement shall be governed by, and shall be construed and interpreted in accordance with, the internal laws of the State of Arizona without the application of any principles of conflicts of law that would require or permit the application of the laws of any other jurisdiction.

**21. Arbitration. Foundation and Chapter acknowledge that the Foundation's Purpose will be irreparably harmed by the negative publicity attendant to any dispute resolution in a public forum. Therefore, except as expressly provided in Section 21.3 below, neither Foundation nor Chapter will bring any action or proceeding against the other in any court, whether local, state, federal or otherwise.**

**21.1. Except as provided in Section 21.3, all disputes arising in connection with this Agreement or otherwise between Chapter and Foundation (which are not settled by agreement between the parties), shall be finally settled by binding arbitration. The arbitration shall be held in the same city in which the headquarters of Foundation is then located, and shall be conducted in accordance with the rules and procedures of the American Arbitration Association, but without submission to such association unless both parties so agree or fail to agree on another arbitrator. In the event the party against whom the award is entered has not fully satisfied the award within 90 days, judgment upon the award may be entered in any court having jurisdiction, or application may be made to such court for judicial acceptance of the award and order of enforcement, as the case may be.**

**21.2. All disputes between Foundation and Chapter regarding chapter discipline shall be governed exclusively by and within the rules established in this Agreement, Foundation's Bylaws and the Policies. Following resolution of a chapter discipline dispute in accordance with this Agreement, Foundation's Bylaws and the Policies, Foundation may, in circumstances requiring Extraordinary Relief (as defined below), enforce such result by bringing an action in state court in the state in which the headquarters of Foundation is then located, or in the United States District Court for such**

any benefit, right or remedy under or by reason of any term, provision, condition, covenant, undertaking, warranty, representation or agreement contained in this Agreement.

26. Invalidity of Particular Provisions. If any portion of this Agreement shall be deemed to be invalid or unenforceable, then the remaining portions of this Agreement shall be fully effective, valid and enforceable.

27. Entire Agreement. Foundation and Chapter agree that this Agreement contains the entire agreement between the parties. This Agreement is intended by the parties to supersede all other agreements, including, without limitation, any prior Chapter Agreement or Affiliation Agreement, whether written or oral, that previously may have been entered into by Foundation and Chapter, or their predecessors in interest, with respect to the matters set forth in this Agreement.

28. Amendment. The Chapter's name, Territory and Headquarters can be changed or modified at a Chapter Action Meeting. Any other changes to this Agreement may only be made by a vote of the Foundation Board and the Leadership Council according to the procedure set forth in the Foundation's Bylaws. Chapter agrees to be bound by the terms and conditions of any amendment to this Agreement adopted in accordance with the Foundation's Bylaws whether or not Chapter's Delegate (if any) votes in favor of such amendment.

29. Successors and Assigns. The covenants, conditions and agreements contained in this Agreement shall bind and inure to the benefit of the parties and their successors and assigns, except Chapter shall not have the right to assign this Agreement or any of its rights or benefits hereunder, including, without limitation, its right to use the Marks.

30. Notices. Except as otherwise provided in this Agreement, whenever notice is required by law or by this Agreement to be given, such notice may be given in writing by depositing the same in the United States Postal Service first class mail, postage paid; delivered to a recognized national overnight delivery service; or sent by facsimile or e-mail transmission, in each case addressed according to the records of Foundation. Delivery of notice shall be deemed complete and effective three days after deposit in the mail, one day after delivery to the delivery services, upon facsimile transmission, or upon transmission by e-mail, as the case may be.

31. Waiver. No waiver of any provision of this Agreement shall be valid unless in writing and signed by the party against whom it is sought to be enforced. No omission or delay of either party in requiring due and punctual fulfillment by the other party of the obligations of such other party hereunder shall be deemed to constitute a waiver of its rights to require such due and punctual fulfillment of any of its other obligations.

32. Time of Essence. Time is of the essence in all terms of this Agreement.

33. Conflicts. To the extent possible, this Agreement, the Foundation's Bylaws and the Policies shall be read and interpreted in such manner as shall result in no conflict amongst the same. In the case of an irreconcilable conflict between this Agreement and either or both of the Foundation's Bylaws or the Policies, this Agreement shall govern. In the case of a

# EXHIBIT A

Initial Chapter Territory:

________________________________________
________________________________________
________________________________________

Initial Headquarters Location:

________________________________________
________________________________________
________________________________________