# I. REPORTING COMPENSATION ON FORM 990

**by**

**Ward L. Thomas and James Bloom**

## 1. Introduction

Compensation of an exempt organization's executives is some of the information most sought by the public on Form 990. Contributors do not like to see their hard-earned money used to pay the compensation of an executive who earns many times more than the contributors, especially where they believe the executive does not perform exempt function-related tasks commensurate with such salary. Conversely, from the EO's perspective, compensation is some of the most sensitive information required to be disclosed. See, e.g.. "Interest Still High in Charity Salaries," Chronicle of Philanthropy (April 6, 1993); "Some Colleges Refuse to Disclose Payroll Data Despite Federal Law," Chronicle of Higher Education (Sept. 14, 1994). When a return that fails to report compensation fully and accurately is submitted, the Service's ability to perform its duties, the public's right to obtain meaningful information, and the public's ability to police abuses are all impaired, since Form 990 is the main public source of such information.

This article discusses the requirements for reporting the compensation of particular individuals associated with an EO on its annual information return (Part V of Form 990, and counterparts in Forms 990 Schedule A, 990-EZ, and 990-PF, which are referred to collectively as Form 990 except where specified otherwise). The article focuses on the Form 990 instructions, recent changes, and problem areas identified by the Service. First, however, it reviews the penalties for failure to properly report compensation on Form 990.

## 2. Penalties

### A. IRC 6652

IRC 6652(c) generally imposes a penalty on the EO of $10 a day (up to the lesser of $5000 or 5% of the gross receipts for the year) for "failure to include any of the information required to be shown on a return filed under section 6033 or to show the correct information." An exception exists for reasonable cause. Service Centers sometimes reject obviously incomplete returns and demand completion. An **additional** penalty like that described above is imposed on any responsible person who fails to file a correct return upon written demand by the Service, or

who fails to comply with the public inspection rules under IRC 6104. Treasury proposed in 1994 to increase these monetary penalties substantially.

Prior to 1987, there was no specific penalty provision under IRC 6652 for failure to include required information or the correct information; IRC 6652(d)(1) simply penalized the failure to file a return "in the manner prescribed." Rev. Rul. 77-162, 1977-1 C.B. 400, held that an EO that filed an incomplete return on Form 990 by omitting material information failed to file a return "in the manner prescribed" for purposes of the former IRC 6652(d)(1) penalty. Under the facts of the ruling, the organization neither supplied the omitted information after being requested to do so by the Service nor established reasonable cause for failure to do so.

Rev. Rul. 77-162 also held that the omission of material information was a failure to file a return for IRC 6501(c)(3) statute of limitations purposes as well. Congress did not modify IRC 6501 when it modified IRC 6652 in 1987. It is unclear whether Congress's inaction was intended to overrule (or to acquiesce in) the Service position with regard to IRC 6501; in any event, the ruling remains on the books.

B. Revocation of Exemption for Inurement

For many categories of exempt organizations, no part of their net earnings may inure to the benefit of private shareholders or individuals (commonly known as insiders). The Service has taken the position that employees, as well as independent contractor physicians with respect to hospitals, may qualify as insiders. Failure to fully report compensation paid to insiders can lead to a finding of inurement and revocation of exemption, particularly where the failure appears to be willful or in bad faith.

The courts have held that net earnings may inure in ways other than by the actual distribution of dividends or payment of excessive salaries:

> If in fact a loan or other payment in addition to salary is a disguised distribution or benefit from the net earnings, the character of the payment is not changed by the fact that the recipient's salary, if increased by the amount of the distribution or benefit, would still have been reasonable.

Founding Church of Scientology v. United States, 412 F.2d 1197, 1202

(Ct.Cl. 1969), cert. denied, 397 U.S. 1009 (1970); John Marshall Law School v. United States, 48 A.F.T.R. 2d 81-5340, 5348, 81-2 U.S.T.C. 9514, 9745, 228 Ct. Cl. 902 (Ct.Cl. 1981). The amount or extent of benefit is not determinative in finding inurement. Id.

Both Founding Church of Scientology and John Marshall Law School involved insiders who received some of the following benefits: loans; repayment of loans; use of an automobile; use of a residence; income from affiliated organizations; receipt by family members of payments designated as rents, loans, reimbursement of expenses, and salaries; unexplained purposes and terms of loans; unexplained reimbursements of expenses; interest-free unsecured loans without fixed repayment schedules; life insurance policies; special health insurance not provided to other employees; health club memberships; certain home furnishings; scholarships for executives' children (through the ruse of a scholarship fund for "deserving" children of full-time faculty members); travel expenses for overseas and continental trips made for no documented business purpose; and season tickets for professional basketball and hockey games.

In John Marshall Law School, the court rebutted the argument that the value of the benefits would have been reasonable if paid as compensation by stating that the benefits were not in fact salary since they were not approved by the board (as salaries were) and **were not treated as compensation on the schools' books or on the returns of the recipients**. The above cases involved organizations controlled by the founder and his family. However, the principle that the character of benefits depends on how they are reported is relevant even to organizations with broad community-based boards.

C. Fraud

In some cases, the Service could assess criminal penalties (IRC 7203, 7206, and 7207) for an EO's fraudulent misrepresentations on its return. Although such penalties have not ordinarily been assessed in this context, the Service may step up such enforcement.

D. Withholding

There are also employer tax penalties for failure to withhold the proper amount of wages for FICA, FUTA, and income tax withholding purposes. See, e.g., IRC 6656 (failure to deposit any amount of required tax); IRC 6662 (underpayment of tax due to negligence, substantial understatement of income tax,

and substantial valuation misstatement with respect to income tax); IRC 6663 (underpayment of tax due to fraud); IRC 6672 (willful failure to collect and pay over tax--penalty imposed on person required to do so); IRC 6694 (understatement of taxpayer's income tax liability by return preparer due to unrealistic position or reckless conduct--penalty imposed on return preparer); and IRC 6701 (knowingly aiding and abetting understatement of tax liability--penalty imposed on person who aids and abets). The IRC 6701 penalty could also apply where compensation of independent contractors is underreported on Form 1099.

The criminal fraud penalties also apply in the employer tax context. Depending on the circumstances, IRC 7201-7207 and 7215 may apply.

3. IRC 6033

IRC 6033(a)(1) generally requires EOs to file an annual return stating the information prescribed by forms and regulations.

Reg. 1.6033-2(a)(2)(ii)(h), as amplified by the 1994 forms and instructions, generally requires an EO's return to include the compensation paid to the officers, directors, trustees, or key employees, as well as other payments includible in their gross income. IRC 501(c)(3) organizations must also include such data for the five employees (not including officers, directors, trustees, and key employees) who received the highest annual compensation over $50,000, and the five independent contractors who performed personal services of a professional nature (e.g., attorneys, accountants, or doctors, either in their individual capacity or as employees of a professional corporation) and received the highest compensation over $50,000. IRC 501(c)(3) organizations must also state the total number of other employees who received annual compensation over $50,000, and the total number of other independent contractors who received over $50,000 for the year for the performance of professional services. For returns for tax years prior to 1994, the minimum compensation figure was $30,000 rather than $50,000.

4. Form 990 Instructions on Reporting Compensation

A. General Principles

The compensation with which Form 990 is concerned is compensation paid in return for a person's performance of services for the organization. The instructions to Part V of Form 990 construe compensation more broadly than other parts of the Code. 1990 CPE at 171 contains a comprehensive discussion of the

various forms of compensation, but also focuses on whether the compensation is includible in an employee's gross income. By contrast, Form 990 generally requires that all compensation be reported, **whether or not includible in gross income** (although there are major exceptions to this rule of total inclusion, discussed below). Also, in the case of deferred compensation, the focus is on the time that the EO pays or becomes obligated (or potentially obligated) to pay it as well as the time that the employee or independent contractor receives a disbursement.

Form 990 Part V and Form 990 Schedule A Part I divide employee compensation into three categories (the discussion below includes officers, directors, and trustees in the term "employee" as well as rank-and-file employees, except where otherwise provided). Column (C) includes salaries, bonuses, and similar cash payments during the year. Column (D) includes deferred compensation (whether or not funded, vested, or pursuant to a qualified IRC 401(a) plan, and including payments to welfare benefit plans and future severance payments). Column (E) includes fringe benefits (**including nontaxable fringe benefits unless de minimis under IRC 132(e)**) and **expense allowances which are reportable as income on the recipient's return**. The form and instructions in some places refer to Column (C) payments as "compensation" as distinguished from Column (D) or (E) payments, although in other places they are referred to collectively as "compensation." Form 990-PF contains the same three categories but labels them differently.

B. De Minimis Fringe Benefits

De minimis fringe benefits under IRC 132(e) are an exception to the requirement that all fringe benefits be reported. A de minimis fringe benefit is defined as any benefit the value of which is (after taking into account the frequency with which the employer provides similar fringes to its employees) so small as to make accounting for it unreasonable or administratively impracticable.

Frequency is generally measured with respect to the individual employee and not with respect to the workforce as a whole, unless it is administratively difficult to do so (such as measuring each employee's personal use of the copy machine). Reg. 1.132-6(b). Thus, the more frequently an employee receives a particular benefit, the less likely it will be viewed as de minimis.

Reg. 1.132-6(e) provides examples of de minimis fringe benefits:

> occasional typing of personal letters by a company secretary; occasional personal use of an employer's copying machine, provided that the employer exercises sufficient control and imposes sufficient restrictions on the personal use of the machine so that at least 85% of the use is for business purposes; occasional cocktail parties, group meals, or picnics for employees and their guests; traditional birthday or holiday gifts of property (not cash) with a low fair market value; occasional theater or sporting event tickets; coffee, doughnuts, and soft drinks; local telephone calls; and flowers, fruit, books, or similar property provided to employees under special circumstances (e.g., on account of illness, outstanding performance, or family crisis).
>
> The same regulation lists the following non-de-minimis fringes:
>
> season tickets to sporting or theatrical events; the commuting use of an employer-provided automobile or other vehicle more than one day a month; membership in a private country club or athletic facility, regardless of the frequency with which the employee uses the facility; employer-provided group term life insurance on the life of the spouse or child of an employee; and use of employer-owned or leased facilities (such as an apartment, hunting lodge, boat, etc.) for a weekend.

However, the blanket exclusion of employer-provided group term life insurance payable on the death of a spouse or dependent from de minimis fringes was postponed until further notice by Notice 89-110, 1989-2 C.B. 447. For the time being, such insurance is deemed de minimis if the face amount does not exceed $2000; if it exceeds $2000, only the excess (if any) of the cost of the insurance over the amount paid for by the employee on an after-tax basis is taken into account.

Prop. Reg. 1.274-8(d)(2) indicates that a traditional retirement award, such as a gold watch, presented upon completion of a lengthy term of service with the employer, such as 25 years, qualifies as a de minimis fringe.

Benefits provided in the form of cash or cash equivalent (e.g., through a gift certificate or credit card) generally do not qualify as a de minimis fringe, even if the cash is intended and used for property or services which would be a de minimis fringe if provided in kind. Reg. 1.132-6(c). An exception applies to cash for occasional meals and local transportation necessitated by overtime work (but

not where the cash is calculated based on the amount of overtime). Reg. 1.132-6(d)(2)(i).

Another exception to the cash/cash equivalent rule is cash for local transportation necessitated by unusual circumstances with respect to the employee and the lack of safety of other available means of transportation. Reg. 1.132-6(d)(2)(iii). Such benefits are de minimis only to the extent that the transportation cost exceeds $1.50 per one-way commute--the first $1.50 is not excludible as a de minimis fringe. The frequency of such benefits is considered not to be administratively difficult to determine under Reg. 1.132-6(b)(2). "Unusual circumstances" are determined with respect to the employee at issue: a temporary change in schedule from day shift to night shift would be unusual; a permanent change would no longer be unusual. Safety concerns are crime in the area and time of day. For example, if an employee is temporarily working a late shift and if it would be unsafe to wait for a midnight bus in a dangerous area of town, the employer's payment of cab fare (in excess of $1.50 per one-way commute) would be a de minimis fringe. This exception does not apply to "control employees" as defined under Reg. 1.61-21(f)(5) and (6).

Another special rule applies to transit passes. Public transit passes sold for commuting purposes by employer to employee at a discount not exceeding $21 in any month are a de minimis fringe. Reg. 1.132-6(d)(1). The same rule applies to free passes or bona fide reimbursement arrangements not exceeding $21 in value in any month. If transit pass benefits or meal/transportation benefits do not meet the value or frequency limitations, then no part of the benefits are de minimis. Reg. 1.132-6(d)(4).

None of the special rules or examples in the regulation may be used to create a general rule defining a de minimis fringe. Reg. 1.132-6(d)(3). For example, the fact that $252 worth of transit passes annually ($21 per month for 12 months) may be a de minimis fringe does not mean that any fringe benefit valued less than that must also be. Also, the fact that commuting use of an employer's vehicle more than one day a month is an example of a non-de-minimis fringe does not mean that any use less than that is de minimis.

Another major category of de minimis fringe benefits is certain employer-provided eating facilities, defined with particularity under IRC 132(e)(2) and Reg. 1.132-7. While generally there are no rules for de minimis fringe benefits which prohibit discrimination in favor of highly compensated employees (Reg. 1.132-6(f)), there are such rules for employer-provided eating facilities.

C. Expense Allowances and Working Condition Fringe Benefits

The Form 990 instructions indicate that only the portion of expense allowances of employees which is **reportable as income on their separate returns** is reportable in Column (E) as expense allowance compensation. Various Code sections and regulations essentially provide that, instead of requiring an employee to report certain payments from the employer as gross income and then to deduct them, the employee may simply exclude such payments from gross income (or the employer may exclude such payments from the reported wages). Similarly, the Form 990 instructions indicate that only the **fee portion** of payments to independent contractors, **as opposed to the portion for deductible expense allowances**, should be reported as compensation. In effect, these rules exclude **working condition** fringe benefits from compensation which must be reported on Form 990, as discussed below.

The Form 990 instructions also indicate, however, that in the case of employees certain payments should always be reported as expense allowance compensation: payments made under **indemnification arrangements**, and the value of **personal use of housing, automobiles, or other assets** owned or leased by the organization or provided for the organization's use without charge. However, the value of personal use of assets is generally reportable as income on the employee's return anyway, although certain exceptions exist such as IRC 119 (lodging furnished for the employer's convenience). The regulations under IRC 132(d) and other sections help define which payments are for personal use.

What is an expense allowance? Expense allowances include advances of expenses, reimbursements, and expenses charged by the employee/independent contractor to the employer/client, as with credit cards. See, e.g., Reg. 1.62-2(d)(1); Reg. 1.162-17(b)(1). An arrangement with the same economic effect exists where the employer/client makes a payment on behalf of the employee/ independent contractor directly to a third party (e.g., where an employer buys air tickets from an airline for the employee's flight). Such a payment, as well as an advance or reimbursement to an employee or charge by an employee, may qualify for exclusion from the employee's gross income as a working condition fringe benefit under IRC 132(a)(3).

IRC 132(d) defines a working condition fringe as a benefit (property or services) provided to an employee which would be deductible under IRC 162 or 167 by the employee if the employee paid for the benefit. Reg. 1.132-5(a)(v)

indicates that cash advances may qualify as working condition fringe benefits. The regulation also contains detailed rules relating to allocation of vehicles between personal and business use, substantiation of expenses (which cross-reference IRC 274, discussed below), employer-provided transportation for security concerns, testing by employees of products of the employer, and parking. Bona fide volunteers are treated for IRC 132(d) purposes as employees with a profit motive under IRC 162. There generally are no nondiscrimination rules in determining whether an expense allowance qualifies as a working condition fringe benefit, except for testing of employer products. Reg. 1.132-5(q).

The line between an expense allowance and a fringe benefit is not always clear; an expense with any element of personal benefit to the employee/independent contractor may be viewed as a fringe benefit. However, if the expense is fully deductible under IRC 162, then it qualifies as a working condition fringe.

In the case of an employee, an expense allowance or in-kind fringe benefit **should be reported as compensation** on Form 990 if one or more of the following conditions applies:

- it is treated by the EO as wages to the employee for withholding purposes;

- it qualifies neither as a working condition fringe benefit that (in the case of expense allowances) meets the accountable plan rules under IRC 62 (discussed in the Appendix to this article), nor as a de minimis fringe;

- it relates to an indemnification arrangement or the value of personal use of housing, automobiles, or other assets owned or leased by the organization or provided for the organization's use without charge.

D. <u>Overreporting</u>

In the event that the Form 990 instructions require overreporting of actual compensation (e.g., the reporting of deferred compensation in both the year earned and the year paid), an EO can attach a statement to its Form 990 explaining how the compensation as reported is overstated. EOs are welcome to explain the entire compensation package for an individual.

E. Valuation

Another criticism of Form 990 is the difficulty of valuing certain benefits. The Service recognizes that precise actuarial cost figures may not be readily available for defined benefit plans and other plans, and allows reasonable estimates. Although many EOs hire an actuary to determine the estimate, it is not required that an EO do so in order for its estimate to be reasonable. Reasonable estimates based on available facts are acceptable, but the refusal to estimate merely because of difficulty is not.

Where the Code or regulations allow or require a specific valuation procedure for a fringe benefit (e.g., for vehicles, planes, employer-provided meals, employer parking), that valuation procedure is also allowed or required for Form 990 purposes.

F. Key Employees

Some EOs in the past avoided reporting the compensation of their top executives by not formally classifying them as "officers" under the governing instruments. Form 990 now requires compensation data for "key employees," defined as those with the powers or responsibilities of officers, directors, or trustees.

G. Compensation Splitting by Related Organizations

In the past, a popular scheme of larger EOs such as hospitals and universities was to have a top executive paid by several related entities thus making the executive's total compensation as reflected on each EO's own Form 990 appear smaller than it actually was. While the compensation may have been properly split among the entities (i.e., the official may have been performing services furthering the different business purposes of the various entities), in some cases splitting apparently was done solely to avoid full compensation disclosure on Form 990; in others to create an improper business expense deduction for a taxable subsidiary (discussed further below). In any event, the compensation paid by related entities appears to be a perquisite of a high executive position with the main organization, and may be negotiated by the executive as part of the (informal) compensation package with the main organization.

Since 1992, new rules set out in the Form 990 instructions apply to aggregating compensation paid by related organizations, based on the system used

in the Massachusetts state return for charities that solicit contributions from the public. Compensation from related organizations must be reported where the total compensation from the organizations related to the EO exceeds $10,000, and the total compensation from the reporting EO and the related organizations exceeds $100,000.

The instructions go into some detail in defining a "related" organization. Generally speaking, a related organization is any entity that owns or controls or is owned or controlled by (directly or indirectly) the filing organization, or that supports or is supported by the filing organization. A 50% test is used for ownership or control. The rules look at commonality of officers, directors, trustees, and key employees, and the power to appoint such, in determining "control." As in IRC 509(a)(3), "support" includes furthering the purposes of the supported organization.

5. Compliance Problems

A. Below-Market Loans

A loan between an EO and another person associated with the EO invites close scrutiny by the Service, particularly if the terms of the loan by an EO to an employee/independent contractor are more favorable than terms available from unrelated lenders (e.g., lower interest rate, less security). Even if the loan terms are similar to those available from unrelated lenders, the mere existence of a "private" source of loan credit available to executives or highly compensated employees/independent contractors which is not made available to rank-and-file employees or other members of the general public may be viewed as a form of inurement. See Founding Church of Scientology, John Marshall Law School, supra;, 333.3(10) of the EO Examination Guidelines Handbook.

Part IV of Form 990 requires a schedule containing the essential terms of the loans to or from officers, directors, trustees, and key employees. In addition, some loans give rise to income to the borrower which is reportable as compensation on Form 990. Loans between EOs and employees/independent contractors are presumed to be compensation-related under IRC 7872(c)(1)(B). If an EO makes a loan (to which IRC 7872 applies) to an employee/independent contractor at an interest rate below the applicable Federal rate referred to in IRC 7872(f)(2), then any foregone interest determinable under IRC 7872(a) or imputed transfer determinable under IRC 7872(b) is a compensation-related fringe benefit. As such, it should be reported as compensation on Form 990.

Also, a below-market loan from an EO to its employee/independent contractor is ordinarily not regarded as within the exemption from IRC 7872 under Reg. 1.7872-5T(b)(11) for loans which accomplish an IRC 170(c)(2)(B) purpose, since the primary purpose of such a loan is generally to compensate the borrower.

B. Benefits to Spouse/Family Members/Others

Reg. 1.61-21(a)(4)(i) provides that a taxable fringe benefit is included in the income of the person performing the services in connection with which the fringe benefit is furnished, even if the fringe benefit is actually received by someone else. For example, the provision of an automobile by an employer to an employee's spouse in connection with the performance of services by the employee is taxable to the employee, not to the spouse.

The includibility in income and deductibility of spousal travel has recently undergone a fair amount of revision. Under IRC 274(m)(3), enacted in 1993, if a spouse, dependent, or other individual (i.e., a companion) accompanies an employee/ independent contractor of the EO on travel, and the EO pays the travel expenses of the companion, such payment is ordinarily not deductible by anyone. Thus, the employee/independent contractor must take the payment into income, but neither the EO nor the employee/independent contractor can deduct the expense. An exception applies where the companion is an employee of the taxpayer, the companion's travel is for a "bona fide business purpose," and the expenses would otherwise qualify as IRC 162 business expenses. The plain language of the statute would suggest that where the EO pays the travel expense of the companion, such payment would always be reportable as expense allowance compensation to the employee/independent contractor on Form 990, unless the exception applied.

However, Prop. Regs. 1.132-5(s) and (t) and 1.274-2(f)(2)(iii), reprinted at 1995-2 I.R.B. 55, would allow an employer's payment of spousal travel expenses to be excluded from the employee's gross income as a working condition fringe benefit if (1) business purpose and substantiation requirements are met, and (2) the employer does not report these expenses as a compensation deduction on its own income tax return and as income on the employee's Form W-2 (as discussed in the Appendix, an EO is unlikely to do so). As working condition fringe benefits, these payments need not be reported as compensation on Form 990. Presumably, in the case of an EO, which might not carry on any trade or business in the IRC 162 sense, a purpose solely to benefit the EO qualifies as a bona fide business purpose.

See Reg. 1.162-17(b)(1). However, a spouse's performance of some incidental service does not cause the spouse's expenses to qualify as deductible business expenses. Reg. 1.162-2(c).

C. IRC 403(b) and 457 Plans

As discussed above in section 4A, deferred compensation must be reported on Form 990, even if a plan is not qualified for tax benefits, not yet funded by the EO, and not yet vested in the employee/independent contractor. Thus, all liabilities of an IRC 403(b) or 457 plan in respect of an employee or independent contractor must be reported as compensation on Form 990.

D. Shifting Compensation to Taxable Subsidiary

Many larger EOs have taxable subsidiaries or other related taxable entities (see section 4G above for the latter). The EO executives often serve as officers or directors of the related taxable entities. Since business expense deductions for compensation are more valuable to the taxable entity than to the EO, there is an incentive for more of the compensation of the EO executives to be paid by the taxable entity and less by the EO.

Such compensation shifting is subject to reallocation by the Service under IRC 482 to clearly reflect the income of the organizations involved and to prevent the evasion of tax. Southern College of Optometry, Inc. v. Commissioner, T.C.M. 1947-079, held that the statutory predecessor to IRC 482 may be applied to exempt as well as taxable organizations. Likewise, the 1994 final regulations under IRC 482 (Reg. 1.482-1(i)(1)) broadly define the term "organization" to include any organization regardless of whether it is taxable. In Cooper Agency v. Commissioner, 33 T.C. 709 (1960), acq., 1961-2 C.B. 4, the court reversed the Service's reallocation of portions of salaries of common employees of Cooper Agency and of Perpetual Building and Loan Association from the former to the latter, based on its finding of fact that the salaries paid by the former were reasonable for the services rendered.

As a corollary to the application of IRC 482, the portion of the EO compensation deduction taken by the taxable subsidiary properly disallowed under IRC 482 may be treated as an IRC 301 distribution (a distribution of property to a shareholder with respect to its stock) to the exempt parent corporation followed by a payment on the part of the exempt parent corporation to the EO executives. See American Properties, Inc. v. Commissioner, 28 T.C. 1100 (1957), aff'd per curiam,

262 F.2d 150 (9th Cir. 1958). Such payment, which is not properly reported as compensation by the EO on Form 990, is subject to the penalties discussed in section 2 above.

For example, suppose a hospital president also resides on the board of a for-profit subsidiary that pays her $40,000 a year to attend a couple of board meetings. The president devotes about 40 hours of work annually on behalf of the subsidiary, for an effective rate of compensation of $1000 per hour. If reasonable compensation for this position were not more than $4000 per year, then the Service may be justified in treating the additional compensation of $36,000 as constructive dividends paid from the subsidiary to the hospital, and paid from the hospital to the president as payments in the nature of compensation but not reported on Form 990.

E. Incomplete Form 990

A situation that happens too often to appear as an honest mistake exists where the preparer notes "see attached" on the executive compensation section of Form 990 but the attachment is missing and never sent in. The Service naturally views such omissions with skepticism, particularly if they happen recurrently with respect to a given EO. An organization that files a Form 990 with such important information missing may be subject to the penalties discussed in section 2 above. The preparer could also be assessed an IRC 6652 penalty as a responsible person.

6. Conclusion

The Service has changed Form 990 in recent years to plug loopholes in the reporting of executive compensation, and unquestionably will continue to do so in future as organizations devise new ways to avoid such disclosure. Deferred compensation, fringe benefits, expense allowances includible in income, and income from related organizations are probably less fully reported than straight salaries, and thus areas worth exploring on examination. However, there may be some confusion and complexities arising from the different definitions of compensation for purposes of Form 990, employee plans, employer taxes, etc. In dealing with compensation issues, EOs must borrow concepts from other Code sections designed with for-profit operations in mind. Adapting these definitions to an EO context can be difficult. These complications should be considered in determining whether and to what extent penalties should be assessed, particularly with respect to organizations with publicly representative boards which lack the resources to obtain tax advice in preparing their returns.

**APPENDIX**

This appendix discusses in greater detail the extent to which an expense allowance is reportable as compensation on Form 990. The key issue generally is whether the expense is deductible by the employee in determining adjusted gross income (or by the independent contractor in determining taxable income); to the extent it is not, then the expense allowance will generally constitute compensation unless it qualifies as a de minimis fringe benefit. The primary Code sections involved are IRC 62, 162, and 274.

(1) IRC 62 and 162

IRC 162(a) allows a deduction for all ordinary and necessary expenses incurred in carrying on a trade or business. IRC 162(a) deductions may be taken by an employee in the business of performing services as an employee, as well as by an independent contractor in the business of performing services for clients. IRC 212, which allows a deduction to individuals for ordinary and necessary expenses incurred for the production of income, would apply to an independent contractor who is not engaged in a business for purposes of IRC 162.

IRC 62(a), which defines adjusted gross income ("AGI"), bears on the issue with respect to employees. Expenses paid or incurred by an employee in connection with the performance of services as an employee are deductible from the employee's gross income in determining AGI, but only under an expense allowance arrangement with the employer which requires the employee to substantiate the expenses and to return amounts in excess of the substantiated expenses within a reasonable period of time. See IRC 62(a)(2) and (c); Reg. 1.62-2. Reg. 1.62-2(c)(2) refers to such an expense allowance arrangement as an "accountable plan." In general, if an expense allowance arrangement fails to meet any of the three requirements (business connection, substantiation, and return of amounts in excess of expenses), then it is a "nonaccountable" plan. However, if an arrangement meets the accountable plan rules except for the allowance of other bona fide expenses related to the employer's business that are not deductible (e.g., travel that is not away from home), then part of the expense allowance is treated as an accountable plan and part as a nonaccountable plan. Reg. 1.62-2(d)(2).

Amounts paid under an accountable plan are excluded from the employee's gross income, are not reported as wages or other compensation on the employees' Form W-2, and are not subject to the withholding and payment of employment

taxes. Reg. 1.62-2(h)(1). Conversely, all amounts paid under a nonaccountable plan generally are included in the employee's gross income as wages and are subject to employment tax withholding. Reg. 1.62-2(h)(2)(ii). **Amounts paid under a nonaccountable plan should be reported as expense allowance compensation on Form 990**. Also worth noting is Prop. Reg. 1.62-2(b)(1), reprinted at 1995-2 I.R.B. 55, which provides that where a plan is nonaccountable due solely to the rule of 50% nondeductibility of entertainment and meals under IRC 274(n), the nondeductible amounts are not treated as wages--such amounts should not be treated as compensation for Form 990 purposes either.

Some of the most difficult issues concerning business deductions involve entertainment, meals, and travel expenses. Depending on the circumstances, such expenses may be deductible. For instance, IRC 162(a)(2) expressly allows a deduction for travel expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a business. However, IRC 262 generally precludes deductibility of personal, living, or family expenses. The problem arises where an expense is related to business but also involves personal benefit. The mere fact that an expense charged by an employee/independent contractor to the employer/client is allowed by the latter does not necessarily mean that the expense is a business expense for tax purposes. The regulations under IRC 162 and 274 to a large extent distinguish business expenses from personal expenses. See, e.g., Regs. 1.162-2 and 1.274-2 (which distinguish between deductible business and nondeductible personal travel expenses (including meals) of a "mixed" business/personal trip); Reg. 1.274-2 (which identifies the deductible (business) portion of entertainment expenses).

(2) IRC 274

Another important provision in determining the deductibility of business expenses is IRC 274, which limits the deductibility of certain expenses that otherwise would be deductible under IRC 162. IRC 274 was enacted in 1962 to curb deductions for entertainment, meals, travel, and similar expenses that confer substantial personal benefits on the recipients and that have only a remote connection with the needs of the business. In addition to denying deductions, IRC 274 establishes strict requirements for substantiating allowable deductions.

In some instances, IRC 274 disallows a deduction to the employer but not to the employee or independent contractor recipient where an expense allowance exists, and therefore has little effect with respect to EOs. For example, IRC 274(a)

disallows an IRC 162 deduction for certain entertainment, amusement, or recreation expenses, including country club dues. Suppose a physician employee of a taxable health care organization pays the dues for entry into a golf and country club. She says that she hates golf but deems it necessary to play in order to establish important business contacts with other club members. She accounts to her employer for the club dues in the manner required under the IRC 62 and 274 regulations, establishing that the club was used entirely for business purposes, and the employer reimburses her for the dues. The employer would like to deduct the reimbursement expense, but IRC 274(a) prohibits the deduction (unless it treats the reimbursement expense as compensation to the physician on Form W-2).

Is the physician also prohibited from using the club dues expense as a deduction to offset her reimbursement income from the hospital? No. IRC 274(e)(3) and the regulations allow an IRC 162 deduction to an employee/independent contractor incurring an expense under an expense allowance arrangement with her employer/client to the extent of substantiated business use of the club, except where the employer/client treats the expense allowance as compensation to the employee/independent contractor on its return. See Prop. Reg. 1.132-5(s)(2), Examples 1 and 2. Where expense allowances exceed expenses or an accounting is not required or not adequately done, the deduction may be disallowed in whole or part at the employee/independent contractor level as well. See Reg. 1.274-5T(f) (for employees); Reg. 1.274-5T(g) (for independent contractors).

The reason for the IRC 274(e)(3) rule is to prevent the "double disallowance" of a deduction at both the employer and employee levels (or at both the client and independent contractor levels). Where the employer/client incurs a nondeductible expense directly, the employee/independent contractor does not have a deduction to lose. However, where an expense allowance exists, a deduction is available at both the employee/independent contractor level and the employer/client level. Since the distinction between the two situations is only a matter of form rather than substance, the IRC 274(e)(3) rule is needed to ensure that both situations have the same tax result.

However, the picture changes significantly where the employer/client is an EO, since EOs generally pay no tax and therefore do not care whether expenses are deductible or not. Where the employer/client is an EO and IRC 274(e)(3) applies, IRC 274 has no disallowance effect whatever (except in the limited situation where the employer is carrying on unrelated business), even though the potential for the abuse that IRC 274 is intended to correct clearly exists (i.e.,

expenses for entertainment, meals, and travel with little connection to the purposes of the EO).

The same IRC 274(e)(3) rule (i.e., allowing a deduction at the employee/independent contractor level for expenses covered by an expense allowance) applies to certain other expenses for which a deduction is otherwise disallowed under IRC 274: lavish business meals or meals at which the taxpayer or an employee is not present (IRC 274(k)); certain luxury water transportation expenses (IRC 274(m)(1)); and 50% of meal and entertainment expenses (IRC 274(n)). The regulations apparently extend the IRC 274(e)(3) rule to gifts otherwise disallowed as a deduction under IRC 274(b). Reg. 1.274-5T(f), (g).

However, the IRC 274(e)(3) rule does not apply to the nondeductibility of certain foreign travel under IRC 274(c); of certain conventions held outside the North American area or held on cruise ships under IRC 274(h); of certain entertainment tickets and skyboxes under IRC 274(l); and of travel expenses for education under IRC 274(m)(2). Such expenses are not deductible at any level as a business expense, and **allowances for such should be reported on Form 990.** Although the IRC 274(e)(3) rule does not on the face of the statute apply to spousal travel expenses under IRC 274(m)(3), Prop. Reg. 1.132-5(s) and (t), as discussed above, effectively applies the 274(e)(3) rule.