# Form 990, Schedule A and Schedule B

By Cheryl Chasin, Susan L. Paul, and David W. Jones

# Form 990, Schedule A and Schedule B

By Cheryl Chasin, Susan L. Paul, and David W. Jones

## Overview

**Purpose**

**Increase understanding of Form 990 and Schedules A and B to sharpen skills**

This article deals with specific issues on Form 990 and Schedules A and B. It provides information that can be used by exempt organizations so that they can meet their filing requirements; by revenue agents so they can understand the information contained on the return and schedules; and by the public so that they can answer questions they have about exempt organizations.

In this article, we will discuss questions such as who files the form, who is excepted, and what are the disclosure rules concerning the form. We will also discuss Schedules A and B, the two schedules most often associated with the form.

**In this article**

This article contains the following topics:


| Topic | See Page |
|---|---|
| Overview | 1 |
| Form 990 Filing Questions | 2 |
| Schedule A | 12 |
| Schedule B | 21 |

# Form 990 Filing Questions

**Who files?**

**Q: Who files Form 990?**

A: IRC 6033 refers to some organizations in IRC 501(a). They don't all file Form 990, however. They file other information returns. Private foundations are, for example, Form 990-PF filers. Black Lung trusts, exempt under IRC 501(c)(21) file Form 990-BL. Also, a stock bonus, pension or profit-sharing trust, described in IRC 401(a), files Form 5500. There are other mandatory and discretionary exceptions. If you are an excepted organization, you don't file an IRC 6033 information return. A better question is, which organizations don't have to file?

*Continued on next page*

## Form 990 Filing Questions, Continued

**Who doesn't file?**

**Q: Who else doesn't file?**

A: There are several types of state and governmental organizations that are not required to file Form 990. They include:

- A state institution whose income is excluded from gross income under IRC 115.
- An organization described in IRC 501(c)(1). These are corporations organized under an Act of Congress and are instrumentalities of the United States and are exempt from Federal income taxes.
- A governmental unit or affiliate of a governmental unit.

**Q: Does an organization's gross receipts affect whether it is required to file?**

A: Yes. Generally, organizations do not have to file Form 990 if they are:

- An organization with annual gross receipts that are normally $25,000 or less.
- A foreign organization with annual gross receipts from sources within the United States that are normally $25,000 or less.

**Q: What other organizations don't have to file?**

A: Many types of religious organizations do not have to file such as:

- A church, an interchurch organization of local units of a church, a convention or association of churches, an integrated auxiliary of a church.
- Church affiliated organizations that are exclusively engaged in managing funds or maintaining retirement programs and are described in Revenue Procedure 96-10, 1996-1 C.B. 577.
- A school below college level affiliated with a church or operated by a religious order.
- A mission society sponsored by or affiliated with one or more churches or church denominations that meets certain additional requirements.
- An exclusively religious activity of any religious order.

*Continued on next page*

## Form 990 Filing Questions, Continued

**Churches and filing**

**Q: If a church has a number of subordinate or ancillary organizations like sewing circles and senior citizens groups, do they have to file Form 990?**

A: First, they are usually small and have receipts of less than $25,000. Second, even if they aren't too small to file, they are probably integrated auxiliaries of a church.

**Q: Are all church related organizations integrated auxiliaries of a church?**

A: The critical requirement is that they must be "internally supported." They cannot offer admissions, goods, services, or facilities on more than an incidental basis to the public. They cannot receive more than 50% of their support from governmental sources, public contributions or sales from are unrelated trades or businesses. Most church-related organizations can fit the definition of integrated auxiliary.

**Q: What sort of church-related organization might not be an integrated auxiliary?**

A: A hospital. Generally, a hospital receives more than 50% of its support from third party payors and patients.

**New organizations and filing**

**Q: Small organizations are excepted from the filing requirement if their receipts are "normally" less than $25,000. How can a new organization know what their "normal" receipts are?**

A: New organizations can receive up to $37,500 during their first year. They can average up to $30,000 during their first two years. After that they must average no more than $25,000 per year for any three-year period.

*Continued on next page*

## Form 990 Filing Questions, Continued

**Political organizations and filing**

**Q: Is it true that as of the year 2000, political organizations must also file Form 990?**

A: Yes. For years beginning after June 30, 2000, political organizations that are described in Code section 527 file 990s.

**Q: Do political organizations answer the same questions on Form 990 that other filers answer?**

A: Yes, as a general rule. There are a few questions political organizations don't have to answer. These are identified in the instructions.

**Q: Does the gross receipts exception apply to political organizations?**

A: Yes.

**General Rules**

**Q: Form 990 filing exception rules are pretty complex. Do you have some general rules I can keep in mind?**

A: Always remember the two major exceptions to filing. First are the small organizations: those whose gross receipts are normally not more than $25,000. Second are the churches, their integrated auxiliaries, and conventions and associations of churches. As you know there are a lot of others, but those two are the big ones.

**Filing Form 990-EZ**

**Q: Where does Form 990-EZ fit in?**

A: There is another type of filing for organizations with receipts of more than $25,000. If an organization's gross receipts are less than $100,000 for the year and its assets less than $250,000 at the end of the year, it has the option of filing a Form 990-EZ. This is a form that asks for less information than is asked for on Form 990. However, remember that private foundations are not Form 990 filers and don't have the Form 990-EZ option. Political organizations may file the 990-EZ if they meet these financial tests.

*Continued on next page*

## Form 990 Filing Questions, Continued

**Using Form 990 to meet state filing requirements**

**Q: Many state officials have told me that they allow exempt organizations to meet their state and local government filing obligations with Form 990. How does that work?**

A: Yes, many state charity regulators allow organizations to meet their filing and registration requirements with Form 990. However, everyone should be alert to local differences. Some states require a copy of an organization's audited financial statement in addition to the Form 990. Other states require that certain items should be reported under a method of accounting that is different from the methods required by the Code. This can affect when receipts and deductions are reported. For example, some state returns have to be prepared using an accrual method of accounting. On the other hand, Part IV-A of the Schedule A for Form 990 specifically requires filers to show their financial support using a cash method of accounting. The bottom line is a filer's federal return might, in some circumstances, show items differently from state returns.

**Due dates**

**Q: Please tell me about due dates.**

A: Form 990 is due on the 15th day of the 5th month after an organization's accounting period ends. For example, a calendar year organization's return is due May 15th. A filing extension is available. You can file a Form 8868 to get an automatic extension of 3 months for an organization. You can extend another 3 months if the organization can show cause.

*Continued on next page*

## Form 990 Filing Questions, Continued

**Consequences for Nonfilers**

**Q: What if someone just doesn't bother to file Form 990? After all, it's only an information return.**

A: That decision might affect an organization's contributions. Organizations that are eligible to receive tax deductible contributions are listed in our Publication 78. Potential contributors frequently check this list to see if an organization is qualified to receive deductible contributions. Organizations which are required to file annual information returns, Form 990 or Form 990-PF, as required by IRC 6033, but which have not done so for two years (extensions of time to file considered), may be excluded from Publication 78. The exclusion of the organization from the publication does not mean the IRS terminated recognition of its exempt status. The organization may continue to receive tax deductible contributions, it just won't be listed in Pub 78.

**Q: Is there a penalty for failure to file?**

A: Yes, there is. It's two-tiered. It's $20 a day, not to exceed the lesser of $10,000 or 5% of the gross receipts of the organization. For organizations with annual gross receipts of $1 million or more, it's $100 a day not to exceed $50,000.

**Q: What happens if an organization fails to complete a critical line item?**

A: IRC 6652 provides a penalty for that and for failure to show the correct information as well. It's the same as the penalty for a failure to file the return.

**Q: Is there a penalty against responsible persons if an organization fails to file a return?**

A: If the organization does not file a return or fails to file a complete return, the IRS will send the organization a letter that includes a fixed time to fulfill these requirements. After that time expires, the person failing to comply will be charged $10 a day. The maximum penalty on all persons for failures with respect to any one return is $5000.

*Continued on next page*

## Form 990 Filing Questions, Continued

**Amended returns**

**Q: What if new information comes to light that changes the information provided on a filed Form 990? How do you file an amended return?**

A: To change the organization's return for any year, file a new return including any filed attachments. The new return must provide all the information called for by the form and instructions, not just the new or corrected information. The organization must make both the original return and the amended return publicly available.

**Final returns**

**Q: I've noticed the final return filing requirements are confusing. Lets talk about them.**

A: On the heading of Form 990, there is a box to check if it is the organization's final return. Literally, this means the final Form 990 to be filed with the Service. An organization should not check the box unless it is dissolved , out of existence, and filing its last Form 990.

An organization files its articles with the state and it is a creature of state law. State law dictates when organizations dissolve or otherwise go out of business. For example, an organization that is winding down and drops under the gross receipts test for its last few years should not mark the last filed Form 990 as a final return. If they mark the last filed Form 990 as a final return and do not dissolve for another year or two under state law, there may be adverse consequences. When it receives the last filed Form 990 with the final return box checked, the Service will immediately classify the organization in the master file records as "not in existence" and they will be removed from Publication 78.

**Q: Ok, Line 79 on the return asks if there has been a liquidation, dissolution, termination or substantial contraction of the organization. It seems simple. An organization that answers yes to that question must file a final return. Am I right?**

A: Oh, I'm afraid not. They only must attach documents to explain the transaction.

*Continued on next page*

## Form 990 Filing Questions, Continued

**Disclosure - Generally**

**Q: The disclosure of returns seems to be a subject of great interest these days. I know there are lots of questions I could ask. Suppose, however, that you just tell me a few things about it.**

A: Sure. I might begin by saying in some respects, exempt organization information is quite different from information the IRS has about other taxpayers. Think about the information on Form 1040, your individual income tax return. With a few minor exceptions, it is confidential. Exempt organizations are dramatically different. IRC 6104 provides that certain information is "open for public inspection." Two large categories are specifically referred to by the disclosure statute – applications and their supporting documents and annual information returns.

Start with the assumption that Congress has made most exempt organization information public. This can include some very personal information. The Regs supporting IRC 6033 require the Service to obtain salary information about directors, trustees, officers and key employees on Form 990. If you were a trustee of a major university, your salary would be a matter of public record. IRC 6104 weighs public good against private detriment on this question and makes the call in favor of public good.

*Continued on next page*

## Form 990 Filing Questions, Continued

**Uses of disclosed information**

**Q: It seems to me that the disclosure rules have enormous ramifications. Reporters can use Form 990 information for their articles. Watchdog groups can use Form 990 data to monitor certain charities. Professors can research Form 990 statistics to study certain categories of charities or the behavior of specialty groups like hospitals and universities.**

A: That's all true. In fact, information is more accessible than ever before. Returns are being posted to the internet and this means it's only a couple of clicks away.

**Q: What do you know about the information published on the internet?**

A: The information published on the internet may not be perfect. That's not to say that it's not high quality or even useful. It's just that many sites do some editing. They don't show the return exactly as filed with the Service. There is an exception to this. Certain forms of IRC 527 organizations, notably the Form 8871 and the Form 8872, published on the IRS website, *are* exactly as filed with the Service.

**Q: Does that matter?**

A: For most things, no. It does not. Although websites usually don't reproduce the exact copy of a return filed with the Service they may still be useful. People should understand that most sites use raw data provided by the Service. They frequently edit personal items such as preparer's signatures. For information that responds to line items, these sites are pretty good.

*Continued on next page*

## **Form 990 Filing Questions,** Continued

**Requesting an exact copy**

**Q: How does someone get a return exactly as filed with the Service?**

A: Someone can get a return exactly as filed with the Service in two ways. One, from the Service or two, from the organization. A copy of an exempt organization's or a IRC 527 political organization's Form 990 may be obtained from the Service by filling out Form 4506-A and sending it to the address in the instructions. A person can also inspect a return at an IRS office free of charge.

**Q: Sometimes when a person makes a request from the government, it just takes too long to get a response. How can someone request a copy of a return from an exempt organization?**

A: The 3 most recent returns are available for inspection at an organization's principal office. If an organization maintains a regional or a district office with 3 or more employees, the return is available from there as well. Copies of a return are also available from an organization. There is a penalty that can be imposed on organizations that fail to make their returns available. It's $20 a day for each day the inspection is denied up to a maximum of $10,000.

**Q: What is the cost?**

A: The organization may charge a requestor a reasonable fee for copies and postage costs. It may not, however, charge more than the IRS charges. IRS charges are published in Reg. Section 601.702(f)(5)(iv)(B).

**What will be withheld from public inspection?**

**Q: Can you tell me what type of information can be withheld from public inspection?**

A: Sure. Two things can be withheld. First, the names and addresses of contributors along with information that identifies contributors are not disclosed. To be identifying, information must be something that publicly identifies the contributor. It cannot be information that *might* identify the contributor. Second, trade secrets will not be disclosed if the organization establishes in advance that something is a protected trade secret.

# Schedule A

**General**

**Q: What is Schedule A?**

A: IRC 501(c)(3) organizations and IRC 4947(a)(1) trusts that are Form 990 or Form 990-EZ filers file Schedule A. Technically, it is part of the return. There are certain questions – private foundation status, for example – that are unique to IRC 501(c)(3) organizations. There are other areas where the compliance interest is higher for IRC 501(c)(3) organizations than it is for other types of exempt organizations. Schedule A can be viewed as a component of Form 990 that collects information that will answer these specific IRC 501(c)(3) questions.

**Part I of Schedule A**

**Q: Part I of Schedule A asks for the compensation paid to the five highest paid employees. What's that all about?**

A: Part I of Schedule A asks for the same sort of information about the 5 highest paid employees that Part V of Form 990 asks about directors, trustees, and officers. In fact, if an employee is listed in Part Five of the return, he or she should not be listed in Part I of Schedule A.

**Q: If a person doesn't understand something in Part I, is there some rule of thumb they can use to try to interpret it?**

A: Words mean the same in Part I of Schedule A as they do in Part V of the return. For example, in column (a) of Part I of Schedule A, the form asks for the names and addresses of the highest paid employees. The instructions in Part I are silent about which address to use. Part V of the Form 990, however, instructs filers to use "the preferred address at which officers, etc. want the Internal Revenue Service to contact them." Both Part V of Form 990 and Part I of Schedule A have columns that ask for (b) title and average hours per week devoted to a position; (c) compensation; (d) contributions to an employee benefit plan and other deferred compensation; and (e) expense account and other allowances.

**Q: What does Part I of Schedule A mean when it asks for the total number of other employees paid over $50,000?**

A: I think that is straightforward. "Other" means those not listed in Part V of Form 990 and not already listed in Part I of Schedule A.

*Continued on next page*

## **Schedule A,** Continued

**Part II of Schedule A**

**Q: Part II of Schedule A asks for the five highest paid independent contractors for professional services. Why do we want that information?**

A: If I were to nominate the one particular part of Schedule A that is most useful for compliance purposes, this would be it. That information can be used to identify private benefit transactions and excess benefit transactions described in IRC 4958. Reg. Section 6033-2(a)(ii)(g) clearly states that contractors should be listed here whether the services are performed by them in their individual capacity or as employees of a professional corporation. Remember, an exempt organization can provide an excess benefit indirectly to a disqualified person through an intermediary. Individuals, taxable corporations and tax-exempt organizations can all be intermediaries. In fact, Treas. Reg. 4958 contains several examples of intermediaries such as management services companies, fundraisers and consulting companies.

**Q: Is there a distinction to be made between compensation paid and reimbursements?**

A: Yes. Part II of Schedule A asks for compensation only. The instructions state that: "Part II is intended for the fee payment to contractors, not for any expense reimbursements."

**Q: Does Part II ask for the number of other highly compensated contractors?**

A: Yes. The form asks for the number of other contractors who are paid more than $50,000.

**Part III of Schedule A – activities?**

**Q: Part III of Schedule A is titled <u>Statements About Activities</u>. That's rather general. What kind of activities do they want to know about?**

A: Part III's questions highlight several IRC 501(c)(3) organization compliance issues that have been of particular concern.
Let's review some of the questions.

*Continued on next page*

## **Schedule A,** Continued

---

**Part III of Schedule A, Question 1- Lobbying expenses**

A: Question 1 asks for amounts spent on lobbying. Lobbying expenses may be computed in either of two ways. If the organization has made an election under IRC 501(h) by filing Form 5768, it may compute its lobbying expenditures under the IRC 501(h) lobbying standard. In that case, the computation is made in Part VI-A of Schedule A and the total expense is entered.

Organizations may have chosen not to elect. In that case they analyze their lobbying activities under the "substantial part" test. To do this they complete Part VI-B of the Schedule A and enter that total.

---

**Part III of Schedule A, Question 2- Insiders**

**Q: Question 2 asks about transactions with insiders. What are insiders?**

A: Insiders include substantial contributors (for example, anyone who would be a substantial contributor if this were a private foundation.) Insiders are also trustees, directors, officers, creators, key employees or members of the families of anyone mentioned above. They are also taxable corporations that any of the above persons are affiliated with.

**Q: What kind of transactions are included here?**

A: Filers should include the sale, exchange or leasing of property;
the lending of money or other extension of credit; the furnishing of goods, services or facilities; the payment of compensation (or reimbursement of expenses if more than $1000); or any other transfer of any part of its income or assets.

**Q: Suppose an organization made a grant to an insider for IRC 501(c)(3) purposes. Would that be reported in question 2?**

A: Yes. It fits the description in e, a transfer of income and assets. Organizations answering yes to any part of question 2 are given an opportunity to explain their answers in an attachment.

---

*Continued on next page*

## **Schedule A,** Continued

---

**Part III of Schedule A, Question 3 – Scholarship programs**

**Q: Question 3 asks particularly about whether there is a scholarship program. Will you explain what this question is about?**

A: The purpose of the question is twofold. First, it asks about the existence of the program. Second, the form asks for an attachment that explains how the organization chooses the recipients.

---

**Part IV of Schedule A – Reason for Non-Private Foundation Status**

**Q: Part IV of Schedule A asks about an organization's "Reason for Non-private Foundation Status." What is that all about, A?**

A: Let's review. Forms 990 are filed by IRC 501(c)(3) organizations that are not private foundations. In Part IV, we are asking filers to explain why they are not. In addition, in some cases, an organization's non-private foundation status depends, in part, on yearly support figures. The Service asks those organizations to fill out Part IV-A, a support schedule.

**Q: Tell us about the first half of Part IV.**

A: The first half of Part IV requires an organization to check a box indicating the basis of its claim to non-private foundation status. IRC 509(a)(1)-(4) lists the different reasons an organization can qualify as not a private foundation.

**Q: I see that we ask organizations that check three of those reasons to fill out the Part IV-A support schedule. The three types of organizations that must complete the schedule are organizations that benefit colleges and universities owned by a governmental unit, organizations that receive a substantial part of their support from the general public, and organizations that receive more than 1/3 of their support from contributions, membership fees and gross receipts. Is this really necessary?**

A: These are organizations that are not private foundations because of the amount of support they receive from the public. The support schedule of Part IV-A reports the financial information that will support that conclusion.

---

*Continued on next page*

## **Schedule A,** Continued

**Part IV of Schedule A – The Support Schedule**

**Q: The support schedule requires four years of financial information. Why?**

A: Non-private foundation status is based on an organization's four-year record.

**Q: You spoke of three support tests. Why three?**

A: Two of the tests are identical – the one for colleges and universities owned by a governmental unit and the one for organizations that receive a substantial part of their support from the general public. This test measures support for organizations supported by contributions.

The other test is for organizations that receive most of their financial support from activities related to their exempt purpose. They must receive more than 1/3 of their support from contributions, membership fees and gross receipts that relate to their exempt activities. An amateur theater is a good example.

**Q: A, why can't the amounts in Part I of Form 990 be transcribed to the support schedule?**

A: There are three basic reasons. First, Part I of Form 990 and Part IV-B of Schedule A may involve different methods of accounting. Since section 509 regulations state that support must be measured using the cash receipts and disbursement method of accounting, the instructions to Part IV-A of Schedule A require that the support schedule be completed using that method. Part I of Form 990 allows a filing organization to report using its own method of accounting. This creates the possibility that the two Parts may be reported using different methods of accounting. Second, there is not absolute comparability. For example, IRC 509(d), in its definition of support, lists "…tax revenues levied on behalf of an organization and .. expended on behalf of the organization…" as support. Part I of Schedule A does not include this as revenue. Nonetheless, it is used to calculate support. Third, the tax year for which Form 990 is being filed does not appear on the support schedule. The calculation is based on the four years immediately preceding the current year.

**Q: Should we say anything more about the support schedule?**

A: The support schedule has one thing that is new this year. Lines 26b, 27a, 27b, and 28 ask filers to prepare lists to help them in their calculations. This year we are asking filers **not to submit the lists.** A filing organization should keep the list in its records.

*Continued on next page*

## Schedule A, Continued

**Schedule A, Part V – Non discriminatory student policy**

**Q: Rev. Proc. 75-50, 1975-2 of the Cumulative Bulletin, page 587 sets out guidelines for private schools about the records they have to keep to show they have a nondiscriminatory student policy. Tell us the role Part Five of Schedule A plays in administering these requirements.**

A: Part V asks a series of questions that the organization answers by reference to the required records. Schools that check box 6 in Part Four must complete this Part.

**Q: The Rev. Proc. also asks schools to certify that they have met its requirements. Organizations that file Form 990 make certification in Part Five of Schedule A. How do non-filing organizations certify?**

A: They can certify by filing Form 5578 with the Service each year.

*Continued on next page*

## **Schedule A,** Continued

**Schedule A, Part VI - Lobbying**

**Q: If an organization answers yes to Question 1 in Part III of Schedule A, then they must complete Part VI-A or Part VI-B of Schedule A. These parts use two different methods to measure lobbying activity. Why two methods?**

A: Historically, organizations could lose exemption by engaging in "substantial" lobbying. Courts struggled to define how much was substantial and the means of measuring it. If an organization was planning a lobbying effort, this confusion made it difficult to predict how much lobbying was more than insubstantial. IRC 501(h) was enacted to provide clarity on this question. IRC 501(h) provides exact dollar limits on the permissible lobbying expenditures an organization may incur.

However, different organizations are affected differently by exact dollar limits depending on the nature of their lobbying program. For example, an organization that uses significant volunteer labor would find an exact dollar limit easier to meet than an organization that didn't. Therefore, the lobbying test is structured in the alternative. Organizations can "elect" to be covered by the exact dollar limit of IRC 501(h). If they don't elect, they are covered by the "substantial part" test. Basically, since there are alternative ways to measure lobbying, there are two parts in Part VI of Schedule A.

**Q: Once again, please explain why an organization would "elect" to be covered by the regime of IRC 501(h) – and complete Part Six-A?**

A: Certainly. We measure excess lobbying in specific dollars. If the organization knows its expenditure limit in advance, it can plan accordingly. Some say that inflation has eroded the specific limits of IRC 501(h). They contend that the "substantial part" test – measured in Part Six-B-allows organizations more leeway.

**Q: Does making the election "red flag" the organization for examination?**

A: No.

**Q: How does an organization make an IRC 501(h) election?**

A: Organizations that wish to elect under IRC 501(h) must file Form 5768 with the Service *within* the tax year to which it applies. An organization may revoke the election. However, it must do so *before* the first day of the tax year in which the revocation applies.

*Continued on next page*

## **Schedule A,** Continued

**Schedule A, Part VII, Question 1- Related Entities**

**Q: Part VII of Schedule A is titled "Information Regarding Transfers to and Transactions and Relationships With Noncharitable Exempt Organizations". What's behind the decision to ask for this information?**

A: It's been a trend, in recent years, for certain types of organizations to structure themselves as a group of related entities. They do this to accomplish program goals that no single entity can accomplish. For example, a wildlife group may wish to have educational and lobbying programs. Let us imagine that Birds and Bunnies International wants to conduct workshops. It wants to apply for foundation funding to support this program. It would also like to lobby Congress. It believes the U.S. needs to expand its wildlife sanctuary program. Birds and Bunnies knows that foundations are unwilling to fund organizations that have an active lobbying program. To avoid this reluctance, Birds and Bunnies structures itself as two organizations – an IRC 501(c)(3) organization to conduct the workshops and an IRC 501(c)(4) organization to do the lobbying. Part VII of Schedule A was created to track funds flowing between these entities.

**Q: The first question in Part VII asks about transactions with "any other organization described in IRC 501(c), other than IRC 501(c)(3) organizations" or IRC 527 political organizations. What kind of transaction is the form asking about?**

A: Sales, purchases, rentals, reimbursement arrangements, loans, performance of services or membership or fundraising arrangements, and the sharing of facilities, equipment, mailing lists or other assets. I think that this latter information about sharing assets is significant because, in many instances, these are separate organizations in name only. Filers must report the amount involved, the name of the noncharitable organization involved, and a description of the transaction.

*Continued on next page*

## **Schedule A,** Continued

**Schedule A, Part VII, Question 2**

**Q: Question 2 asks organizations to list related organizations. What is a related organization?**

A: For purposes of Part VII, the term "related" is different from the definition of "related" in line 75 of Form 990 and from the definition of "related" in line 80a of Form 990. For Part VII, a related organization is:

1. One where the two organizations share some element of common control. An "element of common control" is one where one or more official is selected by the officials or members of the other.

2. One where an historic and continuing relationship exists between the two organizations. An historic and continuing relationship is one where the two organizations participate in a joint effort on a continuing or recurring basis.

# Schedule B

**Schedule B – A Little History**

**Q: A, why is there a Schedule B?**

A: It's something that I think is coincident with the posting of returns on the internet. Let me explain. I think that the issue of disclosure was magnified when returns were first posted on the web. In the sleepy days before the web, disclosure occurred one return-at-a-time to one person at a time. It was also a private transaction. Now returns are "out there." If the Service Center makes one mistake and, for example, inadvertently releases the name of just one of the contributor names among the hundreds of thousands of names on the returns that are made public on the internet, the mistake is "out there." Moreover, because a lot more people now access the returns on the internet (it's a lot easier than requesting the return), the impact of a mistake is also magnified. I think that the primary aim in the development of Schedule B was to regularize contributor information so as to reduce the number of inadvertent disclosures.

**Schedule B - Purpose**

**Q: I understand that Schedule B replaces the attachment to Line 1, Part I of Form 990. Does the schedule serve any other purpose?**

A: The primary purpose of Schedule B is: in Part I, to report the names and addresses of the contributors of $5,000 or more; in Part Two to describe donated noncash property and in Part Three to provide information about donations to IRC 501(c)(7), (c)(8) and (c)(10) organizations.

*Continued on next page*

## **Schedule B,** Continued

**Schedule B – Who files?**

**Q: The heading of the Form 990 asks organizations to check a box if they are not required to file a Schedule B. Should organizations pay close attention to this?**

A: Yes, they should. If an organization does not have to file the Schedule B, they must indicate by checking the box.

**Q: Ok, who files Schedule B?**

A: Generally, organizations that file the Form 990, Form 990-EZ or Form 990-PF and receive $5,000 or more during the year (in money or other property) from any one contributor have to file Schedule B, if they are not subject to certain special rules.

**Q: I understand that there is a particular way that we are asking political organizations to report. A, please explain.**

A: Political organizations described in IRC 527 are now Form 990 filers. They also are required to file Schedule B if they have appropriate contributions. Therefore, although they do not file Schedule A, they are potential Schedule B filers.

Political organizations *that have filed Form 8871 with the Service* are required to report certain contributions on a Form 8872. If they do not report the contributions on Form 8872, they must pay a tax under IRC 527(j). This tax is reported and paid on Form 1120-POL. If the tax is paid, the name and address of a contributor need not be reported on Form 990. However, political organizations must report the aggregate total of the contributions for which an IRC 527 tax has been paid, mark the return that the amount was paid, and describe the type of property it is, if it's a noncash contribution.

*Continued on next page*

## **Schedule B,** Continued

**Schedule B – Special Rules**

**Q: A, you said an organization must file Schedule B if they are not subject to special rules. What are the special rules?**

A: The special rules are:

1. IRC 501(c)(3) organizations that meet the 33 1/3% support test only have to complete Schedule B if they received the greater of $5,000 or 2% of the organization's total support for the year from any one contributor,

2. IRC 501(c)(7), (8), or (10) organizations, where a contributor has given more than $1,000 for charitable purposes during the year must complete Schedule B. In this case there is a section of the return to complete that does not require the names and addresses of the contributors,

3. If an IRC 501(c)(7), (8) or (10) organization did not receive a contribution of more than $1,000 during the year from a contributor, it is required to report less. This type of organization simply checks the special rule box and reports the total amount of contributions received.