# EXHIBIT C

MAKE-A-WISH®

Make-A-Wish Foundation® of America

# CHAPTER AGREEMENT

As Adopted by Chapter Council Vote on
September 11, 2004

# CHAPTER AGREEMENT

This Chapter Agreement (the "Agreement") is effective as of September 11, 2004 ("Effective Date") by and between MAKE-A-WISH FOUNDATION OF AMERICA, an Arizona nonprofit corporation ("Foundation"), and MAKE-A-WISH FOUNDATION OF RHODE ISLAND, a Rhode Island nonprofit corporation ("Chapter"), and is in consideration of, the following terms and conditions.

WHEREAS, Foundation charters, promotes and assists chapters throughout the United States and its territories in granting the wishes of children with life-threatening medical conditions, which purpose is defined more fully in Foundation's articles of incorporation as amended from time to time (the "Foundation's Purpose");

WHEREAS, Foundation is the owner of all common law and statutory rights in and to a number of trademarks and service marks which the general public identifies with Foundation and Foundation's Purpose, including but not limited to: MAKE-A-WISH; MAKE-A-WISH FOUNDATION; the MAKE-A-WISH swirl-and-star logo; the MAKE-A-WISH wishbone-and-bow logo; ADOPT AN ANGEL; ADOPT-A-WISH; KIDS FOR WISH KIDS; LIGHT UP A CHILD'S LIFE; SHARE THE POWER OF A WISH; STORIES OF LIGHT; THE EYES OF A WISH; WISHMAKER; WISHNEWS; WISHWORKS; and such other new marks as may be adopted by Foundation from time to time (collectively, the "Marks");

WHEREAS, Chapter desires to be a chapter of Foundation and to obtain a license from Foundation to use the Marks in performing the Foundation's Purpose; and

WHEREAS, before granting such a license Foundation requires that all chapters strictly comply with various obligations set forth in this Agreement, Foundation's bylaws as the same may be amended from time to time ("Foundation's Bylaws") and other policies, rules, resolutions and standards that are promulgated by Foundation, whether before or after the Effective Date (the "Policies").

NOW, THEREFORE, in consideration of the mutual promises and undertakings described herein, and intending to be legally bound, Foundation and Chapter hereby agree as follows:

1. <u>Grant of Chapter Charter</u>. Foundation hereby grants chapter status to Chapter subject to the terms and conditions of this Agreement.

2. <u>Term</u>. The term of this Agreement shall commence as of the Effective Date and shall continue unless and until Chapter's status as a chapter is revoked ("Revocation") in accordance with the terms of this Agreement.

3. <u>Territory</u>. The territory in which Chapter shall perform the Foundation's Purpose (the "Territory") and Chapter's headquarters location (the "Headquarters") are set forth on Exhibit A attached hereto. Chapter shall perform the Foundation's Purpose in the Territory in accordance with, and subject to Chapter's obligations set forth in Foundation's Bylaws, this

Agreement and the Policies. Chapter agrees that the Headquarters, Territory and/or Chapter's name may be changed only by the "Chapter Performance Committee" (as defined in Foundation's Bylaws) at a Chapter Action Meeting. Chapter understands and agrees that Foundation may grant chapter status to other chapters ("Other Chapters") for the purpose of performing the Foundation's Purpose in territories near or adjacent to the Territory.

4. Rights and Privileges. Upon execution of this Agreement, Chapter shall be entitled to all of the rights and privileges of a chapter set forth in Foundation's Bylaws, and all other rights and privileges which Foundation may, from time to time, establish. Chapter acknowledges and agrees that certain rights and privileges of Chapter may be suspended, revoked, amended, limited or terminated pursuant to this Agreement, Foundation's Bylaws and the Policies. Chapter, by signing this Agreement subjects itself to all provisions of this Agreement, Foundation's Bylaws and the Policies.

5. Chapter's Duties, Warranties and Obligations.

5.1. Chapter warrants that it is, and shall remain, a duly formed and validly existing nonprofit corporation in good standing under the laws of the state or territory of its incorporation or formation.

5.2. Chapter agrees not to perform any function or knowingly partake in any activity other than the Foundation's Purpose, without the prior written consent of Foundation.

5.3. Chapter agrees to comply with, and be bound by, the terms of Foundation's Bylaws, this Agreement and the Policies.

5.4. Chapter shall use its best efforts in performing the Foundation's Purpose, in cooperating with Foundation and Other Chapters, and in protecting the Marks and the integrity and good reputation of Foundation.

5.5. Chapter shall comply with all federal, state, county and local laws, regulations, rules and ordinances applicable to it or relating to nonprofit corporations and charitable organizations.

5.6. Chapter agrees to pay in a timely manner all fees, assessments, dues and penalties established by Foundation from time to time.

5.7. Chapter shall permit Foundation's officers or designated representatives to inspect Chapter's books and records and to interview Chapter's directors, officers, employees and volunteers at any reasonable time and upon reasonable notice.

6. Foundation's Obligations.

6.1. Foundation shall observe all of its obligations to Chapter set forth in Foundation's Bylaws and Policies.

6.2. Foundation will provide Chapter annually with a copy of Foundation's Annual Report and audited financial statements within a reasonable time after the same are finalized.

6.3. Upon request by Chapter, Foundation will provide Chapter with its quarterly unaudited financial reports.

6.4. Within a reasonable time following final adoption by the board of directors of Foundation ("Foundation Board"), Foundation shall provide Chapter with a copy of its budget for its next fiscal year.

6.5. Foundation shall permit Chapter's designated representatives to inspect Foundation's books and records at any reasonable time and upon reasonable notice.

6.6. Foundation shall provide Chapter with notice of any fund raising events or solicitation by Foundation within the Territory to the extent reasonably practicable.

7. Tax Exempt Status.

7.1. If Chapter has already obtained tax exempt status as a charitable organization pursuant to Section 501(c)(3) of the Internal Revenue Code, Chapter agrees to take every action necessary to retain such tax exempt status. If Chapter has not yet obtained tax exempt status as a charitable organization under Section 501(c)(3) of the Internal Revenue Code, Chapter agrees to take all necessary steps to obtain such status as expeditiously as possible and, upon obtaining such tax exempt status, shall take every action necessary to retain such tax exempt status.

7.2. If Chapter has obtained foundation status as not being a private foundation under Section 509(a)(1), (2) or (3) of the Internal Revenue Code, Chapter agrees to take every action necessary to retain such status. If Chapter has not yet obtained foundation status as not being a private foundation under Section 509(a)(1), (2) or (3) of the Internal Revenue Code, Chapter agrees to take all necessary steps to obtain such status as expeditiously as possible and, upon obtaining such status, shall take every action necessary to retain such status.

8. Marks.

8.1. Foundation hereby grants Chapter the right and license to use within the Territory, and Chapter hereby undertakes to use, the Marks in performance of the Foundation's Purpose in accordance with the terms and conditions set forth in this Agreement and in accordance with the Policies ("License"). It is understood and agreed that the License is non-exclusive and Foundation shall, at all times, have the right to use the Marks for itself and to grant the use of the Marks to Other Chapters and third parties.

8.2. Chapter acknowledges and agrees that Foundation is the sole owner of all of the right, title and interest in and to the Marks and the goodwill appurtenant thereto and any other marks which hereafter may be adopted by Foundation or Chapter. Chapter

recognizes that the Marks are good and valid and that Chapter has no rights therein except those rights set forth in this Agreement. Chapter agrees not to contest the ownership or validity of any rights of Foundation in the Marks, or any registration or pending registration of any mark of Foundation with the United States Commissioner of Patents and Trademarks or with any state or other governmental authority, domestic or foreign. Chapter shall afford Foundation reasonable opportunities to inspect and monitor the activities of Chapter in order to ensure Chapter's use of the Marks is in accordance with Foundation's Policies.

8.3. Chapter's use of the Marks pursuant to the License shall be limited strictly to use in direct furtherance of the Foundation's Purpose. Such use shall be subject to such standards and procedures as are established and modified from time to time by Foundation. Chapter agrees that its use of the Marks inures to the benefit of Foundation. Chapter shall be entitled to use the Marks in its corporate name, subject to Chapter's obligations regarding such corporate name upon Revocation.

8.4. Chapter agrees to execute any and all documents and agreements reasonably necessary to the registration and protection of the Marks and to confirm ownership by Foundation of all right, title and interest in the Marks. Chapter further agrees that it shall not attempt to register or otherwise gain any right in or to any service mark or trademark that is confusingly similar to any of the Marks or any mark adopted in the future by Foundation.

9. Relationship of Parties. Foundation and Chapter are not, and shall not be considered to be, joint venturers, partners, or agents of each other, and Chapter shall have no power or authority whatsoever to bind or obligate Foundation except as otherwise set forth in this Agreement, the Policies or Foundation's Bylaws. Neither Foundation nor Chapter shall suffer any liability to any person or entity incurred or arising out of any acts of the other, or any acts of the other's agents, representatives or contracts and each shall indemnify the other in accordance with Section 10 below.

10. Indemnification.

10.1. Except as provided in Section 21.3 of this Agreement, Chapter hereby agrees to indemnify and hold Foundation harmless from any and all claims, demands, suits, and liabilities, of any nature whatsoever, arising out of or in any way connected with Chapter's performance of the Foundation's Purpose, use of the Marks, or otherwise, except that any liabilities which occur as a result of specific actions taken by Chapter at the direction of Foundation or Chapter's proper and authorized use of the Marks shall not be subject to this indemnification. In the event that Foundation is or becomes a party to any litigation or proceeding arising out of Chapter's performance of the Foundation's Purpose, use of the Marks, or otherwise, or is joined as a party to any such litigation or proceeding in which Chapter is a party, Foundation shall have the right to retain its own counsel to represent it at the sole cost and expense of Chapter upon notice to Chapter. The indemnification provided herein shall remain in effect notwithstanding any Revocation.

10.2. Foundation hereby agrees to indemnify and hold Chapter harmless from any and all claims, demands, suits and liabilities, of any nature whatsoever, arising out of or in any way connected with Foundation's performance on its own behalf of the Foundation's

Purpose or as a result of Chapter's proper and authorized use of the Marks. In the event that Chapter is or becomes a party to any litigation or proceeding arising out of Foundation's performance on its own behalf of the Foundation's Purpose or as a result of Chapter's proper and authorized use of the Marks, or if Chapter is joined as a party to any such litigation or proceeding in which Foundation is a party, Chapter shall have the right to retain its own counsel to represent it at the sole cost and expense of Foundation upon notice to Foundation. The indemnification provided herein shall remain in effect notwithstanding any Revocation.

11. Chapter Discipline. If Chapter is in breach of its obligations under this Agreement, Foundation's Bylaws or the Policies (a "Breach"), the Chapter Performance Committee shall have the power to place Chapter on "Probation" as described in Section 12, "Inactive Status" as described in Section 13 or impose Revocation as described in Section 14. If Chapter is a "Provisional Chapter" (as defined in the Foundation's Bylaws) then the Chapter Performance Committee may place Chapter on Inactive Status or impose Revocation at the end of Chapter's "Provisional Period" (as defined in Foundation's Bylaws) without regard to whether there is or has been a Breach by Chapter during its Provisional Period.

12. Probation.

12.1. Probation shall be for an initial period of not longer than one year (the "Probation Period"), subject to such conditions of Probation as the Chapter Performance Committee may establish. The conditions of Probation shall automatically include a loss of Chapter's right to a "Delegate" (as defined in Foundation's Bylaws) during the Probation Period and a requirement that Chapter commit no new Breach.

12.2. If Chapter fails at any time to perform any condition of its Probation, the Chapter Performance Committee may, at a Chapter Action Meeting, extend the Probation Period, with the same or different conditions, place Chapter on Inactive Status, or impose Revocation. Probation may be extended multiple times pursuant to this procedure but no single extension shall exceed one year in length.

12.3. If the Chapter Performance Committee does not take action pursuant to Section 12.2 hereof, then at the first Chapter Performance Committee meeting following the end of the Probation Period (or at such earlier date as the Chapter Performance Committee may decide in its sole discretion), the Chapter Performance Committee shall remove Chapter from Probation and notify Chapter of the same.

13. Inactive Status.

13.1. If Chapter is placed on Inactive Status it: (i) shall cease to have any of the rights set forth in Foundation's Bylaws and this Agreement, except as the Chapter Performance Committee may, from time to time, decide are applicable to chapters on Inactive Status; (ii) shall have no rights to a Delegate; (iii) shall cease to have such obligations set forth in Foundation's Bylaws and this Agreement as the Chapter Performance Committee may, from time to time, decide are inapplicable to chapters on Inactive Status; and (iv) the Territory shall be deemed immediately and without further action to be amended to comprise no territory.

13.2. If Chapter is placed on Inactive Status, Chapter shall immediately (or at such later date as may be agreed by the Chapter Performance Committee in its sole discretion);

(a) Elect or appoint such persons to its board of directors (the "Chapter Board") as shall be designated by the Chapter Performance Committee or its designee. All members of the Chapter Board not so designated to serve as members of the Chapter Board shall immediately resign as members of such Chapter Board.

(b) Cease active operation except as is necessary to: (A) maintain its corporate existence in good standing; (B) make all reports and filings required by any governmental authority; and (C) maintain its exempt status as an organization under Section 501(c)(3) and not a private foundation pursuant to Section 509(c)(1), (2) or (3) of the Internal Revenue Code.

(c) Take action to identify and satisfy all valid claims, obligations and debts of Chapter.

(d) Deliver all of its books and records of any kind whatsoever into the custody of Foundation.

(e) Furnish to Foundation an accounting of all funds received and disbursed by it from its inception as a chapter or as otherwise designated by the Chapter Performance Committee.

(f) Transfer to Foundation, without charge, such of its assets (after all liabilities and obligations of Chapter are paid or discharged or adequate provisions are made by Chapter for payment of such liabilities or obligations) as directed by the Chapter Performance Committee. Such assets shall be utilized by Foundation for the Foundation's Purpose within the former Territory of Chapter or shall be distributed to the Other Chapter(s) subsequently assigned the former Territory (or portions thereof).

13.3. Upon approval of the Chapter Performance Committee, Chapter may be removed from Inactive Status and be deemed a Provisional Chapter. The Provisional Period shall begin on the date of such approval by the Chapter Performance Committee. Chapter shall be granted a Territory determined by the Chapter Performance Committee, provided that if any portion thereof is currently assigned to any Other Chapter, such assignment of a Territory shall be subject to Section 3.

14. Revocation.

14.1. Upon Revocation, all rights and privileges of Chapter shall immediately terminate.

14.2. Upon Revocation, Chapter shall immediately (or at such later date as may be agreed by the Chapter Performance Committee in its sole discretion):

(a) Cease holding itself out to be a chapter or in any manner associated with, Foundation.

(b) Cease to use the Marks in any manner whatsoever and Chapter's license to use the Marks shall immediately and fully terminate, and Chapter shall assign to Foundation, or to any qualified organization designated by Foundation, all of Chapter's registrations with any governmental agency, and rights to the matters registered, pertaining to the use of the Marks or any other marks registered by Chapter with any such governmental agency. Chapter also shall execute a written release of Chapter's rights to those registrations, and rights to the matters registered.

(c) Take all necessary steps to remove the name "Make-A-Wish" or any reference to that name from Chapter's corporate name.

(d) Deliver all of its books and records of any kind whatsoever into the custody of Foundation.

(e) Furnish to Foundation an accounting of all funds received and disbursed by it from its inception as a chapter, or as otherwise determined by the Chapter Performance Committee.

(f) Transfer to Foundation without charge such of its assets (after all liabilities and obligations of Chapter are paid or discharged or adequate provisions are made by Chapter for payment of such liabilities or obligations) as directed by the Chapter Performance Committee.

(g) Take any other action the Chapter Performance Committee deems reasonably necessary to disassociate Chapter and Foundation.

14.3. Chapter hereby irrevocably grants and appoints Foundation as its attorney-in-fact, with full power of substitution, exercisable upon Revocation to take any steps and to execute any documents as are necessary to accomplish the matters set forth in this Agreement, the Policies or Foundation's Bylaws for a chapter whose chapter status has been revoked. This power shall include, without limitation, the execution and filing of articles of amendment to Chapter's articles of incorporation, corporate charter or similar corporate or formation documents, with the appropriate governmental authority, and to remove the name "Make-A-Wish" from Chapter's name. The power granted hereunder shall be deemed to be a power coupled with an interest.

14.4. Upon Revocation, Chapter covenants and agrees that it shall not engage in the Foundation's Purpose or any purpose which involves the granting of wishes to sick children within the Territory for a period of two calendar years from the date of the Revocation. Given the unique methods, practices and knowledge imparted by Foundation to Chapter as a result of this Agreement and the possible confusion which may result in the continuation of such wishgranting activities by Chapter, Foundation and Chapter agree that the terms of this covenant not to compete are reasonable in scope both as to time and territory.