15. Chapter Action Meeting. If Chapter is the subject of an action by the Chapter Performance Committee pursuant to Sections 3, 11 or 12.2 (a "Chapter Action"), or if there is a proposed Chapter Action to change the name, headquarters or territory (other than pursuant to Section 13.1) of any Other Chapter with a territory adjacent to the Territory, then prior to a meeting of the Chapter Performance Committee to consider the Chapter Action (a "Chapter Action Meeting"), the Secretary of Foundation or his or her designee shall give written notice to Chapter setting forth: (i) the proposed Chapter Action and specifying any alleged Breach; (ii) Chapter's rights to present a written statement regarding the proposed Chapter Action; and (ii) the date, time and place of the Chapter Action Meeting which shall be at least 10 days after the notice is given to Chapter. Chapter may present a written statement regarding the proposed Chapter Action to the Secretary of Foundation not less than 3 days prior to the Chapter Action Meeting. If a written statement has been timely filed, Chapter may also appear at the Chapter Action Meeting. The Chapter Performance Committee may establish a reasonable time limit and set the procedures for Chapter's appearance. If the Chapter Performance Committee approves any Chapter Action, the Chapter Performance Committee or its designee shall promptly give written notice to Chapter.

16. Probation, Inactive Status or Revocation Without Prior Notice. The Chapter Performance Committee may place Chapter on Probation, Inactive Status or impose Revocation without any prior notice to Chapter or prior right to present its defense if the Chapter Performance Committee reasonably believes that both (i) Chapter has committed fraud, has engaged in illegal activity, or has materially violated this Agreement, Foundation's Bylaws or the Policies, and (ii) prior notice to Chapter would be impractical or could endanger or harm Foundation. If Chapter is placed on Probation or Inactive Status or Revocation is imposed pursuant to this Section, the Chapter Performance Committee or its designee shall thereafter give written notice to Chapter of such action setting forth Chapter's right to present a defense in writing to the Secretary of Foundation within 10 days of the effective date of the notice. If a written defense has been timely filed, Chapter may also appear at the Chapter Performance Committee meeting at which such defense is considered. The Chapter Performance Committee or its designee shall give Chapter at least 10 days notice of such meeting. The Chapter Performance Committee may establish a reasonable time limit and set the procedures for Chapter's appearance. The Chapter Performance Committee shall notify Chapter of any action taken.

17. Appeal.

17.1. Chapter shall have the right to appeal Probation, Inactive Status, Revocation or an involuntary change to its name, Territory or Headquarters location to the Executive Committee of Foundation ("Executive Committee") by filing a written appeal with the Secretary of Foundation. In the case of an appeal from action taken pursuant to Section 15, the appeal must be submitted on or before 30 days after written notice to Chapter of the Chapter Action. In the case of appeal from action taken pursuant to Section 16, the appeal must be submitted on or before 30 days after (i) notice to Chapter of Probation, Inactive Status or Revocation if Chapter does not exercise its right to present a written defense to the Chapter Performance Committee or (ii) notice by the Chapter Performance Committee to Chapter of action on its defense if Chapter exercises such right. This right of appeal shall be conditioned upon Chapter's full and timely compliance with all requirements of Probation, Inactive Status or

Revocation, as applicable; provided, however, that upon written request of Chapter, the Chapter Performance Committee may, in its sole discretion and upon such conditions as the Chapter Performance Committee may establish, extend the time of compliance with any or all of the requirements of Probation, Inactive Status or Revocation, as the case may be, until the decision of the Executive Committee on the appeal. The effect of a name, Territory or Headquarters location change shall be stayed pending the Executive Committee's decision on the appeal.

17.2. The Executive Committee shall consider the written appeal. In the case of Probation or an involuntary change to a name, Territory or Headquarters location, the Executive Committee shall determine in its discretion whether to decide the appeal on the written submission or whether to grant a hearing to Chapter. In the case of Inactive Status or Revocation and in other cases where the Executive Committee grants a hearing, a hearing shall be conducted within 30 days after the written notice of appeal is received. At the hearing, a representative or representatives of the Chapter Performance Committee and Chapter shall have the right to present evidence either in writing or by appearance, or both. The Executive Committee shall consider all evidence presented and may consider such other evidence and invite such other parties to present evidence as it deems appropriate. The Executive Committee, upon request of Chapter, may, in its discretion, allocate funds to Chapter for appropriate expenses of the appeal.

17.3. The decision of the Executive Committee on the appeal shall be final and unappealable.

18. Voluntary Actions. Chapter may make a written request to the Chapter Performance Committee to be placed on Inactive Status or to have Revocation imposed, and the Chapter Performance Committee may immediately take the requested action. The Chapter Performance Committee may place Chapter on Inactive Status if Chapter has requested Revocation. Chapter shall not have the right to present a written defense or to appear at the meeting at which such action is taken, nor to appeal the action taken.

19. Security Agreement.

19.1. Chapter hereby grants to Foundation a security interest in all of Chapter's rights, title and interest in and to all deposit accounts, books and records, financial records, check books, bank statements, cash, cash equivalents, securities, pledges, lists of volunteers and prospective volunteers, donor and prospective donor lists, donee and prospective donee lists, wish lists, Chapter's name, Chapter's logo (if any), furniture, office equipment, supplies, computer equipment and software, accounts receivable, contracts and the rights and benefits thereunder, including any of the foregoing now existing or hereafter acquired and the proceeds of the same (collectively the "Collateral"), which security interest shall secure Chapter's performance of all of Chapter's covenants and obligations contained in this Agreement, the Foundation's Bylaws and the Policies; provided, however, that Foundation may exercise its remedies granted to it by the Uniform Commercial Code to foreclose its lien or seize the Collateral only upon Revocation.

19.2. Chapter shall perform all acts and execute and file all documents necessary and requested by Foundation to perfect and continue the perfection of a first priority security interest in favor of Foundation in and to the Collateral. Chapter hereby irrevocably

grants permission to Foundation to file financing statements describing the Collateral and appoints Foundation as its attorney-in-fact, with full power of substitution, to take any steps and to execute any documents as are necessary to perfect and keep perfected the security interest granted herein to Foundation. The power granted hereunder shall be deemed to be a power coupled with an interest.

19.3. The security interest hereunder shall be subject to any donor restrictions placed upon any portion of the Collateral by the party donating such portion of the Collateral to Chapter.

19.4. If Foundation shall, pursuant to Section 14, elect not to require Chapter to transfer to Foundation any item of Collateral following Revocation, Foundation shall release its security interest in such Collateral.

20. Governing Law. This Agreement shall be governed by, and shall be construed and interpreted in accordance with, the internal laws of the State of Arizona without the application of any principles of conflicts of law that would require or permit the application of the laws of any other jurisdiction.

21. Arbitration. Foundation and Chapter acknowledge that the Foundation's Purpose will be irreparably harmed by the negative publicity attendant to any dispute resolution in a public forum. Therefore, except as expressly provided in Section 21.3 below, neither Foundation nor Chapter will bring any action or proceeding against the other in any court, whether local, state, federal or otherwise.

21.1. Except as provided in Section 21.3, all disputes arising in connection with this Agreement or otherwise between Chapter and Foundation (which are not settled by agreement between the parties), shall be finally settled by binding arbitration. The arbitration shall be held in the same city in which the headquarters of Foundation is then located, and shall be conducted in accordance with the rules and procedures of the American Arbitration Association, but without submission to such association unless both parties so agree or fail to agree on another arbitrator. In the event the party against whom the award is entered has not fully satisfied the award within 90 days, judgment upon the award may be entered in any court having jurisdiction, or application may be made to such court for judicial acceptance of the award and order of enforcement, as the case may be.

21.2. All disputes between Foundation and Chapter regarding chapter discipline shall be governed exclusively by and within the rules established in this Agreement, Foundation's Bylaws and the Policies. Following resolution of a chapter discipline dispute in accordance with this Agreement, Foundation's Bylaws and the Policies, Foundation may, in circumstances requiring Extraordinary Relief (as defined below), enforce such result by bringing an action in state court in the state in which the headquarters of Foundation is then located, or in the United States District Court for such state and area. Foundation's right to pursue Extraordinary Relief shall specifically include any action that Foundation may determine requires the immediate enforcement of a decision to place Chapter on Probation or Inactive Status, or impose Revocation.

21.3. "Extraordinary Relief," means any dispute arising in connection with this Agreement between Chapter and Foundation, and which qualifies for issuance of a temporary restraining order or preliminary injunction in accordance with Rule 65, Federal Rules of Civil Procedure, or the equivalent state rule in the state in which the headquarters of Foundation is then located. Foundation may, in circumstances requiring Extraordinary Relief, bring an action against Chapter in state court in the state in which the headquarters of Foundation is then located, or in the United States District Court for such state and area. Foundation and Chapter agree that in any such action, the litigation shall be limited to the issue of Extraordinary Relief, and that all other disputes, including but not limited to any counterclaim that Chapter may assert, shall be resolved exclusively according to Sections 21.1 and 21.2 above. In the event the Extraordinary Relief is granted other than on an ex parte basis, Foundation shall be awarded its costs and reasonable attorney's fees in accordance with the substantive and procedural law of the state or the United States District Court in which the action is brought. In no event shall Chapter institute any action or proceeding against Foundation in any court, whether local, state or federal. Chapter and Foundation agree that exclusive jurisdiction for any dispute involving Extraordinary Relief shall be the state court for the state in which the headquarters of Foundation is then located, or in the United States District Court for the state in which the headquarters of Foundation is then located.

22. Attorneys' Fees. It is agreed that in the event either party should commence any action or proceeding including arbitration proceedings against the other to enforce any of the terms, conditions, covenants or provisions of this Agreement the party prevailing in any such action or proceeding shall be entitled to all reasonable attorneys' fees and costs by the other party.

23. Remedies. In the event of any breach or default under any of the terms, conditions, covenants or provisions of this Agreement by one of the parties, the other party shall have, in addition to a claim for damages for that breach or default, and in addition to any right or remedy available at law, in equity or as otherwise provided in this Agreement, the right to demand and have specific performance of this Agreement.

24. Substitution in Proceedings. Chapter shall cooperate with and immediately inform Foundation of any suits or proceedings in which Chapter is a party or which have been threatened in writing. In that regard Foundation may, at any time, according to Foundation's sole discretion, in its name or in the name of Chapter, be substituted for Chapter as the real party in interest in any such litigation or proceeding, and prosecute, defend, compromise, or otherwise resolve the litigation or proceeding, at Foundation's sole expense. This paragraph shall not apply to any action for Extraordinary Relief between Foundation and Chapter.

25. Third Parties. Unless otherwise specifically provided in this Agreement, nothing expressed or implied in this Agreement is intended or shall be construed to confer upon or to give any person other than the parties hereto, and their respective successors and assigns, any benefit, right or remedy under or by reason of any term, provision, condition, covenant, undertaking, warranty, representation or agreement contained in this Agreement.

26. Invalidity of Particular Provisions. If any portion of this Agreement shall be deemed to be invalid or unenforceable, then the remaining portions of this Agreement shall be fully effective, valid and enforceable.

27. Entire Agreement. Foundation and Chapter agree that this Agreement contains the entire agreement between the parties. This Agreement is intended by the parties to supersede all other agreements, including, without limitation, any prior Chapter Agreement or Affiliation Agreement, whether written or oral, that previously may have been entered into by Foundation and Chapter, or their predecessors in interest, with respect to the matters set forth in this Agreement.

28. Amendment. The Chapter's name, Territory and Headquarters can be changed or modified at a Chapter Action Meeting. Any other changes to this Agreement may only be made by a vote of the Foundation Board and the Leadership Council according to the procedure set forth in the Foundation's Bylaws. Chapter agrees to be bound by the terms and conditions of any amendment to this Agreement adopted in accordance with the Foundation's Bylaws whether or not Chapter's Delegate (if any) votes in favor of such amendment.

29. Successors and Assigns. The covenants, conditions and agreements contained in this Agreement shall bind and inure to the benefit of the parties and their successors and assigns, except Chapter shall not have the right to assign this Agreement or any of its rights or benefits hereunder, including, without limitation, its right to use the Marks.

30. Notices. Except as otherwise provided in this Agreement, whenever notice is required by law or by this Agreement to be given, such notice may be given in writing by depositing the same in the United States Postal Service first class mail, postage paid; delivered to a recognized national overnight delivery service; or sent by facsimile or e-mail transmission, in each case addressed according to the records of Foundation. Delivery of notice shall be deemed complete and effective three days after deposit in the mail, one day after delivery to the delivery services, upon facsimile transmission, or upon transmission by e-mail, as the case may be.

31. Waiver. No waiver of any provision of this Agreement shall be valid unless in writing and signed by the party against whom it is sought to be enforced. No omission or delay of either party in requiring due and punctual fulfillment by the other party of the obligations of such other party hereunder shall be deemed to constitute a waiver of its rights to require such due and punctual fulfillment of any of its other obligations.

32. Time of Essence. Time is of the essence in all terms of this Agreement.

33. Conflicts. To the extent possible, this Agreement, the Foundation's Bylaws and the Policies shall be read and interpreted in such manner as shall result in no conflict amongst the same. In the case of an irreconcilable conflict between this Agreement and either or both of the Foundation's Bylaws or the Policies, this Agreement shall govern. In the case of a conflict between the Foundation's Bylaws and the Policies, the Foundation's Bylaws shall govern.

34. Headings. The subject headings of this Agreement are included for purposes of convenience only and shall not affect the construction or interpretation of any provisions of this Agreement.

MAKE-A-WISH FOUNDATION
OF AMERICA, an Arizona nonprofit corporation

By: [signature]

Its: ACTING PRESIDENT & CEO

MAKE-A-WISH FOUNDATION OF
RHODE ISLAND, a Rhode Island nonprofit corporation

By: [signature] 11/17/04

Its: Chairman of The Board of Directors

[signature]
Pres and CEO 11-17-04

EXHIBIT A

Initial Chapter Territory:

Bristol, Kent, Newport, Providence and Washington.

Initial Headquarters Location:

757 Park Avenue
2nd Floor
Cranston, RI 02910