UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MAKE-A-WISH FOUNDATION OF RHODE ISLAND, INC.,

Plaintiff,

v.

MAKE-A-WISH FOUNDATION OF AMERICA,

Defendant.

CIVIL ACTION
NO. 1:08-cv-206-S

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT BY DEFENDANT MAKE-A-WISH FOUNDATION OF AMERICA**

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant Make-A-Wish Foundation of America ("MAWFA") hereby submits this memorandum of law in support of its Motion to Dismiss the complaint for failure to state a claim.

Following a hearing on May 15, 2008, the Executive Committee of the Board of Directors of MAWFA, the national Make-A-Wish organization with contractual authority over all Make-A-Wish chapters, upheld the revocation of the charter of plaintiff, Make-A-Wish Foundation of Rhode Island (the "Chapter"), for intentionally submitting inaccurate information to the Internal Revenue Service ("IRS") for two consecutive years and for disclosing confidential information about wish children. The Chapter thereafter filed suit, alleging a single count of breach of contract for "failing to agree to follow the dictates of the AAA arbitration clause … of the Chapter Agreement."

The complaint fails to state a claim for breach of contract and should be dismissed. In accordance with an extensive chapter discipline process set forth in the Chapter Agreement, the

decision to revoke the Chapter's charter was made by the Chapter Performance Committee at a duly noticed Chapter Action Meeting and then upheld on appeal following a second hearing before the Executive Committee. Under the Chapter Agreement's clear terms, "[t]he decision of the Executive Committee on the appeal shall be final and unappealable." The Chapter Agreement also provides that matters involving "chapter discipline" are not subject to arbitration. Because the parties did not agree to arbitrate disputes of this nature, the Chapter may not now claim breach of contract in an attempt to invoke arbitration.

## I. BACKGROUND

### A. The Chapter Agreement.

MAWFA requires that each Make-A-Wish chapter sign a Chapter Agreement with MAWFA. A copy of a Chapter Agreement is attached to the complaint as Exhibit A. A true and correct copy of the Chapter Agreement between MAWFA and the Chapter is attached to the Mulvihill Declaration, filed in support of MAWFA's Motion to Lift Temporary Stay, at Ex. C.[1]

Pursuant to the Chapter Agreement, chapters are granted the right to use MAWFA's trademarks, service marks and trade names (the "Marks") in a specific geographic area on certain express conditions. *See, e.g.*, Chapter Agreement, § 8; Complaint at ¶ 5 ("Plaintiff and Defendant have certain contractual obligations as enumerated in a 'Chapter Agreement' …"). Among the "duties, warranties and obligations" of chapters set forth in Section 5 of the Chapter Agreement are the following:

> *5.3 Chapter agrees to comply with, and be bound by, the terms of [MAWFA's] Bylaws, this Agreement and the Policies [defined to include MAWFA's Governing Policies and Performance Standards].*

---

[1] MAWFA's Memorandum of Law to Lift Stay and Opposition to Motion for Preliminary Injunction and the Declaration of David B. Mulvihill ("Mulvihill Decl."), filed with the Court on May 30, 2008, set forth detailed background of the underlying chapter disciplinary process. That background is not repeated here. To the extent that underlying facts and accompanying documents raised in that filing may be considered by the Court pursuant to Fed. R. Civ. P. 12(b)(6), MAWFA hereby incorporates them by reference. *See, e.g., Roy v. General Elec. Co.*, 544 F. Supp. 2d 103, 106 (D.R.I. 2008).

> *5.4 Chapter shall use its best efforts in performing the Foundation's Purpose, in cooperating with [MAWFA] and Other Chapters, and in protecting the Marks and the integrity and good reputation of [MAWFA].*
>
> *5.5 Chapter shall comply with all federal, state, county and local laws, regulations, rules and ordinances applicable to it or relating to nonprofit corporations and charitable organizations.*

**B. Revocation of the Rhode Island Chapter's Charter.**

As alleged in the complaint, after a hearing on May 15, 2008 "the Executive Committee determined to 'revoke' the Rhode Island Chapter's 'charter.'" Complaint ¶¶ 3, 4. Under the Chapter Agreement, chapter discipline, up to and including revocation, may be imposed by the Chapter Performance Committee ("CPC") at a duly noticed "Chapter Action Meeting." Chapter Agreement § 15. If the CPC determines a chapter is "in breach of its obligations under this Agreement, [MAWFA's] Bylaws or the Policies" the CPC "shall have the power to place Chapter on 'Probation' as described in Section 12, 'Inactive Status' as described in Section 13 or impose Revocation as described in Section 14." *Id.* § 11.

By letter dated March 14, 2008, the CPC advised the Chapter of the revocation decision. A true and correct copy of the March 14, 2008 letter is attached to the Mulvihill Declaration, filed in support of MAWFA's Motion to Lift Temporary Stay, at Ex. I. As set forth in that letter, and as acknowledged in the Chapter's Motion for Preliminary Injunction (p. 2), reasons for revocation included the fact that the IRS Form 990s filed by the Chapter for fiscal years 2005 and 2006 failed to disclose the compensation of the Chapter's President & CEO as an officer and/or key employee.[2] True and correct copies of the IRS Form 990s are attached to the Mulvihill Declaration, at Exs. E and F.

As was its right under Section 17 of the Chapter Agreement, the Chapter appealed the CPC's decision to the Executive Committee of MAWFA's board of directors. The Executive

---

[2] The Internal Revenue Service requires charities and other nonprofit corporations annually to disclose basic financial information in IRS Form 990, including information about compensation paid to officers, directors and key employees. Such annual statements are public records that must be made available for public inspection. *See* I.R.C. § 6033; § 6104.

Committee upheld the CPC's decision to revoke the Chapter's charter. *See* Complaint ¶¶ 3, 4. Under Section 17.3 of the Chapter Agreement: "The decision of the Executive Committee on the appeal shall be final and unappealable" (emphasis added).

## II. ARGUMENT

### A. Standard of Review.

"[T]o survive a Rule 12(b)(6) motion … a complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true ....'" *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008), *quoting Bell Atlantic v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1965 (2007) (internal citation omitted). "A plaintiff is 'required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Standard Fire Ins. Co. v. Gordon*, 376 F. Supp. 2d 218, 220 (D.R.I. 2005), *quoting Gooley v. Mobil Oil Corp*., 851 F.2d 513, 515 (1st Cir. 1988). Thus, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege 'a plausible entitlement to relief.'" *Rodriquez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007), *quoting Bell Atlantic Corp.*, 127 S. Ct. at 1967.

On a Rule 12(b)(6) motion, "[o]rdinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Barkan v. Dunkin' Donuts, Inc.*, 520 F. Supp. 2d 333, 335-36 (D.R.I. 2007), *citing Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). However,

> a court is not always limited to the facts alleged in the plaintiff's complaint. The First Circuit Court of Appeals has adopted a 'practical, commonsense approach' for determining what materials may be properly considered on a motion to dismiss. *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir.1998). Under this approach, a court may consider not only the complaint, but also the "facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." *Jorge v. Rumsfeld*, 404 F.3d 556, 559 (1st Cir. 2005). In addition, when a "complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document



A/72556947.3

> (the authenticity of which is not challenged), that document effectively merges into the pleadings." *Beddall*, 137 F.3d at 17; *see also Jorge*, 404 F.3d at 559 ("Moreover, the district court appropriately may consider the whole of a document integral to or explicitly relied upon in a complaint, even if that document is not annexed to the complaint.").

*Roy*, 544 F. Supp. 2d at 107; *see also Barkan,* 520 F. Supp. 2d at 335-36. Here, the referenced documents (including the CPC letter of March 14, 2008 and the IRS Form 990s) are either central to the disciplinary process and plaintiff's claim, or public records, or both. The Chapter had actual notice of these documents and relied on them in framing its complaint, thus any "problem of lack of notice to the plaintiff" is "largely dissipated." *Barkan*, 520 F. Supp. 2d at 336, *quoting Cortec Indus. Inc. v. Sum Holding LP*, 949 F.2d 42, 48 (2d Cir. 1991).

**B. The Complaint Fails to State a Claim for Breach of Contract.**

The complaint alleges a single count of breach of contract -- for "failing to agree to follow the dictates of the AAA arbitration clause … of the Chapter Agreement" -- and requests that the Court order defendant "to undertake AAA arbitration." Complaint ¶ 12 and p. 3.

It is well established that "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *A.T. Cross Co. v. Royal Selangor(s) PTE, Ltd.*, 217 F. Supp. 2d 229, 232-233 (D.R.I. 2002), *quoting AT & T Tech., Inc. v. Communications Workers*, 475 U.S. 643, 648 (1986). Whether a matter is arbitrable "depends on contract interpretation, which is a question of law" for the Court to decide. *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 8-9 (1st Cir. 2000), *quoting PaineWebber, Inc. v. Elahi*, 87 F.3d 589, 592 (1st Cir. 1996). If the parties have not agreed to arbitrate a certain type of dispute, the arbitrator has no authority and an arbitral decision can be vacated. *See id.* at 9-12 (vacating arbitration decision where arbitrators exceeded their authority and decided matters not within the scope of the arbitration clause). As a "voluntary contractual obligation[]", whether a matter is subject to arbitration "is totally dependent on the private will of the parties as embodied in whatever contract they may have entered into." *MCI Telecomm. Corp. v. Exalon Indus., Inc.*, 138 F.3d 426, 428 (1st Cir. 1998), *citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

**1. The Chapter Agreement Does Not Allow for Arbitration of Issues Involving Chapter Discipline.**

Applying basic principles of contract interpretation, the Chapter Agreement, in plain and unambiguous terms, sets forth a comprehensive and final process for resolving matters of chapter discipline. This internal process involves, first, an initial disciplinary determination by the CPC, and, second, if the Chapter so chooses, an appeal to the Executive Committee. There can be no dispute that this process was followed here. Importantly, and fatal to the Chapter's claim for breach of contract, the Chapter Agreement is explicit that "[t]he decision of the Executive Committee on the appeal shall be final and unappealable." Chapter Agreement, § 17.3 (emphasis added). That provision could not be stated in any plainer or clearer terms.[3]

Under both Arizona and Rhode Island law, when the terms of a contract are clear and unambiguous, they must be enforced. *See, e.g., Horton v. Mitchell*, 200 Ariz. 523, 527, 29 P.3d 870, 874 (Ariz. Ct. App. 2001) ("The controlling rule of contract interpretation requires that the ordinary meaning of language be given to words where circumstances do not show a different meaning is applicable"), *quoting Chandler Med. Bldg. Partners v. Chandler Dental Group*, 175 Ariz. 273, 277, 855 P.2d 787, 791 (Ariz. Ct. App. 1993); *accord W.P. Assocs. v. Forcier, Inc.*, 637 A.2d 353, 356 (R.I. 1994) ("If the court finds that the terms of an agreement are clear and unambiguous, the task of judicial construction is at an end and the agreement must be applied as written."), *citing Aetna Cas. & Surety Co. v. Graziano*, 587 A.2d 916, 917 (R.I. 1991).

Further, Section 21.2 of the Chapter Agreement expressly states that: "All disputes between [MAWFA] and Chapter regarding chapter discipline shall be governed exclusively by and within the rules established in this Agreement, [MAWFA's] Bylaws and the Policies." *Id.* at § 21.2 (emphasis added). The Chapter Agreement is explicit that chapters do not have the right to seek further review of Executive Committee decisions regarding chapter discipline -- although

---

[3] Section 20 of the Chapter Agreement provides that "[t]his Agreement shall be governed by, and shall be construed and interpreted in accordance with, the internal laws of the State of Arizona without the application of any principles of conflicts of laws that would require or permit the application of the laws of any other jurisdiction."

MAWFA may, in the event it is needed, initiate a court action to enforce such discipline.[4] *See id.* ("Following resolution of a chapter discipline dispute in accordance with this Agreement, [MAWFA's] Bylaws and the Policies, [MAWFA] may, in circumstances requiring Extraordinary Relief (as defined below), enforce such result by bringing an action in [Arizona state or federal court]") (emphasis added), and § 21.3 ("In no event shall Chapter institute any action or proceeding against [MAWFA] in any court, whether local, state or federal").

In addition, the sections expressly concerning chapter discipline -- Sections 17.1, 17.2, 17.3 and 21.2 -- do not mention arbitration at all, but rather buttress the clear and unambiguous provision that the Executive Committee's decision is "final and unappealable." Logically, Section 21.1, which pertains to arbitration of other disputes, makes no reference to disputes involving chapter discipline, because those disputes are specifically and in great detail addressed elsewhere in the Chapter Agreement. Thus, for the additional reason that "[a] common principle of contract construction is that a specific term will control over a conflicting general term," the only reasonable reading of the Chapter Agreement is that disputes involving chapter discipline are excluded from the general arbitration clause found in Section 21.1. *Newharbor Partners, Inc. v. F.D. Rich Co., Inc.*, 961 F.2d 294, 299 (1st Cir. 1992) ("Similarly, it is only logical that an unequivocal term will control over a conflicting ambiguous term."), *citing* Restatement (Second) of Contracts § 203(c) (1981).

Moreover, the Chapter's claim that the Chapter Agreement allows for arbitration of decisions of the Executive Committee, if accepted, would render meaningless the clear provision that the Executive Committee's decision on appeal is "final and unappealable." It is a basic

---

[4] Section 21.3 also provides that "Chapter and [MAWFA] agree that exclusive jurisdiction for any dispute involving Extraordinary Relief shall be the state court for the state in which the headquarters of [MAWFA] is then located, or in the United States District Court for the state in which the headquarters of [MAWFA] is located." Under this forum selection clause, any action permitted to be brought in court (and this is not such an action), must be brought in Arizona. Accordingly, by bringing this action in Rhode Island court, the Chapter has once again breached the Chapter Agreement.

principle of contract law that "the court will not construe one provision in a contract so as to render another provision meaningless." *Chandler Medical Bldg. Partners*, 175 Ariz. at 277, 855 P.2d at 791 (Ariz. Ct. App. 1993), *citing Norman v. Recreation Centers of Sun City, Inc.*, 156 Ariz. 425, 428, 752 P.2d 514, 517 (Ariz. Ct. App. 1988). *Accord Anglo American Ins. Co., Ltd. v. Shooters at India Point, Inc.*, 959 F. Supp. 115, 117 (D.R.I. 1997) ("construction [of a contractual provision] cannot render meaningless [another] express condition of the contract"), *quoting Psaty & Fuhrman. Inc. v. Housing Auth. of Providence*, 76 R.I. 87, 68 A.2d 32, 35 (1949).

In sum, the clear language of the Chapter Agreement "plainly manifests the parties' intent" to exclude matters of chapter discipline from arbitration. As the First Circuit has emphasized, "[a]t bottom, arbitration remains 'simply a matter of contract between the parties; it is a way to resolve the disputes - but only those disputes - that the parties have agreed to submit to arbitration.'" *Coady*, 223 F.3d at 10, *quoting First Options*, 514 U.S. at 943. Accordingly, the complaint fails to state a claim for breach of contract. Indeed, by bringing this action, it is the Chapter that is in further breach of the Chapter Agreement.

### 2. Internal Matters of Chapter Discipline Are Not Subject to Outside Review.

Matters of internal governance within voluntary associations like MAWFA generally are not subject to outside review by courts or, for that matter, by arbitrators. Just last year, the Rhode Island Supreme Court reiterated this principle: "It is well settled that, ordinarily, the courts will not interfere with the internal workings of a voluntary organization as long as such rules are reasonable and consistent with public policy." *King v. Grand Chapter of R.I. Order of Eastern Star*, 919 A.2d 991, 996 (R.I. 2007) (collecting cases within and outside of Rhode Island); *see also Gorman v. St. Raphael Academy*, 853 A.2d 28, 37 (R.I. 2004) ("there should be no judicial interference with the internal affairs, rules and by-laws of a voluntary association unless their enforcement would be arbitrary, capricious or constitute an abuse of discretion") (internal quotation and citation omitted); *Rowland v. Union Hills Country Club*, 157 Ariz. 301,

305, 757 P.2d 105, 109 (Ariz. Ct. App. 1988) (courts will not become involved in the internal disputes of a social organization resulting in the suspension or expulsion of its members unless "it is established that the action taken violated the organization's by-laws or was in bad faith, fundamentally unfair, fraudulent or utterly unsupported by any evidence").

The complaint does not allege (and could not allege) bad faith or fraud, or that MAWFA did not follow its own internal procedures up to and including the determination by the Executive Committee to affirm revocation of the Chapter's charter. *See* Complaint ¶¶ 3, 4.

Although *King* concerned the discipline of members of an organization, and here the issue is the revocation of a chapter's charter, a "common thread" is "the unwillingness of courts to inject themselves into the internal affairs of private organizations where the rules of those organizations are reasonable and do not violate public policy." 919 A.2d at 997. This is so because organizations "must have considerable latitude to formulate and enforce their own rules to accomplish their [charitable] objectives." *Gorman*, 853 A.2d at 39. Thus, consistent with their "contractual nature," "rules and regulations generally are binding on those who wish to remain [chapters], provided however, that said rules do not conflict with public policy." *Id.* at 38-39 ("[A] contract term is unenforceable only if it violates public policy"); *see also* 6 Am. Jr. 2d Associations § 21 ("By becoming a member of a voluntary association, one agrees to be bound by its valid rules, subjects himself or herself to its discipline, and assumes, of necessity, such obligations as are incident to membership…"). Here, for example, as part of accomplishing its charitable objectives, MAWFA allows chapters to use the Make-A-Wish Marks -- a key asset -- subject to terms and obligations in the Chapter Agreement. As owner of the Marks, MAWFA is obligated to protect those Marks. Upon revocation, the Chapter Agreement provides, *inter alia*, that the "Chapter's license to use the Marks shall immediately and fully terminate …." Chapter Agreement § 14.2(b).

Thus, organizations like MAWFA "may, without direction and interference by the courts, for its government, adopt a constitution, by-laws, rules and regulations which will control as to all questions of discipline, or internal policy and management, and <u>its right to interpret and</u>

administer the same is as sacred as the right to make them."[5] *Gorman*, 853 A.2d at 38, *quoting Edwards v. Indiana State Teachers Assoc.*, 749 N.E.2d 1220, 1225 (Ind. Ct. App. 2001) (emphasis added). *See also Blubaugh v. American Contract Bridge League*, No. IP 01-358-C H/K, 2004 WL 392930, at *6 (S.D. Ind. Feb. 18, 2004) (dismissing breach of contract claim under general rule that "courts will not interfere in the governance of such a private organization, such as its interpretation and administration of rules governing membership and discipline"), *aff'd* No. 04-1663, 2004 WL 2676592 (7th Cir. Nov. 18, 2004); *Chisholm v. Hyattstown Volunteer Fire Dept., Inc.*, 115 Md. App. 58, 70, 691 A.2d 776, 782 (Md. Ct. Spec. App. 1997) ("courts will not interfere in the internal affairs of a voluntary membership organization"); 6 Am. Jr. 2d Associations § 31 ("The decisions of the tribunals of an association with respect to its internal affairs will, in the absence of mistake, fraud, illegality, collusion, or arbitrariness, be accepted by the courts as conclusive").

**3. The Chapter Agreement Provided Ample Process, and the CPC and Executive Committee Had More Than Adequate Reason to Revoke the Chapter's Charter.**

As noted above, the Chapter Agreement contains extensive procedures for deciding matters of chapter discipline before both the CPC and the Executive Committee, including affording the chapter the right to submit written statements, present evidence and participate in hearings. Not only was ample process provided, but the CPC, the Executive Committee and MAWFA had ample reason for revoking the Chapter's charter for violations of the Chapter Agreement, MAWFA's Bylaws and the Policies. The basis for the revocation decision is set forth in detail in MAWFA's Memorandum of Law in Support of Its Motion to Lift Temporary Stay and Opposition to Preliminary Injunction at pp. 14-17.

---

[5] This approach is akin to the application of the "business judgment rule," under which courts, absent circumstances not present here, decline to interfere with decisions regarding a corporation's internal affairs and governance or its corporate management. *See, e.g., King*, 919 A.2d at 998; *Chisholm*, 115 Md. App. at 70-71, 691 A.2d at 781-82.

Briefly, in direct violation of IRS rules, regulations and published guidance, the Chapter intentionally failed for two years to disclose the compensation of its President & CEO on its Form 990s. *See*, *e.g.*, I.R.C. § 6033 and 26 C.F.R. § 1.6033 *et. seq*.; I.R.C. § 6104; 1996 EO CPE Text, "Reporting Compensation on Form 990"; and 2003 EO CPE Text "Form 990, Schedule A and Schedule B". Because Form 990s are the principal source of public information about exempt organizations, they must be signed under penalties of perjury by an officer. In the event information submitted is inaccurate or incomplete, the IRS can impose financial penalties pursuant to I.R.C. § 6652, and remove the organization from IRS Publication 78, which lists those organizations that are eligible to receive tax deductible contributions. *See id.* at H-7.

As determined by the CPC and confirmed by the Executive Committee, the Chapter's reporting failures violated multiple sections of the Chapter Agreement and MAWFA policies. Further, in violation of MAWFA Performance Standard GL 2.5, the Chapter improperly disclosed confidential information about wish children by appending this information -- including the children's first and last names and the cost of their wishes -- to its IRS Form 990s.

**4. Rhode Island Law Does Not Prevent Revocation.**

In its complaint, the Chapter suggests that MAWFA cannot revoke the Chapter's charter without a court order. Complaint ¶¶ 8, 13. The provisions cited -- R.I.G.L. § 18-9-1 *et seq.* -- pertain to charitable trusts. The Chapter is not a charitable trust. *See* 14 C.J.S. Charities § 2 ("Charitable trusts are express trusts that arise and exist only pursuant to an expression by the settlor to create a trust.").

There is no suggestion that the Chapter was the product of a bequest for a specific charitable purpose to be held and administered by a trustee. *See* R.I.G.L. § 18-9-4 (defining charitable trust as "any fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it and subjecting the person by whom the property is held to equitable duties to deal with the property for charitable, educational, or religious purposes"), and R.I.G.L. § 18-9-15 (exempting "charitable, religious, and educational institutions holding funds in trust exclusively for their own charter or corporate purposes").

Moreover, on its IRS Form 990s, line J, the Chapter identifies itself as a Section 501(c)(3) organization, not a Section 4947(a)(1) charitable trust. Similarly, the Chapter files documents with the Rhode Island Secretary of State identifying itself as a domestic nonprofit corporation (available at http://ucc.state.ri.us/CorpSearch/Corp SearchInput.asp), not a charitable trust.

Finally, even if the Chapter were a charitable trust, the provision requiring a court order before the final dissolution concerns the procedure for the ultimate transfer of assets out of the trust. *Compare* R.I.G.L. § 7-6-1 *et seq.* (containing provisions allowing the disposition of assets at dissolution of a nonprofit corporation). That provision has no bearing on whether MAWFA can revoke the Chapter's charter in accordance with its own internal procedures, or whether MAWFA is in breach of contract, as alleged in the single count of the complaint.

## III. CONCLUSION

For the foregoing reasons, defendant Make-A-Wish Foundation of America moves that the complaint be dismissed in its entirety with prejudice.

Respectfully submitted,

**MAKE-A-WISH FOUNDATION OF AMERICA,**

By its attorneys,

/s/ *Carol E. Head*

Carol E. Head (#6501)
carol.head@bingham.com
Robert E. McDonnell*
robert.mcdonnell@bingham.com
**BINGHAM MCCUTCHEN LLP**
One Federal Street
Boston, MA 02110
617.951.8000
**admitted pro hac vice*

*Of Counsel:*
David B. Mulvihill, Esq.
Vice President & General Counsel
Make-A-Wish Foundation of America
3550 North Central Avenue, Suite 300
Phoenix, AZ 85012-2127
Phone: 602.279.9474

Dated: June 9, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that this document has been filed electronically and is available for viewing and downloading from the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, paper copies will be sent to those indicated as non-registered participants, and a courtesy copy will be sent via mail to the Rhode Island Attorney General's Office, on June 9, 2008.

/s/ *Carol E. Head*

Carol E. Head (#6501)
**BINGHAM MCCUTCHEN LLP**
One Federal Street
Boston, MA 02110
617.951.8000