UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MAKE-A-WISH FOUNDATION OF RHODE ISLAND, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MAKE-A-WISH FOUNDATION OF AMERICA,<br><br>Defendant. | CIVIL ACTION<br>NO. 1:08-cv-206-S |

# SUPPLEMENTAL DECLARATION OF DAVID B. MULVIHILL

I, David B. Mulvihill, declare under penalty of perjury that the following statements are true and correct to the best of my knowledge, information and belief:

1. Attached as **Exhibit N** is a list identifying the Make-A-Wish volunteers who presently serve on the Chapter Performance Committee ("CPC") and the Executive Committee, along with their states of residence, employment or other status and prior Make-A-Wish experience.

2. In recognition of these volunteers' busy schedules, and in order to avoid using charitable funds to pay the significantly increased costs associated with holding face-to-face meetings, the CPC and the Executive

Committee (as well as our other standing committees) conduct their business during teleconference meetings, with few exceptions. As **Exhibit O** reflects, the Executive Committee meets approximately 7-9 times per year but has not held a single face-to-face meeting during the past three fiscal years. Similarly, as **Exhibit P** demonstrates, the CPC conducts its monthly meetings by teleconference with the exception of one or two face-to-face meetings during the year.

3. Prior to the CPC and the Executive Committee hearings on March 12, 2008 and May 15, 2008, respectively, the Rhode Island chapter (the "Chapter") was informed the hearings would take place during teleconference meetings of the committees. In a letter to counsel for the Chapter dated April 18, 2008 (attached to my original Declaration as **Exhibit K**), I explained: "Because it is comprised of volunteers from across the country, the Executive Committee meets by teleconference, not 'in person'." At no time before or during either hearing did the Chapter or its counsel raise any objection to the procedure.

4. The Chapter took full advantage of the opportunity to submit a written statement of its position, and material in support thereof, prior to the CPC and the Executive Committee hearings. At both hearings, the Chapter was given a full opportunity to present its case to members of each committee. At no time during either hearing did the Chapter object to, or

express any concerns about, the amount of time it had been allotted to state and explain its position.

5. Among the 1,100 pages of material the Chapter submitted prior to the Executive Committee hearing were 187 authorization forms the Chapter claimed supported its position that it had permission to identify all of the children whose names were listed on its IRS Form 990s. At my direction, our Senior Manager of Mission Resources, Kristen Keck, reviewed each of the forms and detailed her findings in a Declaration, a copy of which is attached hereto as **Exhibit Q** (with the children's identifying information redacted). As reflected in Ms. Keck's Declaration, the Chapter did not submit any purported authorization forms for five of the children identified on its Form 990s; and 45 of the 187 forms the Chapter had submitted did not provide appropriate parental consent.

6. Larry Byar, who is a member of the Executive Committee by virtue of serving as chair of the CPC, abstained from voting on the Chapter's appeal following the hearing on May 15, 2008. Gary Graves, who also serves on both the CPC and the Executive Committee, was unable to attend either hearing as a result of prior professional commitments.

7. After MAWFA discovered the Chapter had failed to disclose the compensation paid to its President & CEO on its IRS Form 990s for fiscal years 2005 and 2006, we reviewed the Form 990s filed by all of our other

chapters during the same time frame. We found two other chapters that had omitted the compensation of its President & CEO in one or both of the years in question.

8. Although neither of these chapters (nor any others) had listed on their Form 990s any confidential information about the children for whom they had granted wishes, they both received a "Notice of Chapter Action Meeting" substantially similar to the one we sent to the Chapter (a copy of which is attached to my original Declaration as **Exhibit G**). The CPC imposed appropriate discipline on one of the chapters following a hearing on March 12, 2008. The other chapter is scheduled to appear before the CPC at a Chapter Action Meeting on June 30, 2008.

9. MAWFA has not taken any measures "to revoke, consolidate, merge or assume ultimate control over" the Chapter since the temporary stay was entered by the Providence Superior Court on May 20, 2008. For example, we have not reassigned the Chapter's territory; required that the Chapter's assets be transferred to the entity that will ultimately assume responsibility for that territory; or taken control over wish referrals or other wish-granting activities.

10. As noted in the attached **Exhibit R**, the "BMW event" to which the Chapter refers in its brief was a national 2007 Holiday Campaign with BMW of North America, LLC, pursuant to which 70% of the funds raised

were to be distributed equally among all chapters (not based on the location of BMW dealerships).

11 MAWFA has not withheld any of the money due the Chapter as a result of the national BMW promotion. To the contrary, on February 26, 2008, MAWFA issued check number 51914 to the Chapter -- including, *inter alia*, the Chapter's equal share of the BMW revenues (i.e., $5,388.24) -- which the Chapter deposited into its bank account. See **Exhibit S**.

12. Due to the issues regarding the Chapter's status, MAWFA has not invoiced the Chapter for its 2008 annual "partnership dues" to MAWFA. The Chapter has also to date failed to pay MAWFA for its January and March 2008 insurance bills. The Chapter's total outstanding obligation to MAWFA is in excess of $35,000.

13. It is not an unusual practice for MAWFA to withhold distributions for chapters with outstanding debts, or to deduct unpaid debts from chapter distributions. Currently, MAWFA is holding one distribution to the Chapter totaling $1,146.20 pending resolution of these issues. The net effect of these actions leaves the RI Chapter with more than $30,000 which should, if the Chapter were in normal status, be paid to MAWFA.

14. Although MAWFA did not send a May 31, 2008 accrual report to the Chapter, the May accrual for the Chapter totals $10,796.55. MAWFA continues to track and accrue these expenses as obligations to the Chapter (or

whatever entity eventually takes over the Rhode Island territory). In addition, MAWFA continues to track and maintain separate accounting on all donations received and due the Chapter, which it will ensure are used to grant the wishes of children in Rhode Island in accordance with the donors' intent.

15. The primary reason the number of Make-A-Wish chapters has declined over the past decade is the fact that neighboring chapters have voluntarily agreed to merge or consolidate their operations and/or realign their territories in an effort to ensure the Make-A-Wish mission is delivered in the most efficient and effective manner possible. MAWFA encourages these types of mergers, consolidations and realignments, particularly when one of the chapters involved is struggling financially or otherwise experiencing problems. In each case, MAWFA has ensured that donations raised in a chapter's territory are used to grant the wishes of children in that territory, in accordance with the donors' intent.

16. Under the terms imposed by the CPC and upheld by the Executive Committee, the Chapter is prohibited from expending funds "other than in the ordinary course of business," or committing to any such expenditure, without MAWFA's prior written approval. Prior to the Executive Committee hearing, MAWFA reluctantly agreed to allow the Chapter to use up to $10,000 if necessary for attorneys' fees and costs. We

did so in recognition of the fact that the Executive Committee's decision would be "final and unappealable," as provided in the Chapter Agreement.

Executed on June 20, 2008 at Phoenix, Arizona.

David B. Mulvihill