UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MAKE-A-WISH FOUNDATION OF RHODE ISLAND, INC., Plaintiff, | |
| v. | C.A. No. 08-cv-206-S |
| MAKE-A-WISH FOUNDATION OF AMERICA, Defendant. | |

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS THE COMPLAINT BY DEFENDANT, MAKE-A-WISH FOUNDATION OF AMERICA**

Now comes the Plaintiff, Make-A-Wish Foundation of Rhode Island, Inc. ("RI Chapter") and hereby opposes the Motion to Dismiss the Complaint filed by Defendant, Make-A-Wish Foundation of America ("MAWFA"). In support of this Motion, Plaintiff refers the Court to the attached Memorandum of Law.

For the Plaintiff's
By its counsel

/s/ Todd D. White, Esq.
TODD D. WHITE #5943
VICTORIA M. ALMEIDA #1755
E. HANS LUNDSTEN #1156
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
T: (401) 274-7200
F: (401) 351-4607
Dated: June 26, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of June 2008, I electronically filed the attached document with the Court using the ECF system. The following counsel of record are registered with the Court and will be served electronically through the ECF system:

State of Rhode Island
Patrick C. Lynch, Esq.
Office of the Attorney General
150 South Main Street
Providence, RI 02903

Carol E. Head, Esq.
Bingham, McCutchen, LLP
One Federal Street
Boston, MA 02110

/s/ Todd D. White, Esq.___________

*458364_1.doc*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAKE-A-WISH FOUNDATION OF RHODE ISLAND, INC., Plaintiff, | : | |
| v. | : | C.A. No. 08-cv-206-S |
| MAKE-A-WISH FOUNDATION OF AMERICA, Defendant. | : | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS THE COMPLAINT BY DEFENDANT, MAKE-A-WISH FOUNDATION OF AMERICA**

## I. BRIEF BACKGROUND

Defendant, Make-A-Wish Foundation of America ("MAWFA") seeks to dismiss the Complaint filed by the Plaintiff, Make-A-Wish Foundation of Rhode Island ("RI Chapter"). For detailed background information pertaining to this matter, the RI Chapter incorporates by reference the Plaintiff's Memorandum in Support of Opposition to the Motion to Lift Temporary Stay of Defendant, Make-A-Wish Foundation of America, Inc. This Memorandum was filed on June 16, 2008 and provides sections entitled, "Summary Allegations" and "Background" which should sufficiently amplify the Plaintiff's underlying Complaint and position with respect to this Opposition.

Succinctly, Plaintiff has filed a Complaint for breach of contract against the MAWFA based on the failure of the Defendant to follow the Chapter Agreement provisions, including the RI Chapter's right to arbitration. The Defendant has also denied Plaintiff's rights of fundamental fairness and the right to an unbiased and impartial administrative procedure. Ultimately, the

MAWFA has breached the agreement it had with the RI Chapter in several material ways, which if left unattended, will result in the revocation and elimination of the RI Chapter. [1]

## II. APPLICABLE STANDARD

In reviewing a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court need only determine whether the Complaint states "a plausible entitlement to relief." *Rodriquez-Ortiz v. Margo Caribe, Inc.*, 490 F. 3d 92, 95 (1st Cir. 2007)(quoting *Bell Atlantic Corp. v. Twombly*, ___ U.S. ____, 127 S.Ct 1955, 1967, 167 L. Ed 2d 929, 944 (2007)). Rule 8 of the Federal Rules of Civil Procedure is considered a "liberal pleading standard" and simply requires "a short and plain statement of the claim showing that the pleader is entitled to relief … ." *Id*. As defined by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly,* the standard basically consists of reviewing the Complaint for "plausibility," ___ U.S. ____, 127 S.Ct 1955, 1967, 167 L. Ed 2d 929, 946 (2007). "Once a claim for relief has been stated, a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Id.* (citing *Sanjuan v. American Board of Psychiatry and Neurology*, 40 F.3d 247, 251, (7th Cir. 1994)).

As set forth below, the RI Chapter has not only met the standard under Rule 8 by setting forth a plausible entitlement to relief, but manifest injustice would occur if the RI Chapter were not afforded the relief it is seeking.

## III. ARGUMENT

In an effort to minimize redundancy, the RI Chapter refers this Court to its "Argument" section of its Memorandum in Support of Opposition to the Motion to Lift Temporary Stay of

[1] In the event that the MAWFA claims that the RI Chapter's pleadings do not sufficiently put it on notice of the alleged breaches of the Agreement, the RI Chapter incorporates by reference in its entirety its Memorandum in Support of its Opposition to Defendant's Motion to Lift the Stay. Additionally, Plaintiff is prepared to amend its Complaint to comport with these assertions and the evidence.

Defendant, Make-A-Wish Foundation of America, Inc. In addition, Plaintiff includes the following abbreviated sections to address the points raised by the Defendant.

**A. The RI Chapter Has the Right to Arbitration Under the Chapter Agreement Because a Matter as Final as Revocation of a Corporate Entity Requires Outside Review.**

The "Chapter Agreement" drafted by the MAWFA predicates the imposition of revocation first and only on a determination that the RI Chapter has breached an obligation under the Agreement. The *sine qua non* of imposing revocation is an actual breach. Although the MAWFA tries to rationalize a breach on the part of the RI Chapter, the only breaching party is, in fact, the MAWFA.

Section 15 of the Chapter Agreement sets forth the express right of the RI Chapter to appear at a Chapter Action Meeting:

> *15. Chapter Action Meeting*
>
> *If a written statement has been timely filed, Chapter may also appear at the Chapter Action Meeting.* (Emphasis added.)

Although the word "appear" is specifically utilized by the MAWFA, no "appearance" by the RI Chapter was allowed by the CPC at the Chapter Action Meeting that took place. This similar right to appear is memorialized two sections later in the Chapter Agreement:

> 17.2 *"Hearing shall be conducted within 30 days after the written notice of appeal is received." "At the hearing, a representative of the CPC and the Chapter shall have the right to present evidence either in writing or by appearance, or both."* (Emphasis added.)

When the RI Chapter requested that its board members appear before the Committee, as the plain language indicates, the RI Chapter was told it could not be done. Although the very existence of the RI Chapter hung in the balance, no actual "appearance" by the RI Chapter was allowed by either the CPC or the Executive Committee.

Thereafter, section 17 of the Chapter Agreement provides an administrative remedy available to the RI Chapter in certain circumstances including the following: probation, inactive status, revocation or an involuntary change to a chapter's name, territory or headquarters location. Subsection 17.3 indicates that there is no further administrative remedy after the Executive Committee has rendered a decision. Thus, in order to even avail oneself of a potential remedy by a neutral fact-finder - in this case arbitration - all administrative remedies must be exhausted. The RI Chapter has done so.

Thereafter, the Chapter Agreement focuses on arbitration in section 21 as follows:

> *21.* *<u>Arbitration</u>*
>
> *21.1.* *Except as provided in Section 21.3, all disputes arising in connection with this Agreement or otherwise between Chapter and Foundation . . . shall be finally settled by binding Arbitration.*

This section first carves out an exception for "Extraordinary Relief" under Section 21.3 (which addresses seeking a temporary restraining order or preliminary injunction). It then states that <u>all</u> disputes between the Chapter and Foundation <u>shall</u> be <u>finally</u> settled by binding arbitration. If the MAWFA wanted to exclude chapter discipline disputes from arbitration it simply could have written: "Chapter discipline issues are <u>not</u> arbitrable." Instead, it simply carves out section 21.3 concerning extraordinary relief. In fact, the MAWFA included the phrase "all disputes" as opposed to "limited disputes" or "selective disputes" or even "non-disciplinary disputes."

The next section of the Agreement furthers the prior point as follows:

> *21.2.* *All disputes between Foundation and Chapter regarding chapter discipline shall be governed exclusively by and within the rules established in this Agreement, Foundation's Bylaws and the Policies. . . . Foundation may, in circumstances requiring Extraordinary Relief (as defined below), enforce such result by bringing an action in state court in the state in which the*

> *headquarters of Foundation is then located, or in the United States District Court for such state and area.*

Naturally, if Section 21.2 states what the MAWFA wants this Court to believe it says, it would read: **"There is no right to arbitration concerning any internal disciplinary issue."** Having not said anything as plain and simple, this section reiterates that chapter discipline actions must go through the administrative procedure outlined in Sections 11, 14 and 17. The RI Chapter has gone through this process.

Nowhere in the Chapter Agreement does it specify that disputes concerning chapter discipline are <u>excluded</u> from the arbitration process. Either this is a one-sided contract of adhesion that only affords relief to the MAWFA, or this agreement allows the RI Chapter to seek arbitration concerning its very existence.

**B. <u>Judicial Review is Appropriate Because the MAWFA's Decision to Revoke the RI Chapter's Status Was Arbitrary and Capricious and Violates Principles of Natural Justice.</u>**

While the MAWFA tries to dissuade this Court from undertaking even a cursory analysis of the RI Chapter's claims, the very authorities upon which the MAWFA relies <u>support</u> the case for judicial review. In the first instance, the cases upon which the MAWFA relies are distinguishable on the basis that they involved private organizations, some or all of which were unincorporated. *See, King*, 919 A.2d at 993 (unincorporated private organization); *Gorman v. St. Raphael Academy*, 853 A.2d 28, 30 (R.I. 2004) (private school); *Rowland v. Union Hills Country Club*, 157 Ariz. 301, 757 P.2d 105 (Ariz. Ct. App. 1988) (country club). In contrast, the dispute between the MAWFA and the RI Chapter is more akin to that between a franchisor and franchisee than between a voluntary association and its members. The RI Chapter is a separately incorporated entity that files its own tax returns. In addition, Section 9 of the Chapter Agreement

makes clear that the MAWFA and the Chapter are not joint venturers, partners, or agents of one another and that neither one can subject the other to liability.

Courts have not hesitated to take a "hard look" at contracts when the type of business relationship at issue in this case is involved. *See In Re Bath Junkie Franchise, Inc.*, 246 S.W.3d 356 (Tex. App. 2008) (analyzing validity of arbitration clause in franchise agreement); *Independent Association of Mailbox Center Owners, Inc. v. Superior Court*, 34 Cal. Rptr. 3d 659 (Cal. Ct. App. 2005) (ordering certain provisions of franchise agreement arbitration clause to be stricken as unconscionable); *Barter Exchange, Inc. of Chicago v. Barter Exchange, Inc.*, 606 N.E.2d 186 (Ill. App. Ct. 1992) (evaluating right to arbitration under franchise agreement and state law).

Even in matters involving an unincorporated organization, a court will intervene if the organization's enforcement of its rules is "arbitrary and capricious" or constitutes an abuse of discretion. *King*, 919 A.2d at 997 (citing *Hebert v. Ventetuolo*, 480 A.2d 403, 407 (R.I. 1984)). *Accord*, *Rowland*, 157 Ariz. At 305, 757 P.2d at 109 (judicial review is available where an action violates "the organization's by-laws or was in bad faith, fundamentally unfair, fraudulent or utterly unsupported by any evidence."). The initial deference usually accorded to such private organizations is premised upon the organization having rules that are reasonable and do not violate public policy. *King*, 919 A.2d at 996 (citing *Gorman*, 853 A.2d at 37). However, where an organization's rules are not reasonable or are applied in an "arbitrary and capricious" manner by an organization's officers, "there is wisdom in providing a judicial remedy" to persons aggrieved. *Id*. at 998.

In addition, judicial review of a voluntary association's disciplinary action is available if the action violated the organization's own rules or "involved some basic procedural unfairness,

such as denial of notice or opportunity to defend." 6 Am. Jur. 2d *Associations* § 37. While such organizations are not required to conform to procedures in the nature of those in a court of law, "[a] violation of the principles of natural justice in the proceedings is a basis for resort to the courts." 6 Am. Jur. 2d *Associations* § 36. As detailed above and below, the process by which the MAWFA revoked the RI Chapter's status was arbitrary and capricious, violated the Chapter Agreement and violated fundamental notions of due process and natural justice. Therefore, judicial review in this case is both necessary and appropriate.

**C. The MAWFA Breached Its Duty of Good Faith and Fair Dealing to the RI Chapter.**

The MAWFA also breached its contract with the RI Chapter by subjecting it to a disciplinary process that was not neutral, impartial or in accordance with its contractual obligations of good faith and fair dealing. *A.A.A. Pool Service & Supply, Inc. v. Aetna Casualty & Surety Co.*, 395 A.2d 724 (R.I. 1978) (parties to a contract have an implied duty to deal fairly with one another); *Nolan v. Starlight Pines Homeowners Association*, 216 Ariz. 482, 488-89, 167 P.3d 1277, 1283-84 (Ariz. Ct. App. 2007) (same). A party breaches its implied duty of good faith and fair dealing if it denies the other party the reasonably expected benefits of their agreement. *Id*. at 489, 167 P.3d at 1284.

The MAWFA breached the obligation of good faith and fair dealing that it owed the RI Chapter by foreclosing the RI Chapter from any meaningful opportunity to present its case. As set forth above, the RI Chapter was not allowed to "appear" in person before either the CPC or the Executive Committee. Due process requires that a party have the opportunity to be heard "at a meaningful time and in a meaningful manner." *Larue v. Registrar of Motor Vehicles, Department of Transportation, Office of Operator Control*, 568 A.2d 755, 758 (R.I. 1990) (quoting *Millett v. Hoisting Engineers' License Division of Department of Labor*, 377 A.2d 229,

235-36 (1977)). The "meaningful manner" requirement means that a party must have a reasonable opportunity to exercise a right. *Id*. at 758. The RI Chapter was afforded no opportunity to present its case to the CPC by telephone. This, in itself, rendered its right to "appear" virtually meaningless. Similarly, the availability of a "hearing" under Section 17 of the Chapter Agreement was a hollow right. The "hearing" was also conducted over the phone such that the RI Chapter was constrained in its ability to present evidence and examine witnesses.

While there is a presumption of honesty and integrity accorded to decision makers, and the mere combination of functions within a body does not establish a *per se* violation of due process, there are situations in which "under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Withrow*, 421 U.S. at 47-48; *La Petite Auberge, Inc. v. Rhode Island Commission for Human Rights*, 419 A.2d 274, 284 (R.I. 1980). As a result, there may be facts or circumstances in a particular case that pose an intolerably high risk of unfairness such that due process concerns are triggered. *Id*. at 58. Indeed, due process is a flexible concept that "calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Therefore, the combination of investigative powers and judicial powers in one body is suspect.

Even more egregious is the overlapping of prosecutorial and decision making functions. Due process precludes those who serve in a prosecutorial capacity from serving as the ultimate decision makers. *Davis v. Wood*, 427 A.2d 332, 337 (R.I. 1981). The reason behind the prohibition is that one who has taken one side of an issue will be deemed unable to judge the matter later in a dispassionate manner. *Id*.

The MAWFA claims that the Chapter Agreement "provides for the imposition of discipline by the impartial CPC and an appeal to the impartial Executive Committee." If only it were so. By all appearances, there is a substantial likelihood that the Executive Committee was biased and that its decision was tainted by the CPC because the line between the CPC and the Executive Committee is a blurred one. In this case, the CPC was acting in an investigative capacity, if not a prosecutorial one, at the Chapter Action Meeting that was held on March 12, 2008. At that "meeting," the CPC asked RI Chapter Board representatives a series of questions about the alleged improprieties. In doing so, the CPC was arguably gathering evidence in a prosecutorial role to advance its plan to revoke the RI Chapter's charter. However, at a minimum, the CPC was acting as an investigatory arm for the MAWFA.

Subsequently, on May 15, 2008, the Executive Committee held a "hearing" by phone. However, the "hearing" was not the type of independent review and adjudication contemplated by due process. Indeed, the proceedings appear to have been far from impartial. Some members of the CPC were present at least by phone, and possibly in person. In fact, the CPC's role at the "hearing" was akin to that of a prosecutor in that the CPC was advocating for its prior decision to revoke the RI Chapter's status.

The extent to which the CPC communicated with the purportedly impartial Executive Committee members either before or during the "hearing" remains unknown. By the MAWFA's own admissions, Board members sit on both bodies. Upon information and belief at least one Board member may sit on both bodies. While such a dual capacity member may not have voted with the Executive Committee, there is a real and substantial danger that this individual or other members of the CPC shared information gained through the CPC chapter action meeting with the Executive Committee prior to the "hearing." Because of the real risk that investigative and

prosecutorial functions of the CPC tainted the impartiality of the Executive Committee, the RI Chapter cannot reasonably be said to have received a fair hearing.

What little process the RI Chapter received was entirely one-sided. Section 15 of the Chapter Agreement gives sole and unlimited discretion to the CPC to limit the time for and set the procedures for the RI Chapter's appearance at the Chapter Action Meeting. In this case, the RI Chapter was not allowed to present its case in any manner. Therefore, the RI Chapter was denied the opportunity to be heard in a reasonable manner.

The RI Chapter was further prejudiced in its ability to defend itself because it had no notice regarding the applicable burden of proof. Section 17 of the Chapter Agreement offers a chapter no insight into the manner in which hearings are conducted. It merely provides that both the chapter and the CPC can "present evidence" that will be considered by the Executive Committee. See Chapter Agreement at § 17.2. Indeed, the RI Chapter went into the "hearing" without even having the benefit of knowing whether it had the initial burden of proof. One need not strain to conclude that a "hearing" can scarcely be deemed to have been fair when only one party knows the rules by which it is going to be conducted.

As if the "hearing" process itself was not fundamentally deficient, the outcome was even more egregious. To date, the RI Chapter has been well-apprised of the MAWFA's decision to revoke, but has not been provided with any information about how that decision was reached, what evidence (if any) the MAWFA relied upon or the ultimate basis or bases for the MAWFA's decision. Indeed, as the MAWFA did not present any "evidence" at the "hearing," one can only guess at the rationale for the final decision. The Executive Committee never issued a written decision or otherwise informed the RI Chapter of the reasons for its decision to uphold the revocation. The absence of such a decision is particularly troubling in light of the fact that the

MAWFA never disproved the RI Chapter's claims. Therefore, the process used by the MAWFA to revoke the RI Chapter's status violated the Chapter Agreement, fundamental notions of due process and the duty of good faith and fair dealing owed to the RI Chapter.

## IV. CONCLUSION

The RI Chapter respectfully requests this Court deny the MAWFA's Motion to Dismiss the Complaint. The RI Chapter seeks to continue its charitable mission and has the right to the review of a neutral arbitrator.

For the Plaintiff's
By its counsel

/s/ Todd D. White, Esq.
TODD D. WHITE #5943
VICTORIA M. ALMEIDA #1755
E. HANS LUNDSTEN #1156
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
T: (401) 274-7200
F: (401) 351-4607
Dated: June 26, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of June 2008, I electronically filed the attached document with the Court using the ECF system. The following counsel of record are registered with the Court and will be served electronically through the ECF system:

State of Rhode Island
Patrick C. Lynch, Esq.
Office of the Attorney General
150 South Main Street
Providence, RI 02903

Carol E. Head, Esq.
Bingham, McCutchen, LLP
One Federal Street
Boston, MA 02110

/s/ Todd D. White, Esq.

*458364_1.doc*