UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAKE-A-WISH FOUNDATION OF RHODE ISLAND, INC. | : | |
| v. | : | C.A. No. 08-206S |
| MAKE-A-WISH FOUNDATION OF AMERICA, INC. | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This case arises out of the revocation of Plaintiff Make-A-Wish Foundation of Rhode Island, Inc.'s status as a Chapter of Defendant Make-A-Wish Foundation of America, Inc. Plaintiff commenced the case by filing a Complaint and Motion for Temporary Restraining Order in Rhode Island Superior Court on May 19, 2008 seeking to compel Defendant to arbitrate the Chapter revocation issue under the parties' 2004 "Chapter Agreement." Plaintiff also sought injunctive relief restraining Defendant's efforts to revoke Plaintiff's Chapter pending arbitration. On May 20, 2008, Justice Savage of the Superior Court issued an ex parte Order restraining Defendant "from taking any measures to revoke, consolidate, merge or assume ultimate control over the Rhode Island Chapter" pending a hearing scheduled for May 29, 2008. On May 28, 2008, Defendant removed the action to this Court on diversity grounds. (Document No. 1).

After removal, Defendant filed a Motion to Lift Temporary Stay (Document No. 7) and a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Document No. 10). Plaintiff objected to both Motions. (Document Nos. 12 and 16). These Motions have been referred to me for a report

and recommendation. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. They were heard before the Court on July 8, 2008.

**Facts**

On or about February 28, 2008, Defendant initiated disciplinary proceedings against Plaintiff "based on what appear to be egregious mistakes made in conjunction with the Form 990s[1] that your chapter filed with the IRS and the Rhode Island Department of Business Regulation/Charitable Organizations Section for fiscal years 2005 and 2006." (Document No. 9-9 at p. 2). In particular, Defendant alleged that Plaintiff failed to disclose its President/CEO's compensation and benefits, misrepresented that it had no employees paid more than $50,000.00 per year and attached confidential information about children who were granted wishes in the fiscal years in question. Id. By letter dated March 7, 2008, Plaintiff responded and indicated that its Board "determined that there was an error of judgment as it relates to the 990s [sic] forms that were filed in 2005 and 2006." (Document No. 9-10 at p. 3). It explained that the President/CEO's salary was omitted because "[i]t was brought to the chapter's attention that during the time period in question that the chapter's previous President and CEO had been advising several past and potential donors of [his successor's] salary." Id. at 3-4. Plaintiff did disclose the total amount of salary/wages paid (including the President/CEO's compensation) in an aggregate amount on Line 26 of its 2005 and 2006 Form 990s. See Document Nos. 9-7, 9-8 and 12 at p. 6. Plaintiff also indicated that the confidentiality issue was a "legitimate concern" and that "the listing of the names was not done with malice and most certainly will be halted immediately." (Document No. 9-10 at p. 4). Plaintiff does not dispute the allegations made by Defendant in the Chapter Discipline proceedings. Rather, it argues that the

[1] A Form 990 is a federal tax return of a nonprofit entity exempt from income tax, i.e., a 501(c)(3) corporation.

level of punishment (revocation) is excessive given the harmless nature of the complained-of conduct. It states "[n]o funds have been embezzled; no donors bilked; no children harmed...this is a no harm-no foul situation." (Document No. 12 at p. 14).

By letter dated March 14, 2008, Plaintiff was informed that Defendant's Chapter Performance Committee voted to revoke its Chapter status. (Document No. 9-11). Plaintiff unsuccessfully appealed that decision to Defendant's Executive Committee which denied the appeal on May 15, 2008. (Document No. 9 at ¶ 44). This ended the internal appeal procedures, and Defendant advised Plaintiff's counsel that "this is not a matter that is subject to arbitration and/or further appeal." (Document No. 9-15 at p. 2). Plaintiff disagrees and commenced the instant action to compel arbitration.

**The Chapter Agreement**

Effective September 11, 2004, the parties entered into a Chapter Agreement. (Document No. 9-4). "If [a] Chapter is in breach of its obligations under [the Chapter] Agreement, Foundation's Bylaws or the Policies, [Defendant's] Chapter Performance Committee shall have the power to...impose Revocation...." Id., ¶ 11 (Chapter Discipline). The Chapter Performance Committee consists of four National Board Members and three Chapter Representatives. (Document No. 15-2). A Chapter has the "right to appeal" the imposition of Revocation to Defendant's Executive Committee. (Document No. 9-4 ¶ 17 (Appeal)). "The decision of the Executive Committee on the appeal [is] final and unappealable." Id., ¶ 17.3. The Executive Committee is a six-person subcommittee of Defendant's National Board of Directors. (Document No. 15-2).

The Chapter Agreement includes an Arbitration clause providing that "all disputes arising in connection with this Agreement or otherwise between Chapter and Foundation...shall be finally

settled by binding arbitration." (Document No. 9-5 ¶ 21.1). Such arbitration must be "conducted in accordance with the rules and procedures of the American Arbitration Association." Id. The only exception expressly noted in paragraph 21.1 is a dispute covered by paragraph 21.3 ("Extraordinary Relief"). Id. Paragraph 21.3 permits Defendant only to sue a Chapter in Court "in circumstances requiring Extraordinary Relief," i.e., those disputes which qualify for issuance of injunctive relief. Id., ¶ 21.3. Finally, paragraph 21.2 provides that "[a]ll disputes...regarding chapter discipline shall be governed exclusively by and within the rules established in [the Chapter] Agreement, Foundation's Bylaws and the Policies." Id., ¶ 21.2. However, it permits Defendant only to sue in Court if necessary to enforce a decision to impose Revocation. Id.

**Analysis**

**A. Motion to Dismiss**

Plaintiff's Complaint alleges a single count of breach of contract. In particular, it claims that "[b]y failing to agree to follow the dictates of the AAA arbitration clause enumerated in...the Chapter Agreement, the Defendant has breached its agreement with [Plaintiff]." (Document No. 1-3 at p. 4). Defendant moves to dismiss arguing that the Complaint fails to state a claim because Chapter disciplinary issues are not arbitrable under the Chapter Agreement.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, see Greater Providence MRI Ltd. P'ship v. Med. Imaging Network of S. New England, Inc., 32 F. Supp. 2d 491, 493 (D.R.I. 1998); Paradis v. Aetna Cas. & Sur. Co., 796 F. Supp. 59, 61 (D.R.I. 1992), taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Carreiro v. Rhodes Gill and Co., 68 F.3d 1443, 1446 (1st Cir. 1995); Negron-

Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994). If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. See Hart v. Mazur, 903 F. Supp. 277, 279 (D.R.I. 1995). The Court "should not grant the motion unless it appears to a certainty that the plaintiff would be unable to recover under any set of facts." Roma Constr. Co. v. aRusso, 96 F.3d 566, 569 (1st Cir. 1996); accord Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Arruda, 310 F.3d at 18 ("[W]e will affirm a Rule 12(b)(6) dismissal only if 'the factual averments do not justify recovery on some theory adumbrated in the complaint.'"). Exhibits to a complaint are considered part of the pleading for purposes of a motion to dismiss. See Fed. R. Civ. P. 10(c); Blackstone Realty LLC v. FDIC, 244 F.3d 193, 195 (1st Cir. 2001) (written offer attached to complaint is part of the pleading for purposes of a motion under Fed. R. Civ. P. 12(b)(6)). Plaintiff appended the Chapter Agreement to its Complaint (Document No. 1-3) and thus it may be considered in ruling on Defendant's Motion.

The issue presented by Defendant's Motion to Dismiss requires "determination of whether there is an agreement to arbitrate, whether the dispute in question falls within the scope of that arbitration agreement, and whether the party seeking arbitration has waived the right to compel arbitration." Me. Sch. Admin. Dist. No. 68 v. Johnson Controls, Inc., 222 F. Supp. 2d 50, 52 (D. Me. 2002). Defendant does not dispute the validity of the Chapter Agreement or that it contains an arbitration provision. Defendant also does not argue waiver. Rather, the parties dispute the scope of the contractual duty to arbitrate and whether it encompasses matters of Chapter discipline.[2] "A

---

[2] Defendant cites King v. Grand Chapter of R.I. Order of the Eastern Star, 919 A.2d 991 (R.I. 2007), for the proposition that "[m]atters of internal governance within voluntary associations...generally are not subject to outside review by courts or, for that matter, by arbitrators." (Document No. 11 at p. 8). However, that case is distinguishable, as it involved a membership dispute between an individual and a private unincorporated organization under its internal rules and by-laws. Here, the dispute is between two nonprofit corporations under the terms of a contract, the Chapter Agreement, which includes a broad arbitration clause.

dispute over whether an arbitration provision applies to a particular controversy raises an issue of substantive arbitrability that is presumptively for the courts, not the arbitrator, to decide." Shank/Balfour Beatty v. Int'l Bhd. of Elec. Workers Local 99, 497 F.3d 83, 89 (1st Cir. 2007) (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)). "The issue is one for the arbitrator only if the parties clearly and unmistakably so provide." Id.[3] At the hearing, both parties agreed that the issue of substantive arbitrability is for the Court to decide in this case.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986). Thus, the issue is one of simple contract interpretation governed by general principles of state contract law. Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir. 2005). The Chapter Agreement provides that it "shall be governed by, and shall be construed and interpreted in accordance with, the internal laws of the State of Arizona without the application of any principles of conflicts of law that would require or permit the application of the laws of any other jurisdiction." (Document No. 9-5 ¶ 20). Neither party has disputed the application of Arizona law and thus the "Court is free to forgo an independent analysis and accept the parties' agreement." Narragansett Elec. Co. v. Constellation Energy Commodities Group, Inc., 526 F. Supp. 2d 260, 272 n.17 (D.R.I. 2007); see also Barkan v. Dunkin' Donuts, Inc., 520 F. Supp. 2d 333, 340 (D.R.I. 2007) (recognizing the validity of contractual choice of law clauses under Rhode

[3] The Arbitration clause (paragraph 21.1 of the Chapter Agreement) adopts the rules and procedures of the American Arbitration Association ("AAA"). The AAA Commercial Arbitration Rules (R-7(a)) provide that the arbitrator has the "power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." However, neither side references this rule or contends that the arbitrator should interpret the scope of the arbitration clause.

Island law). As a practical matter, the choice of law issue is not determinative, as there are no relevant differences between Arizona and Rhode Island contract interpretation law.

Under Arizona law, courts are to interpret contracts according to the parties' intent as expressed in the plain meaning of the words as viewed in the context of the contract as a whole. See World Group Sec., Inc. v. Allen, No. CV 07-1657, 2007 WL 4168572 at *5 (D. Ariz. Nov. 20, 2007) (citations omitted). When a contract's terms are unambiguous, the interpretation of the contract is a question of law for the Court to decide. Id. This essentially mirrors Rhode Island law. See Hord Corp. v. Polymer Research Corp. of Am., 275 F. Supp. 2d 229, 235 (D.R.I. 2003).

Although the parties each advocate differing interpretations of the Chapter Agreement, neither side contends that the relevant provisions are ambiguous. See Harris Technical Sales, Inc. v. Eagle Test Sys., Inc., No. 06-02471, 2008 WL 343260 at *15 (D. Ariz. Feb. 5, 2008) ("[A]n ambiguity is not created merely because the parties disagree...."). A contract is ambiguous if it is reasonably susceptible to more than one interpretation. Id. Here, the Court finds no ambiguity because the plain meaning of the Chapter Agreement read as a whole leads to only one reasonable interpretation – that its broad arbitration clause extends to Chapter disciplinary disputes.

Defendant's proffered interpretation starts and ends with paragraph 17.3 of the Chapter Agreement which provides that "[t]he decision of the Executive Committee on the appeal shall be final and unappealable." Defendant contends that this language makes Chapter disciplinary decisions unreviewable in arbitration or otherwise. However, Defendant fails to construe the plain meaning of the Chapter Agreement as a whole and to reconcile paragraph 17.3 with the broad arbitration clause contained in paragraph 21.1.

Paragraph 17.3 is part of a section entitled "Appeal" which outlines the internal appeal process for Chapter Revocations. It provides an avenue for final appeal to the Executive Committee. The Executive Committee is a subcommittee of Defendant's National Board of Directors. Plaintiff had no further right of internal appeal to either the full Board or Defendant's President/CEO under the Chapter Agreement. Thus, pursuant to paragraph 17.3, a Chapter revocation decision cannot be internally appealed beyond the Executive Committee.

This interpretation of paragraph 17.3 is necessary to give the broad arbitration clause in paragraph 21.1 its plain and ordinary meaning. Paragraph 21.1 broadly and unequivocally requires that "all disputes arising in connection with this Agreement or otherwise between Chapter and Foundation...shall be finally settled by binding arbitration." (emphasis added). "Every court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly...[as reaching] every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 720-721 (9th Cir. 1999) (collecting cases); see also J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988) (provision for arbitration of "all disputes arising in connection with the present contract" encompasses a "broad scope of arbitrable issues," i.e., "every dispute...having a significant relationship to the contract regardless of the label attached to the dispute"). Although the parties could have easily added language excepting Chapter disciplinary matters, they did not – reasonably suggesting that such disputes are not excluded. The only exception to the Chapter Agreement's broad arbitration clause is the ability of Defendant to seek "Extraordinary Relief" in Court pursuant to paragraph 21.3.

Plaintiff's proffered interpretation is also supported by the first sentence of paragraph 21.2 (part of the "Arbitration" provision) which reads as follows:

> All disputes between Foundation and Chapter regarding chapter discipline shall be governed exclusively by and within the rules established in this Agreement, Foundation's Bylaws and the policies.

First, this sentence injects the issue of Chapter discipline into the arbitration clause. Second, it identifies Chapter discipline as an area of potential "dispute" between the Foundation and a Chapter, and paragraph 21.1 broadly requires arbitration of "all disputes arising in connection with this Agreement or otherwise between Chapter and Foundation." Finally, since paragraph 21.2 subjects Chapter discipline disputes to all of the rules established in the Chapter Agreement, the only way to reconcile paragraph 17.3 with paragraph 21.1 is to construe paragraph 17.3 as a limit on internal appeals and paragraph 21.1 as broadly applying to "all disputes" including Chapter discipline disputes. See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc., 252 F.3d 218, 225 (2nd Cir. 2001) ("When parties use expansive language in drafting an arbitration clause presumably they intend all issues that 'touch matters' within the main agreement to be arbitrated...."). While Defendant's policy arguments as to the negative impact of prolonged litigation of Chapter disciplinary matters may well have merit, the intent of the Chapter Agreement must be ascertained by the plain meaning of its terms.[4] If it was the parties' intent to exclude Chapter disciplinary disputes from arbitration, the parties could have included an express exception

---

[4] Despite the broad arbitration clause, Defendant contends that Plaintiff agreed in the Chapter Agreement to give Defendant, through the Chapter Performance Committee (the majority of whose members are National Board Members) and the Executive Committee of the National Board, the unreviewable discretion to revoke a Chapter's status and take control of its assets, and thereafter subject the Chapter to a two-year restriction on the "granting of wishes to sick children within the Territory." This outcome conflicts with the intent of the parties expressed in the broad language of paragraph 21.1 and, in any event, it seems unlikely that a Chapter would accept such one-sided terms.

to paragraph 21.1 for such disputes. They did not, and it is not the Court's role to engage in linguistic gymnastics to create an exception by judicial fiat.

**B. Motion to Lift Temporary Stay**

Defendant moves the Court to lift or vacate the TRO issue by the Superior Court and deny Plaintiff's request for preliminary injunctive relief. Defendant argues that Plaintiff cannot satisfy the stringent requirements for an injunction. "Whether or not to issue a preliminary injunction depends upon four factors: (1) the movant's probability of success on the merits, (2) the likelihood of irreparable harm absent preliminary injunctive relief, (3) a comparison between the harm to the movant if no injunction issues and the harm to the objectors if one does issue, and (4) how the granting or denial of an injunction will interact with the public interest." New Comm. Wireless Servs. v. Sprintcom, Inc., 287 F.3d 1, 9 (1st Cir. 2002).

As to Plaintiff's likelihood of success, it is important to maintain focus on the issue actually joined by Plaintiff's Complaint. This case is not about the merits of the decision to revoke Plaintiff's Chapter status. Plaintiff's Complaint narrowly alleges that Defendant breached the Chapter Agreement by refusing to arbitrate the Chapter revocation dispute. Plaintiff requests, inter alia, that the Court order Defendant "to undertake AAA arbitration." As discussed above, the Court agrees with Plaintiff's position regarding the contractual duty to arbitrate the underlying Chapter disciplinary issue. Thus, the Court concludes that Plaintiff has a strong likelihood of success on the merits of its claim in this case.

As to the balance of the harm, it is plain that Plaintiff would suffer much more harm by having its Chapter status revoked and operations discontinued than Defendant would if the status quo was maintained pending arbitration. The events which resulted in the revocation decision date

back to 2005 and 2006, and there is no indication of any current operational concerns raised by Defendant. Also, Plaintiff represents that it filed amended Forms 990 for the years in question and changed its practice regarding the disclosure of confidential information. Similarly, as to public interest, the Court finds that it would be better served by continuing the Superior Court's stay Order than by vacating that Order and allowing Defendant to shut down the Rhode Island Chapter. Further, in connection with revocation, paragraph 14.3 of the Chapter Agreement grants power-of-attorney to Defendant to take certain actions including filing amendment papers with the Secretary of State to remove the name "Make-A-Wish" from Plaintiff's corporate name. The Chapter Agreement also contains a "noncompete" provision (paragraph 14.4) which, upon revocation, prohibits a Chapter from engaging "in the Foundation's Purpose or any purpose which involves the granting of wishes to sick children within the Territory for a period of two calendar years from the date of the Revocation." Thus, the winding down process and "noncompete" clause also support a finding of irreparable harm.

Although the equities tip in favor of maintaining the Superior Court's May 20, 2008 Order, Plaintiff conceded at the hearing that the Chapter Agreement is silent on the issue of a stay pending arbitration. However, Defendant has refused to proceed to arbitration which has deprived Plaintiff of the opportunity to seek expedited review (AAA Commercial Arbitration Rules E-1, <u>et seq.</u>) or to petition the arbitrator for "interim measures," <u>i.e.</u>, injunctive relief (AAA Commercial Arbitration Rules R-34). Accordingly, I conclude that, for equitable reasons, the May 20, 2008 Order should remain in place for a sufficient time to permit Plaintiff to commence the arbitration process and, if necessary, seek expedited/interim relief from an arbitrator. Given the Court's finding of a

contractual duty to arbitrate, the parties are encouraged to confer and cooperate in that process including discussion of a voluntary stay of revocation pending the outcome of the arbitration.

**Conclusion**

For the foregoing reasons, I recommend that Defendant's Motion to Dismiss (Document No. 10) and Motion to Lift Temporary Stay (Document No. 7) be DENIED. Further, I recommend that the District Court sua sponte enter Final Judgment in favor of Plaintiff ordering the parties to arbitrate their pending Chapter Revocation dispute pursuant to paragraph 21 of the Chapter Agreement and that Defendant be Enjoined from taking steps to effectuate the Revocation of Plaintiff's Chapter Rights until the parties are heard before an arbitrator on the issue of Interim Relief and the arbitrator rules on such issue.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
July 17, 2008