UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MAKE-A-WISH FOUNDATION OF RHODE ISLAND, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MAKE-A-WISH FOUNDATION OF AMERICA,<br><br>Defendant. | CIVIL ACTION<br>NO. 1:08-cv-206-S |

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTIONS BY DEFENDANT MAKE-A-WISH FOUNDATION OF AMERICA TO MAGISTRATE'S REPORT AND RECOMMENDATION**

Defendant Make-A-Wish Foundation of America ("MAWFA") objects to Magistrate Judge Lincoln Almond's Report and Recommendation ("Report") (Docket No. 17) for the following reasons:

(1) The Report misconstrues the term "final and unappealable." That clear and unambiguous term directly applies to the decision by MAWFA's Executive Committee to affirm the Chapter Performance Committee's ("CPC") decision to revoke the charter of the Make-A-Wish Foundation of Rhode Island (the "Chapter") for intentionally filing false and misleading Internal Revenue Service forms. The term "final and unappealable" expressly removes disciplinary decisions of the Executive Committee from the scope of the otherwise broad arbitration clause.

(2) The Report fails to interpret the Chapter Agreement as a whole, and fails to recognize that the Chapter Agreement contains two mutually exclusive dispute resolution

procedures: (a) a two-step procedure involving the CPC and the Executive Committee for chapter discipline disputes; and (b) a broad arbitration provision for all other disputes.

(3) The Report incorrectly recommends an indefinite stay of the Executive Committee's final and unappealable decision even though the Chapter has not even served a demand for arbitration nearly three months after the Executive Committee's decision. In short, the Report's recommendation potentially leaves this dispute permanently in limbo – allowing the Chapter to use MAWFA's trademarks and inflict other harm on the reputation and image of Make-A-Wish without even seeking arbitration.

(4) The Report erroneously applies the likelihood-of-success-on-the-merits test to the arbitrability issue and not to the merits of the dispute itself, *i.e.*, the decision to revoke the Chapter because it intentionally filed false and misleading forms with the Internal Revenue Service.

For the reasons stated above and set forth in this memorandum, the Report should be rejected and MAWFA's motion to dismiss and motion to lift the *ex parte* stay should be granted. In the alternative, MAWFA requests that the Court modify the Report to provide that the stay shall expire if the Chapter does not file a demand for arbitration within ten (10) days of the Court's decision.

## I. SUMMARY[1]

This dispute arose after MAWFA disciplined the Chapter for intentionally filing false and misleading federal IRS Form 990s, signed under the penalties of perjury, for two years in which the Chapter affirmatively stated that the Chapter's President & CEO received no compensation,

---

[1] MAWFA's Memorandum of Law to Lift Stay and Opposition to Motion for Preliminary Injunction (Docket No. 8) and the Declaration of David B. Mulvihill ("Mulvihill Decl.") (Docket No. 9), filed with the Court on May 30, 2008, as well as its Reply Brief (Docket No. 13) and Supplemental Declaration of David B. Mulvihill (Docket No. 14) , filed with the Court on May 30, 2008, sets forth detailed background of the underlying chapter disciplinary process. That background is not repeated here.

when in fact she received a six-figure salary. *See* Report at 2-3. The Chapter admitted these misrepresentations were not a mistake, but rather were intentional. It decided not to report the salary information because it did not like that another charity was telling potential donors about the Chapter President & CEO's salary, apparently in an effort to woo donors away from the Chapter.

Under federal law, this salary information is required to be disclosed to the public annually in IRS Form 990s precisely so that donors can make informed choices about which charities they wish to support based on how their charitable donations will be used. The failure to disclose this information is a violation of federal law and IRS regulations, and exposes the Chapter to penalties and other sanctions by the IRS (and willfully filing a false statement on an IRS form signed under the penalties of perjury is a felony, punishable by up to three years of imprisonment). The Chapter also disclosed confidential information about wish children.

Each of these acts violated the Chapter Agreement, MAWFA's Bylaws and Performance Standards, as well as basic principles of sound nonprofit governance, transparency and accountability. As a result, pursuant to the detailed disciplinary process set forth in the Chapter Agreement, the matter was referred to the CPC. The CPC is composed of three representatives from local chapters across the country and four members of MAWFA's board of directors (all but one of whom served on a local chapter board before becoming a national volunteer). After the Chapter submitted a written statement and the CPC held a hearing, the CPC voted to revoke the Chapter's charter. The Chapter appealed to the Executive Committee, where the Chapter, represented by counsel, again presented a written statement and additional evidence. After a second hearing, on May 15, 2008, the Executive Committee affirmed the decision to revoke the Charter. Under the Chapter Agreement, the Chapter is revoked and, among other things, is no longer entitled to use MAWFA's Marks.[2]

---

[2] MAWFA is the exclusive owner of various federally registered and common law trademarks, service marks and trade names including MAKE-A-WISH and MAKE-A-WISH

(Footnote Continued on Next Page.)

On May 19, 2008, the Chapter initiated this action in state court, and, on May 20, 2008, obtained a *ex parte* order restraining MAWFA from taking any action to revoke the Chapter.

## II. ARGUMENT

### A. The Magistrate Judge Erred in Recommending Denial of MAWFA's Motion to Dismiss.

#### 1. The Magistrate Judge Erred in Concluding that the Clause Providing that Decisions of the Executive Committee Shall Be "Final and Unappealable" Did Not Preclude Further Appeal to Arbitration.

The lynchpin of the Magistrate Judge's recommendation allowing the Chapter to appeal a "final and unappealable" decision to arbitration is his conclusion that the Chapter Agreement provides only that "a chapter revocation decision cannot be internally appealed beyond the executive committee," but can be appealed to arbitration. Report at 8. The Chapter Agreement, however, simply does not say that. It states that "[t]he decision of the Executive Committee on the appeal shall be final and unappealable." Chapter Agreement, § 17.3 (emphasis added) (A copy of the Chapter Agreement is at Mulvihill Decl., Ex. C. (Docket No. 9)). Thus, contrary to this clear language and contrary to numerous provisions in the Chapter Agreement setting forth a separate and exclusive dispute resolution procedure for matters of chapter discipline, the Magistrate Judge concluded that "unappealable" did not really mean unappealable at all. *See* Report at 8.

"[A]n arbitration clause gives rise to a presumption that the parties intended to arbitrate a dispute 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Katz v. Feinberg*, 167 F. Supp. 2d 556, 566 (S.D.N.Y. 2001), *aff'd* 290 F.3d 95 (2d Cir. 2002), *quoting Leadertex, Inc. v. Morganton*

---

(Footnote Continued from Previous Page.)

FOUNDATION, as well its swirl-and-star logo (collectively referred to as the "Marks"). These Marks have become increasingly well known and highly regarded throughout the world. In many respects, the Marks constitute MAWFA's most valuable, indeed priceless, asset because it is the goodwill associated with the Marks that enables the entire nationwide organization to continue to attract the volunteers, financial resources and other in-kind support needed to carry out its charitable mission. Mulvihill Decl. ¶¶ 9, 11, 12.

*Dyeing & Finishing Corp.*, 67 F.3d 20, 27 (2d Cir.1995) (internal quotations omitted); *see also Newspaper Guild of Salem, Local 105 of Newspaper Guild v. Ottaway Newspapers, Inc.*, 79 F.3d 1273, 1279 (1st Cir. 1996), *quoting United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960). Even a presumption in favor of arbitration, however, cannot require a party "to submit to arbitration any dispute which [it] has not agreed so to submit." *A.T. Cross Co. v. Royal Selangor(s) PTE, Ltd.*, 217 F. Supp. 2d 229, 232-233 (D.R.I. 2002), *quoting AT & T Tech., Inc. v. Communications Workers*, 475 U.S. 643, 648 (1986).

Whether a matter is arbitrable "depends on contract interpretation, which is a question of law" for the Court to decide. *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 8-9 (1st Cir. 2000), *quoting PaineWebber, Inc. v. Elahi*, 87 F.3d 589, 592 (1st Cir. 1996)*; id.* at 9-12 (vacating arbitration decision where arbitrators exceeded their authority and decided matters not within the scope of the arbitration clause). "In divining the parties' intent [as to whether an issue is arbitrable], … the Court must not confine its interpretation to the arbitration clause but look to the contract as a whole, for although the parties may broadly agree to arbitrate they may also place limits on that arbitrability." *Katz*, 167 F. Supp. 2d at 566 (emphasis added). Thus, "[i]n determining whether a given dispute must be arbitrated the court looks to all terms of the parties' agreement bearing on arbitration. Even though the words of the agreement's arbitration clause may be broad, its scope may be limited by language elsewhere in the agreement clearly and unambiguously negating or limiting it with respect to a matter in dispute." *Woodcrest Nursing Home v. Local 144, Hotel, Hospital, Nursing Home and Allied Services Union*, 788 F.2d 894, 898 (2d Cir.1986); *see also Maryland Casualty Co. v. Benova*, No. 96 Civ. 4356, 1996 WL 363136, *2 (S.D.N.Y. June 28, 1996) ("All the terms of the agreement should be considered when determining whether a given dispute must be arbitrated."), *aff'd*, 107 F.3d 979 (2d Cir.1997).

Although standing alone the arbitration clause of Section 21.1 would likely encompass most disputes between the Chapter and MAWFA, that general clause must be read together with Section 17.3, which clearly and unambiguously limits further review of a decision of the Executive Committee concerning chapter discipline: "[t]he decision of the Executive Committee

on the appeal shall be final and unappealable." The definition of the word "final" includes "last," "ultimate" and "[n]ot to be changed or reconsidered; unalterable." American Heritage Dictionary (4th ed. 2000). The definition of unappealable is "[n]ot subject to appeal." *Id.* The plain meaning of this term is that a chapter cannot appeal a disciplinary decision beyond the Executive Committee. Under both Arizona and Rhode Island law, when the terms of a contract are clear and unambiguous, they must be enforced.[3] *See, e.g.*, *Horton v. Mitchell*, 200 Ariz. 523, 527, 29 P.3d 870, 874 (Ariz. Ct. App. 2001) ("The controlling rule of contract interpretation requires that the ordinary meaning of language be given to words where circumstances do not show a different meaning is applicable"), *quoting Chandler Med. Bldg. Partners v. Chandler Dental Group*, 175 Ariz. 273, 277, 855 P.2d 787, 791 (Ariz. Ct. App. 1993); *accord W.P. Assocs. v. Forcier, Inc.*, 637 A.2d 353, 356 (R.I. 1994) ("If the court finds that the terms of an agreement are clear and unambiguous, the task of judicial construction is at an end and the agreement must be applied as written."), *citing Aetna Cas. & Surety Co. v. Graziano,* 587 A.2d 916, 917 (R.I. 1991).

The clear language cannot be reasonably construed to provide that an Executive Committee's revocation decision is not appealable to one body, but is appealable to another. To avoid rendering Section 17.3 meaningless, the Magistrate Judge read into the Chapter Agreement some possible internal level of review -- not identified in the Chapter Agreement -- and then concluded that a decision of the Executive Committee was not appealable to it. *See* Report at 8. The Chapter Agreement, however, provides no basis to conclude that there is some other "internal" body beyond the CPC and Executive Committee that the parties contemplated might, but should not, hear appeals under the Chapter Agreement. To the contrary, the only other possible level of review mentioned in the Chapter Agreement is arbitration (and, in limited

[3] Section 20 of the Chapter Agreement provides that "[t]his Agreement shall be governed by, and shall be construed and interpreted in accordance with, the internal laws of the State of Arizona without the application of any principles of conflicts of laws that would require or permit the application of the laws of any other jurisdiction."

matters pertaining to injunctive relief, a court). Accordingly, arbitration is precisely the further appeal to which Section 17.3 refers and to which a decision of the Executive Committee is "unappealable." Any other interpretation would render the words "final and unappealable" meaningless, in contravention of the basic principle of contract law that "the court will not construe one provision in a contract so as to render another provision meaningless." *Chandler Medical Bldg. Partners*, 175 Ariz. at 277, 855 P.2d at 791 (Ariz. Ct. App. 1993), *citing Norman v. Recreation Centers of Sun City, Inc.*, 156 Ariz. 425, 428, 752 P.2d 514, 517 (Ariz. Ct. App. 1988).

The Magistrate Judge reasoned that the conclusion that a revocation decision can only not be "internally appealed" was necessary to give the arbitration clause "its plain and ordinary meaning." Report at 8. But basic principles of contract law demand the opposite conclusion. The Second Circuit decision, *Katz v. Feinberg*, 290 F.3d 95 (2d Cir. 2002), is instructive. In *Katz,* the parties entered into an agreement with a broadly worded arbitration clause that "assigns all disputes under the agreement to arbitration." The agreement also had a separate clause, providing that valuation would be determined by company accountants. Katz sought to have the valuation decision vacated by the arbitration panel because it was too low, which the panel did. Upon the defendant's motion, the district court vacated the arbitrators' decision, holding that the panel had exceeded its authority.

Finding "the rule favoring specificity applicable in this case," the Second Circuit affirmed, concluding the specific, separate dispute resolution procedure should govern over the generally worded arbitration clause: "This Court has previously noted that under normal circumstances, when an agreement includes two dispute resolution provisions, one specific (a valuation provision) and one general (a broad arbitration clause), the specific provision will govern those claims that fall within it." *Id.* at 97-98, *citing Blue Tee Corp. v. Koehring Co.*, 999 F.2d 633 (2d Cir. 1993); *Whirlpool Corp. v. Philips Elec., N.V.*, 848 F. Supp. 474, 479 (S.D.N.Y. 1994); *Am. Silk Mills Corp. v. Meinhard-Commercial Corp.*, 35 A.D.2d 197, 200, 315 N.Y.S.2d 144 (N.Y. App. Div. 1970); *Dimson v. Elghanayan*, 19 N.Y.2d 316, 325, 280 N.Y.S.2d 97, 227

N.E.2d 10 (N.Y. 1967). In *American Silk Mills Corp.*, for example, the court explained "it was expressly provided that the inventory valuation fixed by the third accounting firm was to be 'final and binding on the parties for the purposes of this Agreement', and upon reading the contract as a whole, we conclude that the parties intended to remove that particular matter from consideration by an arbitrator." 35 A.D.2d at 200-201, 315 N.Y.S.2d at 147.

Here, as in *Katz*, the Chapter Agreement provides for two distinct dispute resolution provisions. The specific one, regarding chapter discipline disputes, should prevail over the general one for those claims that fall within the specific clause's scope. Otherwise, the specific provisions would be rendered nugatory. Because "[a] common principle of contract construction is that a specific term will control over a conflicting general term," the only reasonable reading of the Chapter Agreement is that disputes involving chapter discipline are excluded from the general arbitration clause found in Section 21.1. *See Newharbor Partners, Inc. v. F.D. Rich Co., Inc.*, 961 F.2d 294, 299 (1st Cir. 1992), *citing* Restatement (Second) of Contracts § 203(c) (1981).

As an additional ground, in *Katz*, the Second Circuit noted that the contract language "not only making the accountants' determination 'final and binding,' but also excluding it from '<u>any appeal, arbitration, proceeding, adjustment or review of any nature whatsoever'</u> further affirms the parties' intent to exclude determinations assigned to the accountants under § 2(b) from later challenge under the general arbitration provision of § 14(g)." 290 F.3d at 98 (emphasis added). Here too, Section 17.3 contains similar language that the decision is "final and uappealable", *i.e.*, not subject to review of any nature.[4]

[4] As explained in MAWFA's Memorandum of Law in Support of Its Motion to Lift Temporary Stay (pp. 12-14) (Docket No. 8) and Memorandum of Law in Support of Its Motion to Dismiss (pp. 8-10) (Docket No. 11), the Chapter Agreement's separate discipline procedure is fully consistent with the well established principle precluding review of or interference with "the internal workings of a voluntary organization as long as such rules are reasonable and consistent with public policy." *King v. Grand Chapter of R.I. Order of Eastern Star*, 919 A.2d 991, 996 (R.I. 2007) (collecting cases within and outside of Rhode Island); *see also Gorman v. St.*

(Footnote Continued on Next Page.)

### 2. The Chapter Agreement Construed as a Whole Confirms that Chapter Discipline Disputes Are Not Subject to Arbitration.

Examining the contract as a whole confirms, with positive assurance, that the parties did not intend the revocation decision to be subject to a third level of arbitral review after the CPC decision and an appeal to the Executive Committee. Rather, as in *Katz*, the Chapter Agreement establishes two mutually exclusive dispute resolution procedures: one for chapter discipline disputes and one for other disputes. By concluding that decisions of the Executive Committee are appealable to arbitration, the Magistrate Judge renders the elaborate chapter discipline dispute resolution procedures of the Chapter Agreement superfluous. *See* Report at 9-10. For this reason, too, MAWFA objects to the Report.

The chapter discipline dispute resolution procedure provides that upon revocation by the CPC, "all rights and privileges of Chapter shall immediately terminate," and the Chapter shall, *inter alia*, "cease holding itself out to be a chapter or in any manner associated with Foundation" and "cease to use the [Make-A-Wish] Marks in any manner whatsoever." Sections 14.1 and 14.2. Within thirty days, a chapter may appeal the revocation decision to the Executive Committee, and the Executive Committee must hold a hearing within thirty days. Sections 17.1 and 17.2. Upon appeal to the Executive Committee, the CPC may stay implementation of the revocation, but only "until the decision of the Executive Committee on appeal." Section 17.1. There is no provision for further stay for any other review.[5]

---

(Footnote Continued from Previous Page.)

*Raphael Academy*, 853 A.2d 28, 37 (R.I. 2004); *Rowland v. Union Hills Country Club*, 157 Ariz. 301, 305, 757 P.2d 105, 109 (Ariz. Ct. App. 1988).

[5] The Chapter Agreement contains no provision for staying the revocation decision after a decision of the Executive Committee and, under the Chapter Agreement, a revoked chapter is required to cease acting as a chapter. Thus, without court intervention in aid of arbitration, as the Chapter seeks here, the Chapter must cease operations. The Chapter Agreement, however, expressly provides that "[i]n no event shall Chapter institute any action or proceeding against Foundation in any court ….", precluding a Chapter from seeking injunctive relief. *See* Section 21.3. Thus, the Chapter Agreement would be wholly inconsistent if it allowed a chapter to appeal a revocation decision to arbitration, but precluded the chapter from staying revocation. This inconsistency can only be avoided by concluding that the Chapter Agreement does not provide that matters of chapter discipline, such as revocation, are arbitrable.

Because the Executive Committee's decision is final and unappealable, the Chapter Agreement also provides abundant process for matters of chapter discipline, in particular revocation decisions. Such process is not afforded to any other type of dispute under the Chapter Agreement. For example, the Chapter Agreement requires that the Executive Committee hold a hearing within thirty days, and that the Chapter can "present evidence either in writing or appearance or both." Section 17.2. The Executive Committee also may allocate funds to the Chapter for appropriate expenses of the appeal. *Id.* In contrast, other, non-disciplinary disputes are not heard by the CPC or the Executive Committee and may proceed directly to arbitration.[6]

Section 21.2 of the Chapter Agreement further confirms that the Chapter Agreement contains two mutually exclusive dispute resolution provisions not, as the Magistrate Judge concluded, three layers of consideration. *See* Report at 9. Section 21.2 describes the limited further recourse, after the Executive Committee, that MAWFA is entitled to in a "chapter discipline dispute," but nowhere mentions arbitration.[7] Indeed, underlining the sharp distinction between the general and chapter discipline dispute resolution procedures, Section 21.1, the generally worded arbitration clause, does not mention these "chapter discipline disputes" at all.

Section 21.2 provides that "[f]ollowing resolution of a chapter discipline dispute in accordance with this Agreement, Foundation's Bylaws and Polices, [MAWFA] may, in circumstances requiring Extraordinary Relief [defined in Section 21.3], enforce such result by bringing an action in [court]." (Emphasis added.) This includes any action that "requires the immediate enforcement of a decision to … impose Revocation." *Id.* (Emphasis added.) A

---

[6] Disputes subject to the general arbitration clause could possibly include such things as disputes over allocation of donations from national fundraising promotions, the assessment of annual fees, etc.

[7] Section 34 provides that the subject headings of the Chapter Agreement "shall not affect the construction or interpretation of any provision of this Agreement" and, in any event, Section 21 through 21.3 govern matters beyond arbitration, such as injunctive relief and a forum selection clause. Contrary to Section 34, the Magistrate Judge cites a heading in support of his conclusion that chapter discipline disputes are arbitrable. *See* Report at 9.

chapter is revoked when the CPC acts, and such immediate action would include, for example, seeking an order that a chapter cease operations, turn over assets and/or most importantly, an injunction against any continued use of the Make-A-Wish Marks. Thus, under the Chapter Agreement, MAWFA can take "immediate enforcement" steps "following resolution of a chapter discipline dispute" by the CPC and/or Executive Committee to effectuate Revocation. Arbitration is simply not mentioned as an avenue of recourse after the imposition of chapter discipline.

Further, Section 21.2 provides that "[a]ll disputes between [MAWFA] and Chapter regarding chapter discipline shall be governed exclusively by and within the rules established in this Agreement, [MAWFA's] Bylaws and the Policies." (Emphasis added.) This language again distinguishes chapter discipline disputes from other disputes and again indicates that chapter discipline disputes are more closely circumscribed than other disputes. Indeed, were chapter discipline disputes not intended to be treated separately from other disputes, there would simply be no need for Section 21.2.

Thus, the crux of the parties' agreement, and the only reasonable reading of the Chapter Agreement, is that if the CPC determines that there is grounds for revocation, and if that decision is upheld on appeal to the Executive Committee, the Chapter cannot appeal that appeal. The Chapter must abide by that "final and unappealable" decision and must cease to operate as a Make-A-Wish chapter. These are the terms on which MAWFA agreed to allow the Chapter to use the Make-A-Wish Marks and receive other benefits of association with MAWFA, and they allow MAWFA to monitor and protect its trademarks for the benefit of the organization and other chapters -- and prevents a revoked chapter from using the Marks and otherwise acting in a manner contrary to the terms of the Chapter Agreement. After two levels of review consisting of two opportunities for a Chapter to present its position at two hearings in front of two separate committees, the Chapter Agreement does not give a dissatisfied Chapter yet a third level of arbitral review, prolonging resolution of the revocation decision and allowing a revoked chapter indefinite and unauthorized use of the Marks.

As a "voluntary contractual obligation[]", whether a matter is subject to arbitration "is totally dependent on the private will of the parties as embodied in whatever contract they may have entered into." *MCI Telecomm. Corp. v. Exalon Indus., Inc.*, 138 F.3d 426, 428 (1st Cir. 1998), *citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Applying basic principles of contract interpretation to the clear and unambiguous language of Section 17.3 -- that the decision of the Executive Committee is "final and unappealable" -- and the multiple provisions in the Chapter Agreement positively indicating that chapter discipline disputes are subject to their own specific resolution procedures, the only reasonable interpretation of the Chapter Agreement is that the revocation decision is not subject to further appeal to arbitration.

**B. The Magistrate Judge Erred in Concluding that the Motion to Lift the Temporary Stay Should Be Denied.**

Because the Chapter has not filed any demand for arbitration and because this matter is not subject to arbitration, the Magistrate Judge erred in recommending denial of MAWFA's request to lift the temporary stay -- and in imposing an indefinite injunction against MAWFA.

**1. A Stay in Aid of Arbitration Is Not Warranted Where the Chapter Has Failed to File any Demand for Arbitration; to the Contrary, the Balance of Equities and Irreparable Harm Favor MAWFA.**

The Magistrate Judge incorrectly states that "Defendant has refused to proceed to arbitration which has deprived Plaintiff of the opportunity to seek expedited review … or petition the arbitration for 'interim measures'" and thus, "for equitable reasons" the stay should remain in place for a sufficient time to allow the Chapter to commence arbitration procedures. Report at 11. Although MAWFA certainly expressed to the Chapter its view that matters of chapter discipline are not arbitrable under the Chapter Agreement, it has not prevented (and could not prevent) the Chapter from filing a demand for arbitration -- anymore than it could prevent the Chapter from filing this lawsuit.

It is now into the fifth month since the CPC issued its decision and the Chapter's charter was revoked, and almost three months have passed since the decision of the Executive Committee on appeal. In that time, the Chapter has not filed a demand for arbitration.

Meanwhile, MAWFA is barred by a temporary stay, issued *ex parte* on May 20, 2008 (which should have expired on its own terms months ago), from exercising its rights under the Chapter Agreement. Nevertheless, the Chapter continues to use the Make-A-Wish Marks and operate as a Make-A-Wish chapter, contrary to the express terms of the Chapter Agreement.

If the Court accepts the Magistrate Judge's Report continuing the stay, the situation could continue indefinitely, seriously undermining MAWFA's right (and its obligations to other chapters) to protect its Marks from unauthorized use. *See United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 143 (3rd Cir. 1981) (revoked local chapter is barred from using the national organizations mark even pending litigation); *Kappa Sigma Fraternity v. Kappa Sigma Gamma Fraternity*, 654 F. Supp. 1095, 1100 (D.N.H. 1987) ("upon disaffiliation [with local chapter], the licensee's right to the trademark also ends, and the mark reverts to the licensor … and any subsequent use by the former licensee constitutes trademark infringement") (internal citations and quotations omitted); *Birthright v. Birthright, Inc.*, 827 F. Supp. 1114, 1135 (D.N.J. 1993) ("once plaintiff revoked its charter, [chapter's] continued use of the mark was unauthorized"). The continued unauthorized use of its Marks would surely expose the Make-A-Wish Foundation to the risk of serious, if not irreparable, harm. *See, e.g.*, *Bayshore Group Ltd. v. Bay Shore Seafood Brokers, Inc.*, 762 F. Supp. 404, 408 (D. Mass. 1991), *citing Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 14 (1st Cir. 1986) ("considerable authority exists for the view that the irreparable injury factor is satisfied once the plaintiff demonstrates that the defendant is wrongly trading on the plaintiff's reputation"). For this reason, equitable considerations, as well as the irreparable harm suffered by MAWFA as a result of the Chapter's unauthorized use of the Marks, tip in favor of lifting the stay.

**2. The Chapter is Not Likely to Succeed on the Merits Before the Arbitration Panel.**

In determining whether injunctive relief was warranted, the Magistrate Judge solely considered whether the Chapter was likely to succeed on the merits of its claim that the dispute is arbitrable. The Magistrate Judge, however, should have focused on whether the Chapter was



A/72606577.2

likely to succeed on the merits of the underlying dispute. "[A] district court can grant injunctive relief in an arbitrable dispute pending arbitration, provided the prerequisites for injunctive relief are satisfied." *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 52 (1st Cir. 1986) (because plaintiff was likely to succeed on claim against defendant, defendant should be enjoined from disposing of assets). "[T]he district court's decision will be reversed, however, if it is found to have applied an improper legal standard in determining the likelihood of success on the merits or if it has misapplied the law to the particular facts in issue." *Id.*

In *Bervotich v. Baldwin School*, 133 F.3d 141 (1st Cir. 1998), a dispute involving a child who sought accommodation for alleged disabilities, the First Circuit concluded that that underlying dispute was subject to arbitration, but lifted an injunction preventing the child from being suspended from school "because plaintiffs did not meet their burden on likelihood of success on the merits" that the child was entitled to special accommodation. *Id.* at 151.

Here, even if the Chapter were eventually to file a demand for arbitration, it has presented no basis to conclude that it is likely to succeed on the merits of any claim concerning the revocation decision. As the Magistrate Judge concluded, the Chapter "does not dispute the allegations made by Defendant in the Chapter Discipline proceedings. Rather it argues that the level of punishment (revocation) is excessive given the harmless nature [as the Chapter, not MAWFA, characterizes it] of the complained-of -conduct." Report at 2-3.

As set forth in detail in MAWFA's Memorandum of Law in Support of Motion for Stay (pp. 3-8) (Docket No. 8) and Reply Brief (pp. 6-8) (Docket No. 13), the disciplinary procedures in the Chapter Agreement were followed to the letter, and there is no allegation that those procedures or the Chapter Agreement violated public policy. Consistent with the well established principle that "there should be no judicial [or arbitral] interference with the internal affairs, rules and by-laws of a voluntary association unless their enforcement would be arbitrary, capricious or constitute an abuse of discretion," the Chapter is unlikely to prevail on its claim that the revocation decision was improper. *Gorman v. St. Raphael Academy*, 853 A.2d 28, 37 (R.I. 2004). *See also King v. Grand Chapter of R.I. Order of Eastern Star*, 919 A.2d 991, 996

(R.I. 2007); *Rowland v. Union Hills Country Club*, 157 Ariz. 301, 305, 757 P.2d 105, 109 (Ariz. Ct. App. 1988) (courts will not become involved in the internal disputes of a social organization resulting in the suspension or expulsion of its members unless "it is established that the action taken violated the organization's by-laws or was in bad faith, fundamentally unfair, fraudulent or utterly unsupported by any evidence").

The CPC and the Executive Committee had ample reason for revoking the Chapter's charter for violations of the Chapter Agreement, MAWFA's Bylaws and Policies. The basis for the revocation decision is set forth in detail in MAWFA's Memorandum of Law in Support of Its Motion to Lift Temporary Stay and Opposition to Preliminary Injunction (pp. 5-8, 14-17) (Docket No. 8) and Reply Brief (pp. 3-4) (Docket No. 13).[8] In direct violation of IRS rules, regulations and published guidance, the Chapter intentionally failed for two years to disclose the compensation of its President & CEO on its Form 990s, and in some instances affirmatively misrepresented the total compensation of all Chapter officers and key employees as "$0" or "None." *See, e.g.*, I.R.C. § 6033 and 26 C.F.R. § 1.6033 *et. seq.*; I.R.C. § 6104; 1996 EO CPE Text, "Reporting Compensation on Form 990"; and 2003 EO CPE Text "Form 990, Schedule A and Schedule B." Mulvihill Decl. ¶ 29, Exs. E, F and H (Docket No. 9). Further, in violation of

---

[8] In addition to violations of the Governing Policies and Performance Standards, the CPC and Executive Committee concluded the Chapter had violated the following provisions of the Chapter Agreement:

> *5.3 Chapter agrees to comply with, and be bound by, the terms of [MAWFA's] Bylaws, this Agreement and the Policies [defined to include MAWFA's Governing Policies and Performance Standards].*
>
> *5.4 Chapter shall use its best efforts in performing the Foundation's Purpose, in cooperating with [MAWFA] and Other Chapters, and in protecting the Marks and the integrity and good reputation of [MAWFA].*
>
> *5.5 Chapter shall comply with all federal, state, county and local laws, regulations, rules and ordinances applicable to it or relating to nonprofit corporations and charitable organizations.*

Mulvihill Decl., Ex. I (Docket No. 9).

MAWFA Performance Standard GL 2.5, the Chapter improperly disclosed confidential information about wish children by appending this information -- including the children's first and last names and the cost of their wishes -- to its IRS Form 990s. Mulvihill Decl. ¶ 37, Exs. E, F and H (Docket No. 9).

**3. The Public Interest Favors Lifting the Stay.**

The paramount public interest involved in this dispute is the interest in providing charitable services to children with life-threatening medical conditions. MAWFA believes the public interest will best be served by ensuring that the wishes of children in Rhode Island are granted by an organization that abides by principles of transparency, accountability and sound governance and that understands the importance to the organization as a whole of complying with its obligations under the Chapter Agreement and the Policies. MAWFA further believes it would be contrary to the public interest for the parties to expend significant charity resources to arbitrate a chapter discipline decision that was made and upheld following two separate hearings in strict accordance with the Chapter Agreement -- particularly when, as the Magistrate Judge has acknowledged: (1) the Chapter "does not dispute the allegations made by [MAWFA] in the Chapter Discipline proceedings"; and (2) the Chapter Agreement expressly provides, "If [a] Chapter is in breach of its obligations under [the Chapter] Agreement, Foundation's Bylaws or the Policies, [MAWFA's] Chapter Performance Committee shall have the power to … impose Revocation…"[9] *See* Report at 2-3.

MAWFA's intent has always been to achieve an orderly transition that will be in the best interest of the Make-A-Wish Foundation and the children it serves, while at the same time fully complying with the requirements of Rhode Island law. Mulvihill Decl. ¶ 45 (Docket No. 9).

---

[9] Section 21.1 of the Chapter Agreement, the broad arbitration clause upon which the Chapter relies, states: "The arbitration shall be held in the same city in which the headquarters of [MAWFA] is then located …" During oral argument before the Magistrate Judge on July 8, 2008, counsel for the Chapter conceded that arbitration proceedings, if allowed, would take place in Phoenix, Arizona, where MAWFA is based.

Indeed, in the relatively rare instances where a chapter's affiliation with MAWFA has been revoked, it has always been MAWFA's practice to make sure the funds raised in the former chapter's territory are used to grant the wishes of children residing in that territory. Mulvihill Decl. ¶ 48 (Docket No. 9).

**C. In the Alternative, the Magistrate Judge's Report Should Be Modified.**

In the alternative, the Court should modify the Magistrate Judge's Report. The Report recommends that "the May 20, 2008 Order should remain in place for a sufficient time to permit Plaintiff to commence the arbitration process." It has been nearly three months since the Executive Committee rendered its decision, and the Chapter has never filed a demand for arbitration. This Order staying revocation was entered *ex parte*, without any hearing and the Chapter filed no affidavits in support of injunctive relief. In effect, by halting any revocation proceedings, the Magistrate Judge has allowed the Chapter to obtain the precise relief its seeks, in contravention of the Chapter Agreement, which provides that the Chapter is revoked.

Because the Magistrate Judge's Report postpones revocation indefinitely, there is no incentive for the Chapter to file for arbitration in any expedited manner, if at all. Accordingly, MAWFA respectfully requests that the Report and Recommendation be modified to provide that the May 20, 2008 Order shall remain in place for no more than ten (10) days after the District Court enters its decision on the Report and Recommendation. Given the amount of time that has already passed and the harm suffered by MAWFA, ten days is a reasonable time period to expect that the Chapter should be able to commence arbitration.

## III. CONCLUSION

For the foregoing reasons, defendant Make-A-Wish Foundation of America hereby objects to the Report and Recommendation of the Magistrate Judge and requests that the Court not accept the Report and Recommendation and grant its Motion to Dismiss and Motion to Lift the Temporary Stay or, in the alternative, modify the Report and Recommendation to provide that the May 20, 2008 Order shall remain in place for no more than ten (10) days after the date the District Court enters its decision on the Report and Recommendation.

Respectfully submitted,

**MAKE-A-WISH FOUNDATION OF AMERICA,**

By its attorneys,

/s/ *Carol E. Head*

Carol E. Head (#6501)
carol.head@bingham.com
Robert E. McDonnell*
robert.mcdonnell@bingham.com
**BINGHAM MCCUTCHEN LLP**
One Federal Street
Boston, MA 02110
617.951.8000
**admitted pro hac vice*

*Of Counsel:*
David B. Mulvihill, Esq.
Vice President & General Counsel
Make-A-Wish Foundation of America
3550 North Central Avenue, Suite 300
Phoenix, AZ 85012-2127
Phone: 602.279.9474

Dated: July 31, 2008

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed electronically and is available for viewing and downloading from the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, paper copies will be sent to those indicated as non-registered participants, and a courtesy copy will be sent via mail to the Rhode Island Attorney General's Office, on July 31, 2008.

/s/ *Carol E. Head*
Carol E. Head (#6501)
**BINGHAM MCCUTCHEN LLP**
One Federal Street
Boston, MA 02110
617.951.8000



A/72606577.2