UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAKE-A-WISH FOUNDATION OF RHODE ISLAND, INC., Plaintiff, | : | |
| v. | : | C.A. No. 08-cv-206-S |
| MAKE-A-WISH FOUNDATION OF AMERICA, Defendant. | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT MAKE-A-WISH FOUNDATION OF AMERICA'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION**

Pursuant to Local Rule 72(d)(3), Plaintiff, Make-A-Wish Foundation of Rhode Island, Inc. ("RI Chapter") files the instant Response to the Objections by Defendant Make-A-Wish Foundation of America to Magistrate's Report and Recommendation ("Objection"). If not abundantly clear before, it is now readily apparent that Defendant Make-A-Wish Foundation of America ("MAWFA") will accept nothing short of the wholesale elimination of the RI Chapter - a local charitable organization that has been recognized nationally within the organization for its successes in granting wishes of children with life-threatening conditions since its incorporation in 1991. The MAWFA seeks to shut the doors of the RI Chapter without having anyone take a "hard look" at whether the manner in which the RI Chapter completed its IRS Forms 990 violated the Chapter Agreement between the parties. To allow a third party to delve into the disciplinary proceedings would inevitably reveal the fact that the RI Chapter was not judged by a fair and impartial body and was deprived of any real process as part of the MAWFA's eight-year nationwide crusade to streamline and consolidate its chapters for easier control.

Dissatisfied that the Magistrate Judge evaluated the Chapter Agreement as a whole and gave effect to the express provision in the arbitration clause requiring arbitration of "all disputes arising in connection with [the Chapter Agreement]," the MAWFA now argues that the Magistrate Judge "misconstrued" the Chapter Agreement. On the contrary, as set forth below, the Magistrate Judge correctly interpreted the plain language of the parties' agreement and applied well-settled principles of contract law to conclude that the dispute between the RI Chapter and the MAWFA belongs before an arbitrator. Therefore, even under the *de novo* standard of review that this Court must apply to the Magistrate Judge's decision on MAWFA's Motion to Dismiss,[1] the Magistrate Judge's recommendation that the Motion to Dismiss be denied should be accepted.

Similarly, the Magistrate Judge's recommendation to continue the stay should be accepted because it is neither clearly erroneous nor contrary to law.[2] It was neither necessary nor appropriate for the Magistrate Judge to examine the merits of the underlying dispute in determining whether to continue the stay. However, had he done so, the Magistrate Judge would have concluded, as did the Superior Court judge, that the RI Chapter met the pre-requisites for injunctive relief. The MAWFA has not presented any new evidence to the contrary. Unable to demonstrate any real threat of harm to the MAWFA's reputation (or more importantly to the MAWFA, damage to its marks) from allowing the RI Chapter to continue serving the wishes of children with life-threatening medical conditions, the stay should remain pending the outcome of arbitration. In fact, allowing the MAWFA to wind down the RI Chapter and close its doors would cause irreparable harm to the RI Chapter and its wish recipients. Therefore, this Court should accept the Magistrate Judge's Report and Recommendation.

[1] Fed R. Civ. P. 72(b)(3).
[2] Under Fed. R. Civ. P. 72(a), non-dispositive matters are reviewed to determine whether the Magistrate Judge's decision was clearly erroneous or contrary to law.

# LEGAL ARGUMENT

## I. THE MAGISTRATE JUDGE PROPERLY DENIED THE MAWFA'S MOTION TO DISMISS BECAUSE THE CHAPTER AGREEMENT REQUIRES THE PARTIES TO ARBITRATE THEIR DISPUTES

### A. The Magistrate Judge Properly Concluded that the Plain Language in Section 21 of the Chapter Agreement Means that All Disputes Without Exception Must Be Arbitrated

Courts making arbitrability determinations follow a two-step process. The Court must first determine whether there is an agreement to arbitrate between the parties. If such an agreement exists, the Court must then determine whether the parties' dispute falls within the scope of their agreement. See Filimex, L.L.C. v. Novoa Investments, L.L.C., No. 05-3792-PHX-SMM, 2006 WL 2091661, .S. Dist. Lexis, at *3 (D. Ariz. July 17, 2006) (citing 9 U.S.C. § 4)).[3] In the present case, there is no dispute that the parties have a contract that contains an agreement to arbitrate. The only issue is whether that arbitration clause covers their dispute over the disciplinary action against the RI Chapter.

It is well-settled that, in interpreting arbitration clauses in a contract, a court must give due consideration to several principles. First, the court must interpret such clauses against the backdrop of a clear federal policy favoring arbitration, and ambiguities regarding the scope of the arbitration clause should be resolved in favor of arbitration. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995) (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 476 (1989)) (quotation omitted). In addition, where there is an arbitration clause in dispute, the Supreme Court has held that there is a presumption of arbitrability pursuant to which an order to arbitrate should issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an

[3] Federal substantive law determines whether a matter is arbitrable. See Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983).

interpretation that covers the asserted dispute." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960) (emphasis supplied). Finally, it has been held that, "[i]n the absence of any express provisions excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail . . . .." Id. at 584-85. This conclusion is particularly true when the exclusion clause or language is vague and the contract has a broad arbitration clause. See id. at 585.

Under the above principles, the Magistrate Judge correctly determined that the broad arbitration clause in Section 21 of the Chapter Agreement requires the parties to arbitrate the underlying dispute. See Report and Recommendation at p. 7. Section 21.1 of the Chapter Agreement, which is dedicated to the issue of arbitration, states that "[e]xcept as provided in Section 21.3, all disputes arising in connection with this Agreement or otherwise between the Chapter and Foundation . . . shall be finally settled by binding arbitration." (emphasis supplied). Aside from the carve-out for matters in which the MAWFA can seek "extraordinary relief" under Section 21.3, the language in Section 21.1 providing for arbitration is absolute and all-encompassing.

Courts interpreting language that is the same or similar to that in Section 21.1 have concluded that such language is both broad and unlimited. In contrasting limited and unlimited arbitration clauses, the federal courts have explained that an unlimited clause is one that provides "that any dispute which may thereafter arise out of the contract will be settled by arbitration." Sumaza v. Cooperative Association, 297 F. Supp. 345, 348 (D. Puerto Rico 1969). In contrast, a limited clause provides for arbitration of only specific types of disputes. Id. The decision in Simula Inc. v Autoliv, Inc., upon which the Magistrate Judge relied, is instructive. 175 F.3d 716 (9th Cir. 1999).

In Simula, the arbitration clause at issue provided that "[a]ll disputes arising in connection with this Agreement shall be finally settled" through arbitration. 175 F.3d at 720. In that case, relying on other federal court decisions, the Ninth Circuit interpreted the phrase "arising in connection with" as a broad arbitration clause. Id. at 721. See Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511, 1515 (10th Cir. 1995) ("any dispute arising in connection with the implementation, interpretation or enforcement" of the parties agreement); J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988) ("all disputes arising in connection with the present contract shall be finally settled" by arbitration); Good(E) Business Systems, Inc. v. Raytheon Co., 614 F. Supp. 428, 429 (W.D. Wis. 1985) (arbitration required for disputes "arising in connection with" the agreement). Accord, Winterwood Farm, LLC v. JER, Inc., 327 F. Supp. 2d 34, 39 (D. Me. 2004) (interpreting "in connection with" to mean "related to, linked to or associated with" and finding that broad language covered parties' claims) (citation omitted). It ruled that this language would be deemed to encompass "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." Noting the presumption in favor of arbitration in the Federal Arbitration Act, the court further explained that "[t]he standard for demonstrating arbitrability is not high" and warned that arbitration agreements should be "rigorously enforced." Id. at 719-20.

Because the arbitration language in Section 21 of the Chapter Agreement is identical to that in Simula and also requires "all disputes arising in connection with [the Chapter Agreement]" to be arbitrated, this Court should similarly find that its broad language touches the parties' dispute. (emphasis supplied).[4] The central issue in the underlying dispute is whether the RI Chapter breached its obligations under the Chapter Agreement so as to warrant revocation.

---

[4] Notably, Section 21 of the Chapter Agreement is even broader because it covers "all disputes arising in connection with [the Chapter Agreement] *or otherwise* . . . ."(emphasis supplied). Therefore, it is not limited to matters arising out of the Chapter Agreement.

See Chapter Agreement §11 (providing for disciplinary proceedings when a "Chapter is in breach of its obligations under the Agreement . . . ."). Therefore, the present dispute arises "in connection with" the Chapter Agreement.

There is also markedly absent from Section 21 and elsewhere in the Chapter Agreement any express limitation on the type of disputes that may be arbitrated that might reasonably be interpreted to cover the present dispute. The Chapter Agreement lacks any language that suggests, let alone provides "positive assurance," that the Chapter Agreement cannot be read to require arbitration in this case. Warrior & Gulf, 363 U.S. at 582-83. Indeed, without any express exclusions in the arbitration clause of the Chapter Agreement, and in light of the broad arbitration language, the MAWFA has the onerous responsibility of offering "the most forceful evidence of a purpose to exclude the claim from arbitration" in order to avoid arbitration. Id. at 584-85.

Positive assurance would have existed if the Chapter Agreement specifically stated that disciplinary action such as revocation "may not be arbitrated." Including a simple, clearly worded phrase that excludes revocation decisions from being arbitrated would have put all chapters on notice that they had no right to have a revocation reviewed by a neutral third-party. The decision in Katz v. Feinberg, upon which the MAWFA relies so heavily, demonstrates precisely the type of language that can be used to positively exclude certain contractual rights in a contract. 167 F. Supp.2d 556, 566 (S.D.N.Y. 2001), aff'd, 290 F.3d 95 (2nd Cir. 2002). The language utilized by the contracting party in Katz to establish that a specific determination was "final and binding" expressly excluded "any appeal, arbitration, proceeding, adjustment or review of any nature whatsoever." 290 F.3d at 98. There is no question that had the MAWFA drafted a Chapter Agreement with such unequivocal language then its contention would have

merit. However, presumably recognizing the objection that would have been raised by the chapters who had to consent to the draft agreement, the MAWFA did not do so. Instead, the MAWFA drafted a Chapter Agreement with an arbitration provision that actually discusses issues of discipline and never excludes such issues in a forthright and unambiguous manner. Therefore, the Magistrate Judge correctly determined that the underlying dispute falls within the plain and ordinary language of Section 21, which requires "all disputes" to be arbitrated without any exception. See Report and Recommendation at pp. 8-9.

B. Interpreting the Chapter Agreement as a Whole Further Confirms that Arbitration is Required in this Case

As the Magistrate Judge aptly noted, all the terms of the Chapter Agreement must be considered in conjunction with one another in analyzing whether a dispute must be arbitrated. Although the MAWFA puts lip service to those words, it does not truly want that type of review to happen. On the contrary, the linchpin of the MAWFA's Objection is that the Court should look at a mere three words dealing with internal determinations on matters of chapter discipline - "final and unappealable" - out of the entire 34-paragraph contract. The MAWFA prefers to give the phrase "final and unappealable" a meaning isolated from the remainder of the arbitration provision and Chapter Agreement. Indeed, the MAWFA vehemently asserts that the three-word phrase must be construed to negate a multiple part arbitration provision which actually integrates issues of chapter discipline within its very content.

The importance that the MAWFA places on the phrase "final and unappealable" would be unassailable if the phrase was "final and unarbitrable." However, given the fact that the arbitration clause follows the section concerning disciplinary action and it also includes references to disciplinary action, it is impossible to argue that the two sections are separate. The very reason for an administrative process is to try to resolve as many disputes as possible within

an organization. Obviously, resolving something through an administrative process reduces the expenditure for both parties. However, if one party feels it is not being provided an objective review, then it only makes sense that it has a right to a review by a neutral arbitrator.

The RI Chapter's interpretation does not, as the MAWFA argues, mean that the phrase "final and unappealable" is "meaningless." See Objection at p. 7. That phrase has the same force and effect as every finality clause with respect to administrative remedies. As Magistrate Judge Almond correctly perceived, the term "final and unappealable" simply means that the end of an administrative remedy within the MAWFA's internal organization. See Report and Recommendation at p. 8. Thereafter, there is no more internal mechanism for dispute resolution. However, this does not preclude the RI Chapter from seeking objective review outside of the MAWFA's own members. Rather, from this point on, all disputes must be taken to a neutral arbitrator as outlined in Sections 21(1)(2) and (3).

C. Any Doubts Regarding Arbitrability Must Be Resolved in the RI Chapter's Favor

As set forth above, there exists a clear federal policy favoring arbitration, and ambiguities regarding the scope of the arbitration clause should be resolved in favor of arbitration. Mastrobuono, 514 U.S. at 62 (citation omitted). Indeed, as the MAWFA acknowledges in its Objection, there exists a presumption of arbitrability. See Objection at p. 4. See also, Warrior & Gulf, 363 U.S. at 582-83. Because the MAWFA did not use a phrase as clear as "may not be arbitrated" in the Chapter Agreement, the presumption remains that revocation of the RI Chapter's status is a dispute that should be reviewed by a neutral third party.

The case for adopting a presumption in favor of arbitration is even more compelling in the present circumstances where one corporate entity is claiming to have the absolute right to dissolve a separate corporate entity. Despite what the MAWFA wants this Court to conclude,

this case is not the same as one in which an individual member of a group is being ousted or ostracized. Indeed, the Magistrate Judge rejected the MAWFA's attempt to analogize this case to such situations because this matter involves a dispute between two corporate entities. See Report and Recommendation at p. 5, n. 2. It involves one corporation trying to vest in itself the unfettered authority to dismantle and dissolve a separate corporation. What is more astounding is that the MAWFA is also trying to prevent any of the members of this separate corporation from engaging in any similar, independent charitable work for two years. A measure like this absolutely requires review by a neutral arbitrator.

Moreover, although Judge Almond determined that the language of Chapter Agreement's arbitration clause was clear and refrained from expressly relying on rules of construction relating to ambiguity in contracts, such rules exist and should be applied here. If this Court determines that some ambiguity exists in the Chapter Agreement (a proposition that the RI Chapter disputes) this Court should follow U.S. Supreme Court precedent adopting the common law and Restatement rule that ambiguous language of a contract should be construed against the drafter. Mastrobuono, 514 U.S. at 62. (citing Restatement (Second) of Contracts § 206)). As explained in Mastrobuono, the drafters of the Restatement justified the rule as follows:

> Where one party chooses the terms of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party. He is also more likely than the other party to have reason to know of uncertainties of meaning. Indeed, he may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert. In cases of doubt, therefore, so long as other factors are not decisive, there is substantial reason for preferring the meaning of the other party. Id. at 63 (quoting Restatement (Second) of Contracts § 206, Comment a (1979).

In the present case, because it is undisputed that the MAWFA drafted the Chapter Agreement, any ambiguity that might exist must be construed against the MAWFA and in favor of arbitration. Having had control of the contract drafting process, with no negotiation by the RI

Chapter, the MAWFA should not be able to interpret any supposed ambiguity in the Chapter Agreement at will to serve its own interests.

## II. THE MAGISTRATE JUDGE'S RECOMMENDATION TO CONTINUE THE STAY SHOULD BE ACCEPTED

Suggesting that the RI Chapter has somehow sat on its rights in not filing for arbitration, the MAWFA attempts to shift attention away from the fact that it has, from the outset, claimed that the RI Chapter has no arbitration rights and that it will fight ("all the way to the Supreme Court") any attempts to seek arbitration. Indeed, filing for arbitration would have been pointless since the federal courts, not the arbitrator, have the power to decide the issue of arbitrability. AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 656 (1986) (citing Warrior & Gulf, 363 U.S. at 582). Nevertheless, the RI Chapter took quick steps upon learning of the MAWFA's single-handed purpose to shut its doors, to seek arbitration and ultimately judicial intervention.

On May 16, 2008, immediately after David Mulvihill informed Plaintiff's counsel that the MAWFA Executive Committee had voted to revoke, the RI Chapter verbally requested arbitration. Mr. Mulvihill, the MAWFA's general counsel, asserted that the R.I. Chapter had no such right. He then informed the undersigned counsel that two representatives of the MAWFA would be would be coming to the RI Chapter's office three days later to begin the process of assessment. This warning precipitated the RI Chapter filing a lawsuit in which the very relief sought was arbitration and simultaneously seeking a temporary restraining order. Had the MAWFA given any indication that the RI Chapter could have or should have served a demand for arbitration, the RI Chapter would have done so immediately. Thus, the claim that somehow the RI Chapter was less than diligent, and allowed this procedure to become protracted to serve its own benefit, is baseless. What is worse, the MAWFA knows it. Nevertheless, to dispel any

confusion, the RI Chapter respectfully requests that this memorandum be construed as its written demand for arbitration.

Moreover, the MAWFA is incorrect in taking the Magistrate Judge to task for "erroneously appl[ying] the likelihood-of-success-on-the-merits test to the arbitrability issue and not to the merits of the dispute itself." See Objection at p. 2. In AT & T Technologies, the Supreme Court stated that "a court is not to rule on the potential merits of the underlying claims" when determining whether parties have agreed to arbitrate a matter. 475 U.S. at 649.

If the MAWFA wants to argue the issues of the merits of the dispute itself, the RI Chapter is happy to advance such an argument. The MAWFA claims that the method the RI Chapter used to fill out its Forms 990 for 2005 and 2006 was "a violation of federal law and IRS regulations, and exposes the Chapter to penalties and other sanctions by the IRS . . . ." See Objection at p. 3.[5] In doing so, the MAWFA intentionally ignores the fact that the RI Chapter sought advice on this very issue from the MAWFA. More significantly, the RI Chapter has filed amended forms with the IRS and the IRS has not contacted the RI Chapter, let alone pursued any penalties and sanctions. Thus, the rationale that the MAWFA chooses to use to justify revocation rings hollow. The MAWFA knows that the RI Chapter did not undermine the wishes of children, embezzle funds, cause any penalties to be issued to the MAWFA (which of course it could not because the RI Chapter and the MAWFA are separate, distinct entities with an agreement which says they are not responsible for each other's actions) or do anything that

[5] The MAWFA continues to claim that the action undertaken by the RI Chapter was to intentionally deceive potential donors in Rhode Island. Again, the MAWFA links up the word "intent" to the end result as opposed to intent of the way the form was filled out. The RI Chapter "intended" to fill out the form as it did and admitted the same. (It did so, of course, after it consulted with the MAWFA's representative and reviewed other Chapter's similarly completed out Forms 990.) The RI Chapter never intended to deceive or undermine. The RI Chapter truly and honestly believed it was filling out the form in an acceptable way as did its professional advisor who signed those returns as preparer.

penalizes the MAWFA, the RI Chapter or the Make-A-Wish brand. The MAWFA must prop up a straw man because it understands it has no substance to its "we have been harmed" position.

Contrary to the MAWFA's assertions, the RI Chapter does claim that the disciplinary procedures used below violated the law and public policy. See Objection at p. 14. The MAWFA claims that it undertook the administrative proceedings precisely as set out in the Chapter Agreement. That assertion is simply untrue. As pointed out several times by the RI Chapter, at no time was the RI Chapter allowed to "appear." Moreover, both "hearings" were simply telephone conference calls. In the telephone conference before the Chapter Performance Committee, the RI Chapter did not put on a case. The RI Chapter representatives simply answered questions posed by the prosecutorial body. Thereafter, in response to the RI Chapter's express request that its key members actually "appear" before the Committee, as outlined in the Chapter Agreement, the RI Chapter was told it could not personally "appear."

The decision-making was also far from impartial. The MAWFA refuses to recognize that an administrative process that includes an overlap of membership between the prosecutorial body (CPC) and the Executive Committee cannot be impartial or objective – a point not overlooked by Magistrate Judge Almond at oral argument. Therefore, the RI Chapter believes that both tests – the success on the merits of "arbitrability" or success on the merits of the underlying dispute - favor the RI Chapter. Indeed, one Rhode Island court has already agreed. Therefore, had the Magistrate Judge looked at the merits of the underlying dispute, he would have found that the RI Chapter demonstrated a likelihood of success on the merits.

Lastly, the Magistrate Judge correctly determined that the stay should remain in place until the parties can be heard by an arbitrator. The MAWFA claims that the existing stay should only remain in place for ten (10) days after the District Court enters its decision on the Report

and Recommendation. See Objection at p. 17. The MAWFA cannot reasonably believe that an arbitration can be convened and concluded within ten (10) days of the decision on the Report and Recommendation. On the contrary, the stay must necessarily remain in place until an arbitrator makes a decision on the revocation of the RI Chapter. It would be nonsensical to do anything else. To lift the stay and allow the MAWFA to engage in the process of revocation and ultimate destruction of the RI Chapter before a neutral party makes a determination on whether or not the RI Chapter should be revoked in the first instance belies common sense.

As the Magistrate Judge determined, no harm will follow from allowing the stay to remain. Indeed, it has been almost five months since the MAWFA communicated its revocation decision to the RI Chapter (although no written decision was ever received). In the intervening months, there has been no harm caused to the organization's reputation, let alone the marks about which the MAWFA is truly concerned. The MAWFA has not offered a shred of evidence that it has suffered any damage, monetary or otherwise, from the RI Chapter continuing to operate. Claims of adverse publicity are particularly speculative because, furthering the public interest in charitable endeavors, the RI Chapter has continued to carry out its business of fulfilling the wishes of children with life-threatening medical conditions. In the end, the only adverse publicity is the publicity that the MAWFA chose to bring upon itself by seeking revocation and pursuing this divisive litigation. Therefore, this Court should accept the Magistrate Judge's recommendation to continue the stay.

## CONCLUSION

The MAWFA relies on the one hand on the Chapter Agreement to support its purported unilateral right to terminate the RI Chapter, yet continues to strain to repudiate a portion of that very contract (drafted by the MAWFA) that entitles the RI Chapter to arbitration by a neutral

decisionmaker on issues that are fundamental to the RI Chapter's survival. As at least one Court aptly noted, a party "cannot rely on the contract when it works to their advantage, and repudiate it when it works to their disadvantage. To permit them to do so would not only flout equity, it would do violence, we think, to the congressional purpose underlying the Federal Arbitration Act." Sumaza, 297 F. Supp. at 348 (quoting Tepper Realty Co. v. Mosaic Tile Co., 259 F.Supp. 688, 692 (D.C.N.Y. 1966)).

While the RI Chapter and the MAWFA are at odds on several issues, they appear to concur that both parties and the people that they serve would be benefited by avoiding the significant expenditure of time and money that will necessarily follow from continuing this dispute. See Objection at p. 16. As counsel for the RI Chapter mentioned in oral argument before Magistrate Judge Almond, this is a case that screams out for judicial intervention. Because this dispute does not appear to be about money, a resolution should be available to clear thinking representatives of both sides. Indeed, the RI Chapter has sought an informal resolution from the outset and hereby requests a chambers conference with the District Court Judge in an attempt to resolve this ultimate dispute.

If the MAWFA refuses to participate in such a conference, then its motivation is clear: it has no desire to come to a workable resolution – its only objective is to consolidate the RI Chapter. There is no other logical explanation to why MAWFA would refuse to participate in a chambers conference designed to reduce costs, foreclose even the perceived threat of adverse publicity and allow the wishes of children in Rhode Island with life-threatening medical conditions to continue being fulfilled. Therefore, the stay should continue until arbitration is completed and, in the interim, a chambers conference is respectfully requested.

Should the MAWFA remain unwilling to attempt an informal resolution, the RI Chapter respectfully requests that this Court accept the Report and Recommendation, order the parties to arbitration and maintain the stay pending the outcome of the arbitration. In seeking arbitration, the RI Chapter expressly reserves its rights to later pursue the MAWFA for recovery of damages, including costs and fees, as a result of being forced to protect its contractual and legal rights.

Respectfully Submitted,

PLAINTIFF MAKE-A-WISH FOUNDATION OF RHODE ISLAND, INC.
By its counsel:

/s/ Kristen W. Sherman, Esq.________________
TODD D. WHITE #5943
VICTORIA M. ALMEIDA #1755
E. HANS LUNDSTEN #1156
KRISTEN W. SHERMAN #5595
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
T: (401) 274-7200
F: (401) 351-4607
Dated: August 11, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of August 2008, I electronically filed the attached document with the Court using the ECF system. The following counsel of record are registered with the Court and will be served electronically through the ECF system:

State of Rhode Island
Patrick C. Lynch, Esq.
Office of the Attorney General
150 South Main Street
Providence, RI 02903

Carol E. Head, Esq.
Bingham, McCutchen, LLP
One Federal Street
Boston, MA 02110

/s/ Kristen W. Sherman, Esq.

464096_1.DOC